IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division



ZHOU JIE PLANT, *et al.*,     )
                              )
            Plaintiffs,       )
                              )     Civil Action No. 1:08cv374 (TSE/JFA)
      v.                      )
                              )     Consolidated with
MERRIFIELD TOWN CENTER        )        Civil Action No. 1:08cv566
LIMITED PARTNERSHIP, *et al.*,)
                              )
            Defendants.       )
_____)

## REPORT AND RECOMMENDATION

On March 24, 2009, the Honorable T.S. Ellis, III referred this matter to the undersigned

pursuant to 28 U.S.C. § 636 for a Report and Recommendation concerning the appropriate

remedy, if any, for the plaintiffs under the Interstate Land Sales Full Disclosure Act

("ILSFDA"), 15 U.S.C. § 1701 *et seq.* (Docket no. 70). A Report and Recommendation was

filed on June 1, 2009 (Docket no. 82) and thereafter the parties submitted their objections

(Docket nos. 83, 85). Following argument on the objections before the District Judge, the Report

and Recommendation was adopted in part and modified in part. (Docket no. 95). On July 21,

2009, this matter was referred to the undersigned magistrate judge for an additional Report and

Recommendation addressing five specific issues. (Docket no. 96). In accordance with that

referral, the undersigned files this second Report and Recommendation.

## Procedural Background

On April 17, 2008, plaintiff Plant filed a complaint against Merrifield Town Center

Limited Partnership ("Merrifield") on behalf of herself and "on behalf of a class of persons

consisting of contract purchasers of condominium units in the Virginia condominium regime

1

named 'Vantage at Merrifield.'" (Docket no. 1). On May 12, 2008 an amended complaint was filed by Plant and eight other plaintiffs "on behalf of themselves and on behalf of a class of persons consisting of contract purchasers of condominium units in the Virginia condominium regime named 'Vantage at Merrifield, a Condominium.'" (Docket no. 2). The amended complaint asserted claims for: (i) violation of the ILSFDA; (ii) conspiracy to injure plaintiffs' reputation, trade, business or profession pursuant to Va. Code Ann. § 18.2-499 *et seq.*; (iii) breach of contract; and (iv) return of deposits. (Docket no. 2). The amended complaint named five defendants: Merrifield; Uniwest Group, LLC; Uniwest Development, LLC; Michael D. Collier; and Walker Title & Escrow Company, Inc. (Docket no. 2). By an Order entered on September 19, 2008, the Court granted plaintiffs' request to withdraw Count Two asserting a claim under Va. Code Ann. § 18.2-499 *et seq.* (Docket no. 22).

On November 6, 2008, the Court granted plaintiffs' motion to consolidate *Kim v. Merrifield Town Ctr. Ltd. P'ship*, Civil Action No. 1:08cv566, with this case. (Docket no. 32). The original *Kim* complaint was filed on June 3, 2008 and identified over 100 plaintiffs, including the nine plaintiffs named in the *Plant* amended complaint. (*Kim* Docket no. 2). The same four claims asserted in the *Plant* action were asserted in the *Kim* action against the same defendants and two additional defendants, McWilliams-Ballard, LLC and Jonnie Jameson. (*Kim* Docket no. 2). On June 6, 2008, an amended complaint was filed in *Kim* including additional plaintiffs. (*Kim* Docket no. 1).[1] On September 19, 2008, the Court granted plaintiffs' request in *Kim* to withdraw Count Two asserting a claim under Va. Code Ann. § 18.2-499 *et seq.* (*Kim* Docket no. 48).

---

[1] The amended complaint was filed again on June 19, 2008 (*Kim* Docket no. 6) noting that it was corrected at ECF request. Minute entries on the docket sheet on June 10 and 13, 2008 indicate that the original filing of the amended complaint did not include the correct signature block and there was no case number on the pleading. Counsel was notified by the Clerk's office to refile the document.

Following the consolidation of the *Plant* and *Kim* cases, the Court entered an Order on November 12, 2008 denying the plaintiffs' motion for class certification. (Docket no. 35). Class certification was denied on the grounds that the plaintiffs failed to satisfy the threshold requirements of Fed. R. Civ. P. 23(a) (numerosity, commonality, typicality in the representative plaintiff's claims, and adequacy of the representative plaintiff's ability to protect the interests of the class) and the additional requirement that the proposed class fall within a Rule 23(b) category. (Docket no. 35). Thus, the Court found that the proposed class met none of the requirements of Fed. R. Civ. P. 23. (Docket no. 35).

On December 16, 2008, the Court granted plaintiffs' request to withdraw Count Three for breach of contract and to dismiss the claims against defendants McWilliams-Ballard, LLC and Jonnie Jameson with prejudice. (Docket no. 39). On December 19, 2008, the Court entered an Order denying the pending motions for leave to intervene and granting plaintiffs leave to file a second amended complaint "adding any additional plaintiffs, but not amending in any other respect." (Docket no. 43). On January 12, 2009, a second amended complaint was filed. (Docket no. 47). The second amended complaint contained counts for violation of the ILSFDA, breach of contract and return of deposits against the same five defendants named in the first amended complaint filed by the *Plant* plaintiffs. (Docket no. 47). Count Two of the second amended complaint alleging breach of contract was dismissed since that claim had been withdrawn by the plaintiffs previously and the inclusion of that claim in the second amended complaint exceeded the scope of the Court's Order granting leave to file the second amended complaint. (Docket no. 69).

By an Order entered on March 16, 2009, the Court awarded the plaintiffs partial summary judgment on Count One (violation of the ILSFDA) "insofar as (i) the 24-month UPA sales

contracts are not exempt, pursuant to 15 U.S.C. § 1702(a)(2), from ILSFDA's reporting and disclosure requirements; (ii) the 36-month UPA sales contracts are not exempt, pursuant to 15 U.S.C. § 1702(b)(1), from ILSFDA's reporting and disclosure requirements; and (iii) it is undisputed that defendants failed to comply with ILSFDA's reporting and disclosure requirements with respect to all sales contracts at issue." (Docket no. 69).

On June 1, 2009, the undersigned magistrate judge submitted a Report and Recommendation concerning the appropriate remedy, if any, for the plaintiffs under the ILSFDA. (Docket no. 82). Both parties filed objections to the first Report and Recommendation. (Docket nos. 83, 85). On July 21, 2009, the Court entered an Order adopting in part and modifying in part the first Report and Recommendation. (Docket no. 95). On the same day, the Court referred this matter to the undersigned for an additional Report and Recommendation addressing five specific issues. (Docket no. 96).

Following the referral of this matter, the undersigned magistrate judge held a status conference with counsel for the parties. (Docket no. 101). At the status conference, a briefing schedule was established and a hearing was set to allow the parties an opportunity to be heard on the referred issues. On August 28, 2009, each party filed an opening brief in support of their respective positions. (Docket nos. 121, 122). On September 9, 2009, the parties filed their opposition briefs. (Docket nos. 132, 133). On September 14, 2009, a hearing was held during which counsel argued their respective positions. On September 17, 2009, plaintiffs filed a supplemental memorandum. (Docket no. 147). Defendants filed a response to plaintiffs' supplemental memorandum on September 24, 2009. (Docket no. 157).

## Proposed Factual Findings

The facts surrounding plaintiffs' claims and the defendants' defenses have been developed fully by the Court in its earlier Orders and only those limited facts relating to the referred issues are addressed in this section.

The plaintiffs entered into Unit Purchase Agreements ("UPAs") with Merrifield between June 3, 2005 and July 16, 2005. (Docket no. 122, Ex. A). On June 5, 2005, plaintiffs Jerry Kim and Kang Hon Lee signed UPAs. (Docket nos. 122, 147). On June 6, 2005, plaintiff Leah S. Her signed a UPA. (Docket nos. 122, 147). On June 8, 2005, plaintiffs Jeong Eui Lee and Ryan Jin Lee signed UPAs. (Docket nos. 122, 147). On June 10, 2005, plaintiff Sungkyoon Park signed a UPA. (Docket nos. 122, 147). On June 11, 2005, plaintiffs Kun Soo Han and Chien Ming Yee signed UPAs. (Docket nos. 122, 147). On June 12, 2005, plaintiffs Kwang Y. Choi and Sae Rho Mee Kim signed UPAs. (Docket nos. 122, 147).[2]

The first complaint filed by any of the plaintiffs in this action was filed on April 17, 2008, more than two years, but less than three years, after the UPAs were signed by the plaintiffs. This complaint, styled as *Plant v. Merrifield Town Ctr. Ltd. P'ship*, Civil Action No. 1:08cv374, was filed as a class action lawsuit. (Docket no. 1). The complaint defined the class as "contract purchasers of condominium units in the Virginia condominium regime named Vantage at Merrifield." (Docket no. 1). On June 3, 2008, another class action lawsuit was filed against Merrifield with Han Ho Kim as the class representative, *Kim v. Merrifield Town Ctr. Ltd. P'ship*, Civil Action No. 1:08cv566. Defendants argue, and plaintiffs do not appear to contest, that the following plaintiffs were added to the *Kim* case on the following dates: plaintiff Kang Hon Lee on June 6, 2008; plaintiffs Kun Soo Han and Chien Ming Yee on June 12, 2008; and

---

[2]  Defendants claim these ten plaintiffs signed their UPAs more than three years before they were added as named plaintiffs in either the *Kim* or the *Plant* matter.

plaintiffs Kwang Y. Choi, Leah S. Her, Jerry Kim[3], Sae Rho Mee Kim[4], Jeong Eui Lee, Ryan Jin

Lee, and Sungkyoon Park on June 19, 2008. (Docket nos. 122, 147). An independent review of

the record concerning these plaintiffs reveals that the amended complaint filed in the *Kim* matter

on June 6, 2008 and filed again in a corrected form on June 19, 2008 does include the following

plaintiffs: Kang Hon Lee; Leah S. Her; Kwang Y. Choi; Jerry Kim; Sae Rho Mee Kim; Jeong

Eui Lee; Ryan Jin Lee; and Sungkyoon Park. (*Kim* Docket no. 1 at 3, 8-9). A motion to

intervene was filed on behalf of plaintiffs Kun Soo Han and Chien Ming Yee on June 12, 2008.

(*Kim* Docket no. 3). All parties agree that each of these ten plaintiffs was included as a named

plaintiff in this action prior to the Court's denial of the request for class certification on

November 12, 2008. (Docket no. 35).

## The Applicable Provisions of the ILSFDA

The ILSFDA provides that the sale of any lot not exempt from its provisions must

comply with various disclosure and registration requirements and sales practices. In general,

Section 1703(a)(1) details certain disclosure and registration requirements and Section

1703(a)(2) describes certain prohibited sales activities.[5] Section 1703(a)(1) requires that a

statement of record in accordance with Section 1706 be in effect prior to any sale and that a

printed property report meeting the requirements of Section 1707 be provided to the purchaser in

---

[3] On June 5, 2008, Jerry Kim and Joung Ran Kim filed a *pro se* lawsuit in the United States
District Court for the District of Columbia, *Kim v. Merrifield Town Ctr. Ltd. P'ship,* Civil Action
No. 1:08cv970 (RJL). (Docket nos. 147, 157). That case was dismissed without prejudice in
May 2009.

[4] Plaintiff Sae Rho Mee Kim is listed in the original complaint filed in the *Kim* matter on June 3,
2008, on page 7, with "Additional Plaintiffs" handwritten on the top. (*Kim* Docket no. 2).

[5] The Court has found the defendants failed to comply with the disclosure and reporting
provisions in Section 1703(a)(1). Plaintiffs have acknowledged that they are not pursuing any
claim under Section 1703(a)(2). (Hr'g Sept. 14, 2009).

advance of signing a contract. Section 1703(b) provides that any non-exempt contract may be revoked at the option of the purchaser within seven days following the signing of the contract. Section 1703(b) further provides that the contract "shall clearly provide this right." Section 1703(c) provides that any contract for the sale of a lot, for which a property report is required, may be revoked at the option of the purchaser within two years of the date of the signing if the property report was not given to the purchaser in advance of the signing of the contract. Section 1703(c) also requires that the contract "shall clearly provide this right."[6]

Section 1709, titled "Civil liabilities," provides certain remedies for violations of the ILSFDA. Section 1709(a) provides that a purchaser may bring an action against a developer or agent if the sale was made in violation of Section 1703(a). Section 1709(a) provides:

> A purchaser or lessee may bring an action at law or in equity against a developer or agent if the sale or lease was made in violation of section 1703(a) of this title. In a suit authorized by this subsection, the court may order damages, specific performance, or such other relief as the court deems fair, just, and equitable. In determining such relief the court may take into account, but not be limited to, the following factors: the contract price of the lot or leasehold; the amount the purchaser or lessee actually paid; the cost of any improvements to the lot; the fair market value of the lot or leasehold at the time relief is determined; and the fair market value of the lot or leasehold at the time such lot was purchased or leased.

Section 1709(b) provides that a purchaser may bring an action against the seller to enforce any right under Section 1703(b), (c), (d), or (e), the provisions relating to revocation. Section 1709(b) provides:

> A purchaser or lessee may bring an action at law or in equity against the seller or lessor (or successor thereof) to enforce any right under subsection (b), (c), (d), or (e) of section 1703 of this title.

---

[6] Plaintiffs do not assert that the defendants committed a violation of Section 1703(d), so those provisions are not addressed herein. (Hr'g Sept. 14, 2009). Additionally, Section 1703(e) will not be discussed since the plaintiffs have acknowledged that the provisions of Section 1703(e) are not applicable to this case. (Hr'g Sept. 14, 2009).

Section 1709(c) provides that the amount recoverable in a suit under the ILSFDA may include, in addition to the matters specified in subsections (a) and (b), interest, court costs, reasonable amounts for attorneys' fees, independent appraisers' fees, and travel to and from the lot.

Section 1711, titled "Limitation of actions," provides that no action may be maintained under Section 1709 for a violation of Section 1703(a)(1) more than three years after the date of signing of the contract. Section 1711(b) provides that no action to enforce a right created under Section 1703(b), (c), (d), or (e) may be maintained unless brought within three years after the signing of the contract.

Section 1701(5) defines developer as "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision." Section 1701(6) defines agent as "any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision; but shall not include an attorney at law whose representation of another person consists solely of rendering legal services."

## Recommendations

On July 21, 2009, the Court entered an Order referring this matter to the undersigned for a Report and Recommendation addressing five specific questions. (Docket no. 96). Each of the five questions contained in the Order of referral are addressed in separate sections below. These recommendations are made following a thorough review of the briefs submitted by counsel for the parties (Docket nos. 121, 122, 132, 133, 147, 157), the lengthy hearing held on September 14, 2009, an independent review of the pleadings filed during the history of this consolidated matter, and the arguments made by counsel during the course of the proceedings as they relate to the referred questions.

8

**I. What facts or proof must each plaintiff adduce and establish to obtain the equitable relief sought, namely an order rescinding or voiding the plaintiff's contract and requiring the return of his or her deposit thereunder, in the form of either**

      **a. such "relief as the court deems fair, just, and equitable" for any 15 U.S.C. § 1703(a) violation, pursuant to 15 U.S.C. § 1709(a); or**

      **b. any remedy "in equity" for any 15 U.S.C. § 1703(b), (c), or (d) violation, pursuant to 15 U.S.C. § 1709(b)?**

Given the Court's earlier ruling that the defendants have failed to comply with the disclosure requirements contained in Section 1703(a)(1), plaintiffs contend the only fact or evidence that needs to be adduced or established at trial is the amount of the deposits each plaintiff paid. (Docket no. 121 at 8-11). Plaintiffs have argued repeatedly that no other proof is needed because the UPAs are void *ab initio*. Plaintiffs assert that since the UPAs failed to comply with the provisions in the ILSFDA, the UPAs are "unlawful" and that a contract which violates a statute is void. During the hearing on September 14, 2009, plaintiffs limited this argument somewhat by stating that any violation of the ILSFDA may not make a UPA void *ab initio,* but a material violation of the disclosure requirements in Section 1703(a)(1), as in this case, would render the UPAs void *ab initio*. (Hr'g Sept. 14, 2009). Plaintiffs continue to take the position that they are not seeking equitable relief and that their claim is for damages – the deposits paid pursuant to an "unlawful contract". (Docket no. 121 at 9-10, Docket no. 133 at 2).

Defendants acknowledge that, under the Court's earlier ruling granting plaintiffs partial summary judgment, the plaintiffs had the option to revoke the UPAs for a period of two years from the date of signing since no printed property report was provided to the plaintiffs. However, defendants argue that the two year period for revocation provided in Section 1703(c) expired without any plaintiff exercising the option to revoke his or her UPA. Defendants further claim that the plaintiffs have repudiated rescission and all other equitable remedies throughout

their pleadings, claiming they have an adequate remedy at law. Defendants argue that this Court should hold the plaintiffs to their pleadings and disallow the award of any equitable remedy. In addition, defendants argue that the plaintiffs are precluded from receiving damages because that would require the plaintiffs to have performed their obligations under the UPAs. In the event the plaintiffs are allowed to proceed on their claim for relief, defendants argue the plaintiffs should be required to present particularized proof of causation and damage resulting from the disclosure violations of the ILSFDA. (Docket no. 122 at 2-7).

The general rule in Virginia is that a contract to perform an act prohibited by a statute is void and an action will not lie to enforce the contract. *P.M. Palumbo, Jr., M.D., Inc. v. Bennett*, 409 S.E.2d 152, 153 (Va. 1991); *Watters & Martin, Inc. v. Homes Corp.*, 116 S.E. 366, 370 (Va. 1923). There is an exception, however. The Virginia Supreme Court has held that:

> It is conceded that, as a general rule, a contract founded on an act forbidden by a statute under a penalty is void, although it not expressly declared to be so, but it does not *necessarily* follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it. The question is, in a great measure, one of legislative intent, and its determination depends, as in other cases, on the construction of the statute.
> ***
> [A] statute, containing a prohibition and a penalty, makes the acts which it punishes *unlawful*, and the same may be implied from a penalty without a prohibition. But it does not follow that the unlawfulness of the act was meant by the legislature to avoid a contract made in contravention of it. When the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void.

*Neimeyer v. Wright*, 75 Va. 239, 243-44 (1881) (emphasis in original, citations omitted). "The courts should always look to the language of the statute, the subject matter, the wrong it seeks to prevent, and the purpose to be accomplished in its enactment; and if from these it is manifest that it was *not intended* to render the act in contravention of the statute void, the courts will so hold." *Palumbo*, 409 S.E.2d at 153 (*citing Watters & Martin*, 116 S.E. at 370) (emphasis in original).

In *Blick v. Marks, Stokes and Harrison*, 360 S.E.2d 345, 348 (Va. 1987), the Virginia Supreme Court examined a statute prohibiting substitute judges from appearing as counsel in any matter arising out of the circumstances involved in any other case brought before them and found that the legislature did not intend a contract in violation of that statute to be void unless the "litigant has been prejudiced by the violation." Thus, a contract will be enforceable, notwithstanding a statutory violation, if it appears that the legislature did not intend to render a contract in violation of the statute void, but rather intended that the violation would be subject to the penalties provided in the statute. *Taylor Thiemann & Aitken v. Hayes*, 418 S.E.2d 897, 899 (Va. 1992).

In this case, Congress has established detailed remedies for violations of the ILSFDA, which include giving the purchaser *the option* of revoking the contract under certain conditions. Accordingly, the undersigned recommends a finding that it was not the intent of Congress that a contract be deemed void *ab initio* if it does not comply with the provisions of the ILSFDA. Congress has given the courts broad discretion to grant purchasers legal and equitable relief for violations of the ISLFDA under either Section 1709(a) or Section 1709(b). In addition, Congress has established a three year limitations period for the filing of suits to enforce the provisions of Section 1703 and it has set a two year time period for a purchaser to exercise his or her right to automatic revocation of a contract if the purchaser was not provided with a property report as required by the ILSFDA. These provisions are not consistent with the intent to hold all contracts in violation of Section 1703, or even those contracts in violation of Section 1703(a), void *ab initio*. Where a contract is void *ab initio*, it may not be affirmed or enforced by either party; it is null from its inception. *Liverpool and London and Globe Ins. Co. v. Bolling*, 10 S.E.2d 518, 522 (Va. 1940); *see also Black's Law Dictionary*, 1709 (9th ed. 2009). In the case of the ILSFDA, it is clear that the intent of Congress was to allow purchasers the option to affirm land sales

contracts despite a developer's violation of the ILSFDA. As such, the UPAs should not be deemed void *ab initio* as argued by the plaintiffs. Rather, as provided for in the ILSFDA, a purchaser has an automatic right to revoke the contract within seven days of signing (Section 1703(b)) and an automatic right to revoke within two years of signing if no property report was provided (Section 1703(c)). The seller is not relieved of its obligations under the contract because of a violation of the ILSFDA. Deeming the UPAs in this case void *ab initio* would be inconsistent with the statutory scheme established by Congress.

In considering the appropriate relief, if any, to be awarded to the plaintiffs in this action, it is significant that the only claim asserted in the second amended complaint is a violation of Section 1703(a). The plaintiffs have not averred that they gave the defendants notice of revocation under either Section 1703(b) or (c) and there is no dispute that the plaintiffs did not provide notice of revocation to the defendants within two years of the signing of the UPAs. As such, the plaintiffs' right to an automatic revocation of the UPAs under Sections 1703(b) and (c) has elapsed. As this Court stated in the July 21, 2009 Order adopting in part and modifying in part the earlier Report and Recommendation, plaintiffs are not entitled to automatic, unconditional revocation of the UPAs under Sections 1703(b), (c), or (d) as a result of their failure to comply with those provisions' time requirements. (Docket no. 95).

While the second amended complaint does not refer to, or seek to enforce, any right of revocation under Section 1703(b) or (c), plaintiffs do make the allegation that no property report was delivered to any purchaser as required by the ILSFDA. (Docket no. 47, ¶ 18). Plaintiffs also argue (but did not allege in their second amended complaint) that the UPAs did not "clearly provide" the right to revoke the UPA within two years of signing when a property report was not

delivered prior to the signing, a requirement contained in Section 1703(c).[7] Plaintiffs now argue that the failure to include notice of the right to revoke in the UPAs was itself a violation of Section 1703(c) and would entitle them to seek enforcement of that right under Section 1709(b). Accordingly, it appears that plaintiffs may be seeking relief under Section 1709(a) for the disclosure violations in Section 1703(a)(1)(A) and (B) and relief under Section 1709(b) for the failure to provide notice that the UPA could be revoked within two years if a property report was not provided as required by Section 1703(c).

The Order of referral provides that the remedies in both Section 1709(a) and (b) be discussed. In discussing those sections, there are two significant differences between Sections 1709(a) and (b) that must be examined. First, Section 1709(a) authorizes suits against "a developer or agent" while Section 1709(b) authorizes suits against "the seller or lessor (or the successor thereof) . . . ." The importance of this difference is greater than it first appears. Section 1701(5) defines a "developer" as "any person who, directly or indirectly, *sells or leases*, or offers to sell or lease, or advertises for sale or lease . . . ." In contrast, Section 1701(6) defines an "agent" as "any person who *represents, or acts for or on behalf of*, a developer in selling or leasing, or offering to sell or lease . . . ." Thus, as defined by the ILSFDA, it appears that only developers, and not their agents, are considered sellers or lessors. As such, the undersigned magistrate judge recommends a finding that actions at law or in equity under Section 1709(b) may be brought only against sellers/developers for violations of Section 1703(c), whereas actions

---

[7] While plaintiffs assert that the UPAs did not clearly provide a right to revoke the UPA within seven days of signing, as required by Section 1703(b), they acknowledge that the claimed failure to provide that notice was not prejudicial since none of the plaintiffs expressed a desire to revoke the UPA within seven days of its signing. A review of the UPAs at issue reveal that the plaintiffs were, in fact, given clear notice that they had a ten day period during which they could cancel the agreement without penalty and any deposit would be returned in its entirety. (Docket no. 47, Exs. C and D, ¶ 11). Given the inclusion of that notice in the UPAs, it does not appear that the plaintiffs would have a viable claim under Section 1703(b).

at law or in equity pursuant to Section 1709(a) may be brought against developers *or their agents* for violations of Section 1703(a). Allowing only sellers to be subject to actions for a violation of Section 1703(c) is consistent with the remedy provided in that section – the enforcement of the right of revocation – which would involve the actual seller of the property.

The second difference between Section 1709(a) and Section 1709(b) is that, while both authorize suits at law or in equity, Section 1709(a) contains additional language directing that "the court may order damages, specific performance, or such other relief as the court deems fair, just, and equitable." Section 1709(a) also guides the Court by suggesting that the Court "may take into account, but not be limited to, the following factors: the contract price of the lot or leasehold; the amount the purchaser or lessee actually paid; the cost of any improvements to the lot; the fair market value of the lot or leasehold at the time relief is determined; and the fair market value of the lot or leasehold at the time such lot was purchased or leased." Although this language offers guidance to the Court as to the proper application of remedies available to plaintiffs under Section 1709(a), its absence in Section 1709(b) does not appear to limit the ability of the Court to provide equitable relief under that section. Rescission is, of course, one of the classic equitable remedies. In granting purchasers the ability to file suits at law or *in equity* under either Section 1709(a) or (b), Congress must have contemplated that rescission would be available upon a proper showing of proof. As such, the undersigned magistrate judge recommends a finding that rescission could be an available remedy under either Section 1709(a) or (b).

**Relief under Section 1709(a) for a violation of Section 1703(a).**

There is no dispute that the defendants failed to comply with the provisions of Sections 1703(a)(1)(A) and (B), which require that a statement of record be in effect prior to the sale and

14

that a printed property report be delivered to the purchaser in advance of the signing of the contract. The questions remaining are: what remedies are available to the plaintiffs for these violations; and what facts or proof must each plaintiff adduce and establish to obtain equitable relief.[8] As the Court recognized in its Order of referral, each plaintiff is, in fact, seeking equitable relief, namely an order rescinding or voiding the plaintiff's contract and requiring the return of his or her deposit thereunder. The Court also recognized that Section 1709(a) provides the Court with broad powers to award "relief as the court deems fair, just, and equitable."

To obtain the equitable remedy of rescission in Virginia[9], "the highest and most drastic exercise of the power of a court of chancery," a party must make "a sufficient averment of facts showing the plaintiff entitled in equity to the relief which he seeks, and satisfactory proof of these facts, to justify the interposition of the court; and, in addition to all this, the court must be able substantially to restore the parties to the position which they occupied before they entered into the contract." *Bonsal v. Camp*, 69 S.E. 978, 979 (Va. 1911). A suit for rescission is addressed to the sound discretion of the Court and ordinarily will not be granted unless the breach is "of such substantial character as to defeat the object of the parties in making the contract . . . ." *Bolling v. King Coal Theaters, Inc.*, 41 S.E.2d 59, 62 (Va. 1947) (citations omitted). "Rescission of a contract requires that the contract be terminated for all purposes and that the parties 'be restored to the status quo' prior to the making of the agreement." *Orsi v. Kirkwood*, 1992 WL 511406, at *5 (E.D. Va. 1992) (citing *McLeskey v. Ocean Park Investors, Ltd.*, 405 S.E.2d 846, 847 (Va. 1991)). "If a court finds that a condition exists which renders it

---

[8] In order to prevail in this case, the plaintiffs would need to demonstrate certain basic facts to establish that the Court has subject matter jurisdiction, that the plaintiffs executed the UPAs, and the role that each defendant played in that process. The undersigned has interpreted the Order of referral as requiring a recommendation as to the relief sought and not each and every element the plaintiffs must establish to prevail at trial.

[9] The parties have argued and agree that Virginia law applies in this case.

impossible to restore the parties to their original positions, rescission will be refused." *Id.* (citing *Rafferty v. Heath*, 78 S.E. 641, 642 (Va. 1913)).

In this case, to obtain rescission under Section 1709(a), the plaintiffs must establish facts sufficient to show that they are entitled to the equitable relief of rescission of the UPAs and that the parties may be restored substantially to the position they occupied before the UPAs were consummated. In order for each plaintiff to invoke the equitable remedy of rescission under Virginia law, it is recommended that that each plaintiff must establish by a preponderance of the evidence that the violations of the ILSFDA were of a substantial character and that he or she was prejudiced by the violation. *See Blick*, 360 S.E.2d at 348; *Bolling*, 41 S.E.2d at 62. In that regard, the undersigned recommends, that to obtain rescission under Section 1709(a) for a violation of Section 1703(a)(1)(A), each plaintiff must show that the failure to have a statement of record in effect at the time he or she signed the UPA constituted a substantial violation and that he or she was prejudiced as a result. For a violation of Section 1703(a)(1)(B), each plaintiff must show that the failure to have a property report in compliance with Section 1707 delivered prior to the signing of the UPA constituted a substantial violation and that he or she was prejudiced as a result. This would include a showing that the information that should have been contained in those documents was not provided to the plaintiff in any other form, that the information would have been significant to the plaintiff in deciding whether to enter into a UPA at that time, and that if that information would have been provided in a timely manner he or she would not have entered into the UPA. Finally, each plaintiff will have to demonstrate that the parties may be placed back into the position they occupied before the UPA was signed, which would include having the deposits paid by the plaintiffs returned and releasing the parties from any further obligations to perform under the UPAs.

16

**Relief under Section 1709(b) for a violation of Section 1703(c)**

Section 1703(c) provides a purchaser with the unconditional right to revoke the contract within two years from the date the contract was signed if a property report was not provided to the purchaser prior to the signing of the contract. It is undisputed that the defendants, believing that they were exempt under Section 1702, did not have a printed property report delivered to the purchasers before the UPAs were signed.[10]

Section 1703(c) also provides that a contract shall "clearly provide" notice of a purchaser's option to revoke the contract within two years of its signing if a property report was not given to the purchaser in advance of the signing. It is undisputed that the UPAs did not provide that notice and the undersigned agrees with the plaintiffs that the defendants' failure to provide that notice in the UPA was a violation of Section 1703(c).

Under Section 1709(b), a purchaser may bring an action at law or in equity against a seller to enforce "any right" under Section 1703(c). As discussed in the Court's Order adopting in part and modifying in part the first Report and Recommendation, plaintiffs are not entitled to the automatic revocation remedy provided in Section 1703(c). A finding that the plaintiffs are not entitled to automatic revocation is not the end of the inquiry because Section 1709(b) provides that the plaintiffs may bring "an action at law or in equity . . . to enforce any right" under Section 1703(c). Although plaintiffs are not entitled to seek the automatic right of revocation for the defendants' failure to deliver a property report, a claim under Section 1703(c) that the UPAs failed to "clearly provide" notice of that right to revoke remains. *See Murray v.*

---

[10] The requirement to provide a purchaser with a printed property report in compliance with Section 1707 prior to the signing of the contract is contained in Section 1703(a)(1)(B). Section 1703(c) gives the purchaser the option to revoke the agreement within two years of the date of signing if the property report is not provided as required in Section 1703(a)(1)(B). Section 1709(a) provides additional remedies for a violation of Section 1703(a)(1)(B).

*Holiday Isle, LLC*, 620 F. Supp. 2d 1302, 1311 (S.D. Ala. 2009) (noting that Section 1703 is divisible into a revocation element and a notice element).

The limitations period applicable to the plaintiffs' right to enforce violations of Section 1703(c), by filing an action at law or in equity, is found in Section 1711(b). This latter Section grants plaintiffs three years from the signing of the contract to bring an action under Section 1709(b) for the enforcement of Section 1703(c). This action was brought within three years of the signing of the UPAs so, to the extent it seeks relief under Section 1709(b) other than the automatic right of revocation pursuant to Section 1703(c), it was filed in a timely manner.

For the same reasons discussed above regarding the necessary showing for equitable relief under Section 1709(a), to obtain the equitable remedy of rescission under Section 1709(b) for a violation of Section 1703(c), each plaintiff must demonstrate that the failure to provide notice of the right to revoke within two years for failure to deliver a property report was substantial and that he or she was prejudiced as a result. This would include a showing by each plaintiff that if the notice had been provided in the UPA, that he or she would have exercised the right to revoke the UPA within the two year time period allowed. Finally, the plaintiffs will have to demonstrate that the parties may be placed back into the position they occupied before the contract, which would include having the deposits paid by the plaintiffs returned and releasing the parties from any further obligations to perform under the UPAs.

## II. What facts or proof must defendants (or each of them) adduce to establish each asserted affirmative defense?

At the hearing held before the undersigned magistrate judge on September 14, 2009, counsel for the defendants stated that defendants intend to assert defenses based on the statute of limitations,[11] laches, estoppel, unclean hands, and failure of condition precedent. In briefs filed

---

[11] The statute of limitations defense is discussed separately in Part IV.

with the Court on August 28, 2009 and September 9, 2009, defendants also assert the defenses of failure to state a claim upon which relief can be granted, that the ILSFDA does not apply, lack of legal or factual basis for declaratory relief, and damages are precluded by plaintiffs' intention not to perform. (Docket nos. 122, 132). Plaintiffs argue that given the Court's granting of partial summary judgment, no affirmative defenses are available to the defendants. (Docket no. 121).

### a. Laches

The affirmative defense of laches "'requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *Kansas v. Colorado*, 514 U.S. 673, 687 (1995) (quoting *Costello v. United States*, 365 U.S. 265, 282 (1961)). A party lacks diligence where it inexplicably or inexcusably delays in asserting a known right. *See Tobacco Workers Int'l Union, Local 317 v. Lorillard Corp.*, 448 F.2d 949, 958 (4th Cir. 1971). Thus, laches may not be imputed to a party who is ignorant of its rights. *Jameson v. Rixey*, 26 S.E. 861, 862-63 (Va. 1897) (citations omitted). The two kinds of prejudice that might support a defense of laches are "(1) the delay has resulted in the loss of the evidence which would support the defendant's position; or (2) the defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." *Tobacco Workers Int'l Union*, 448 F.2d at 958-59.

To make out a successful defense of laches in this case, defendants must demonstrate: 1) a plaintiff knew about his or her right to revoke the UPA; 2) the plaintiff inexplicably or inexcusably delayed in asserting the right to revoke; and 3) evidence has been lost that would support the defendants' position or the defendants have changed their position in a way that would not have occurred had the plaintiff not delayed. In support of this defense, counsel for the defendants argues that the plaintiffs waited a long period before filing suit and gave no notice of

19

revocation while the developer was building the condominium units to the specifications of the plaintiffs. (Docket no. 122 at 8).

### b. Estoppel

The doctrine of equitable estoppel prevents a party "whose action or inaction has induced reliance by another from benefiting from a change in his position at the expense of the other." *Hilfiger v. Transamerica Occidental Life Ins.*, 505 S.E.2d 190, 193 (Va. 1998) (citations omitted). "Under Virginia law, the doctrine of equitable estoppel has four elements, each of which must be proved by clear and convincing evidence: (1) a representation, (2) reliance, (3) a change in position and (4) some detriment accruing to the relying party." *Newcom Holdings Pty., Ltd. v. Imbros Corp.*, 369 F. Supp. 2d 700, 713-14 (E.D. Va. 2005) (citing *Dominick v. Vassar*, 367 S.E.2d 487, 489 (Va. 1988)).

To succeed on the defense of estoppel, the defendants in this case must prove, by clear and convincing evidence: 1) that a plaintiff made some representation to the defendants; 2) the defendants relied on that representation; 3) the defendants changed their position as a result; and 4) the defendants incurred some detriment. In support of this defense, defendants argue that they relied on representations from the plaintiffs that they were going to perform under the UPAs and that the lack of communication of the intent to revoke made the defendants' reliance reasonable. (Docket no. 132 at 12). Defendants acknowledge that they will have to demonstrate that a plaintiff represented that he or she was going to perform under the UPAs, that the plaintiff never did anything inconsistent with that representation during the time that defendants were performing, that the defendants reasonably relied on this fact in assuming that the plaintiffs would close when the project was finished, and that the defendants were injured as a result.

### c. Unclean Hands

The doctrine of unclean hands "prevents a plaintiff from obtaining equitable relief if the plaintiff has been 'guilty of any inequitable or wrongful conduct with respect to the transaction or subject matter sued on.'" *Smithfield Foods, Inc. v. United Food and Commercial Workers Int'l*, 593 F. Supp. 2d 840, 847 (E.D. Va. 2008) (quoting *WorldCom, Inc. v. Boyne*, 68 Fed. Appx. 447, 451 (4th Cir. 2003)). A defendant may invoke this affirmative defense only if there is a specific nexus between a plaintiff's alleged misconduct and the transaction at issue. *In re Hathaway*, 364 B.R. 220, 243 (Bankr. E.D. Va. 2007). Thus, the doctrine of unclean hands bars the Court from exercising its equitable powers to assist a plaintiff where that plaintiff engages in conduct related to plaintiff's claim that is inequitable and injurious to the defendant. *Great E. Resort Corp. v. Virtual Resort Solutions, Inc.*, 189 F. Supp. 2d 469, 480 (W.D. Va. 2002).

In order to assert successfully the defense of unclean hands, the defendants must demonstrate that a plaintiff is guilty of some inequitable or wrongful conduct with respect to the UPAs. The defendants must make this showing for each plaintiff individually, and would only succeed in preventing a plaintiff from recovery if that individual plaintiff was shown to have unclean hands. In support of this defense, defendants argue they have the right to test the willingness of the purchasers to perform from the outset of the agreements. Defendants believe that they may be able to prove that some of the plaintiffs knew early on that they did not intend to purchase their respective unit or that they were mere "speculators". (Docket no. 122 at 8). Defendants argue that lack of communication of the intent not to perform under the UPA made it impossible for the defendants to either resell the units or convert the project to an apartment complex. Defendants recognize that they would have to prove intent on the part of each plaintiff not to perform as he or she had represented in the UPA. In response, plaintiffs argue that the

defendants' failure to register the project under the ILSFDA made it impossible for the defendants to sell the units to anyone legally and that defendants could not have converted the complex to apartments because the UPAs contain covenants that the units will be condominiums.

### d. First Breach

Under Virginia law, "a party who commits the first material breach of a contract is not entitled to enforce the contract." *Centex Constr. v. Acstar Ins. Co.*, 448 F. Supp. 2d 697, 714 (E.D. Va. 2006) (citing *Horton v. Horton*, 487 S.E.2d 200, 203 (Va. 1997)). "A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Horton*, 487 S.E.2d at 204 (citations omitted). "An exception to this rule arises when the breach did not go to the 'root of the contract' but only to a minor part of the consideration." *Id.* at 203 (quoting *Fed. Ins. Co. v. Starr Elec. Co.*, 410 S.E.2d 684, 689 (Va. 1991)). Thus, defendants would have to show that a plaintiff materially breached the UPA before the defendants did. In asserting this defense, the defendants' briefs note only that the plaintiffs "ultimately refused to fulfill the [UPAs] in anticipatory breach of their obligations." (Docket no. 132). At oral argument on September 14, 2009, defense counsel argued that the first breach defense is, to some extent, synonymous with the unclean hands defense.[12]

### e. Failure of Condition Precedent

A condition precedent is "[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises." *Black's Law Dictionary*, 334 (9th ed. 2009); *see also In re LCS Homes, Inc.*, 103 B.R. 736, 745 (Bankr. E.D. Va. 1989). A condition precedent is "distinguishable from a promise, in that it creates no rights or duties in

---

[12] Defendants are incorrect in this respect. It is possible that a plaintiff has committed inequitable conduct related to the UPAs such that they have unclean hands without that plaintiff having breached the contract.

and of itself but is merely a limiting or modifying factor." *LCS Homes*, 103 B.R. at 743 (citation omitted). Fed. R. Civ. P. 9(c) allows a party to a "allege generally that all conditions precedent have occurred or been performed. But, when denying that a condition precedent has occurred, or been performed, a party must do so with particularity." Fed. R. Civ. P. 9(c). It has been said that "the law generally does not favor conditions precedent" but that a Court may find one to exist where that result is compelled by the plain language. *Standefer v. Thompson*, 939 F.2d 161, 164 (4th Cir. 1991). When deciding whether the plain language creates a promise or a condition precedent, "phrases such as 'if,' 'provided that,' 'when,' 'after,' 'as soon as,' or 'subject to,' that traditionally indicate conditions . . . although helpful, are unnecessary to create a condition[.]" *Id.*

In this case, defendants allege that communication of intent to revoke within the two year period set forth in Section 1703(c) is a condition precedent to an action for rescission under the ILSFDA. In making this argument, defendants impliedly invite the Court to adopt the reasoning in *Taylor v. Holiday Isle, LLC*, 561 F. Supp. 2d 1269 (S.D. Ala. 2008).[13] The undersigned magistrate judge declines this invitation and recommends that the Court find instead that communication of revocation within two years is a condition precedent only to the automatic right of revocation provided in Section 1703(c). The undersigned magistrate judge does not, however, recommend a finding that notice of revocation within two years is a condition precedent to a claim for rescission upon adequate proof pursuant to the equitable powers granted to the Court by Section 1709 for violations of Sections 1703(a) and (c).

---

[13] In doing so, defendants ignore the guidance given by the Court's Order affirming in part and modifying in part the first Report and Recommendation. (Docket no. 95) ("The scant case law addressing these issues has incorrectly presumed that the *only* ILSFDA revocation or rescission remedies are those automatic revocation rights in § 1703(b), (c), and (d).")

### f. The ILSFDA does not apply; failure to state a claim upon which relief can be granted; damages are precluded by plaintiffs' intention not to perform.

Given the Court's earlier rulings, it appears that these defenses have been raised in defendants' briefs in order to preserve their arguments in the event of an appeal. As such, they will be dealt with together.

Defendants revive their argument that the ILSFDA does not apply to the UPAs while conceding that the Court has ruled previously that it does apply. (Docket no. 132). In addition, defendants argue that plaintiffs have failed to state a claim on which relief may be granted because plaintiffs have decried any form of equitable relief and the plaintiffs are not entitled to damages because they are unwilling to perform their obligations under the UPAs. (Docket no. 132). Finally, defendants argue that the plaintiffs' stated intention not to perform under the UPAs precludes them from receiving damages. (Docket no. 132).

In light of the prior ruling of the Court that the ILSFDA does apply to the UPAs (Docket no. 69), there are no facts or proof the defendants may adduce to succeed on the defense that ILSFDA does not apply to the UPAs or that the plaintiffs have failed to state a claim for relief. Furthermore, the plaintiffs' intention not to perform is no defense to an equitable action for rescission. Indeed, it is a prerequisite to that cause of action.

### g. Lack of legal or factual basis for declaratory relief

Defendants argue that declaratory relief is inappropriate because the claims here have matured and declaratory relief is available only for claims that have not matured. (Docket no. 132). Without analyzing the defendants' arguments in this regard, this defense may be disposed of because plaintiffs do not seek declaratory relief. Rather, as stated repeatedly, plaintiffs seek rescission of the UPAs and the return of their deposits. Defendants' arguments may well set

forth a valid defense against entry of declaratory judgment,[14] but they are no defense to an action for rescission.

### III. Are plaintiffs entitled to a jury trial on any fact or issue that each plaintiff must establish to obtain the equitable remedies they seek?

There are two issues in this case related to the right, if any, of the plaintiffs to receive a trial by jury on any fact or issue they must establish to receive the equitable remedies they seek. First, paragraph thirty six of the UPAs is a jury waiver clause. Second, and regardless of whether the right has been waived, there is the issue of whether plaintiffs have a right to have any fact or issue tried by a jury given the equitable nature of the remedies they seek.

#### a. Jury Waiver Clause

Parties to civil actions have the right to waive trial by jury. *Quick v. Southern Churchman Co.*, 199 S.E. 489, 494 (Va. 1938). "Where there has been a knowing, intentional and voluntary waiver of the right to a jury trial there is no absolute constitutional right to withdraw it." *Carter v. Virginia*, 345 S.E.2d 5, 9 (1986) (citing *Riadon v. United States*, 274 F.2d 304, 301 (6th Cir. 1960), *cert. denied*, 364 U.S. 896 (1960)). Where waiver of a trial by jury is claimed under a contract executed before litigation is contemplated, the Fourth Circuit has held that the party seeking enforcement of the waiver must prove that consent was both voluntary and informed. *Leasing Service Corp. v. Crane*, 804 F.2d 828, 833 (4th Cir. 1986) (citations omitted). Contractual provisions waiving trial by jury in civil actions are neither illegal nor contrary to public policy. *Smith-Johnson Motor Corp. v. Hoffman Motors Corp.,* 411 F. Supp. 670, 677 (E.D. Va. 1975) (citations omitted).[15]

---

[14] The undersigned magistrate judge expresses no opinion either way.

[15] The parties have not cited to the Court and the undersigned has not located any authority that the ILSFDA would limit the parties' right to waive a trial by jury.

Both versions of the UPAs include a paragraph waiving all rights to trial by jury.

(Docket no. 47, Exs. C and D, ¶ 36). This paragraph, in capital letters and bold type, states in

pertinent part:

> **PURCHASER AND DECLARANT EACH WAIVE TRIAL BY JURY IN
> ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY
> EITHER OF THE PARTIES HERETO AGAINST THE OTHER, ON OR
> WITH RESPECT TO ANY MATTER WHATSOEVER RELATING IN
> ANY WAY TO THIS AGREEMENT, THE CONDOMINIUM,
> CONDOMINIUM UNIT OR OTHERWISE, INCLUDING BUT NOT
> LIMITED TO CLAIMS ARISING IN CONTRACT, TORT,
> NEGLIGENCE, FRAUD, OR BY ANY APPLICABLE STATUTE . . . .**

Defendants argue that this clause effectively waives any right plaintiffs had to demand a jury.

(Docket no. 122). Defendants further argue that the jury waiver clause should be treated as an

independent covenant and only held void if there was fraud in the inducement of that specific

clause. Plaintiffs argue that this clause is void because the entire contract is void *ab initio*.

(Docket no. 121). When asked to assume *arguendo* that the UPAs are not void *ab initio*,

plaintiffs argue that the UPAs, including that provision, were avoided with the filing of the

present action. Importantly, plaintiffs concede that, if the UPAs were not avoided upon the filing

of the action, the jury waiver clause is valid and effective. (Hr'g Sept. 14, 2009). Furthermore,

plaintiffs have made no argument that the jury waiver clause was included in the UPAs without

the plaintiffs' knowledge or against their will. Having already recommended rejection of the

argument that the UPAs were void *ab initio* above, and the plaintiffs presenting no authority to

support the argument that merely filing this lawsuit after the two year period for automatic

revocation had expired has avoided all the provisions in the UPAs, the undersigned recommends

a finding that the jury waiver clause in this case is effective and therefore the plaintiffs have

waived trial by jury.

### b. No Right to Jury Trial on Equitable Issues

If the Court were to find that the jury waiver clause was ineffective, it could still find that there is no right to trial by jury on any issues because the right to trial by jury in civil cases in federal courts is controlled by the Seventh Amendment to the United States Constitution, which "protects a litigant's right to a jury trial only if a cause of action is legal in nature and it involves a matter of private right." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 n.4 (1989). Thus, litigants do not have a right to a jury trial in suits in equity. *See Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. 433, 447 (1830)). Nevertheless, "where equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims." *Ross v. Bernhard*, 396 U.S. 531, 537-38 (1970). As such, a determination must be made as to whether the issues are legal or equitable and that determination is accomplished by looking at each issue to be tried rather than the overall character of the action. *Id.* at 538. In making this determination, it is proper to consider "first, the pre-merger custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries." *Id.*

Courts examining whether the ILSFDA requires a jury trial for equitable issues are in agreement that it does not. In holding this, the Court of Appeals of New Mexico stated:

> We do not rule out the possibility that some federal statutes may create a statutory right to a jury trial regarding certain types of counterclaims even when there is no constitutional right to a jury trial on such counterclaims. However, ILSFDA is silent on a purchaser's right to a jury trial, and we find no authority to support the proposition that ILSFDA implicitly grants a purchaser a statutory right to a jury trial when that purchaser brings a suit for equitable rescission in state court. In cases where other types of equitable relief are sought by the government under ILSFDA, or where equitable rescission is sought under federal securities laws that are analogous to ILSFDA, federal courts have reached the conclusion that there is no right to a jury trial. *See Pierce v. Moore*, 654 F. Supp. 401, 402 (W.D. Tex.

1987) (no right to jury trial in suit for injunctive and restitutory relief brought by federal government under ILSFDA); *Kamen v. Kemper Fin. Servs.*, 908 F.2d 1338, 1350-51 (7th Cir. 1990) (interpreting Investment Company Act, 15 U.S.C. § 80a-35(b) (1988)), *rev'd in part on other grounds*, 500 U.S. 90 (1991); *cf. Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990) (noting analogy between ILSFDA and federal securities laws).

*Las Campanas Ltd. P'ship v. Pribble*, 943 P.2d 554, 558 (N.M. Ct. App. 1997). In the *Pierce* case cited by the *Las Campanas* court, the Western District of Texas found there to be no right to a trial by jury under the ILSFDA in part because the plaintiff sought an injunction and restitution. *Pierce*, 654 F. Supp. at 402.

The issues presented by the plaintiffs are equitable in nature. It is rescission that the plaintiffs seek, which would include the return of their deposits as a part of placing the parties in the positions they held prior to the UPAs being executed. The heart of their complaint is a desire to avoid performance of the UPAs and be returned to the status *quo ante*. As the Court has previously noted, the "plaintiffs have elected to seek equitable relief, not damages, and plaintiffs must be bound by that choice." (Docket no. 95). The undersigned recommends that this Court hold that the plaintiffs are not entitled to a trial by jury on any of the facts or issues they must establish to receive the equitable relief they seek.

## IV.  Has any plaintiff failed to comply with 15 U.S.C. § 1711's three-year statute of limitations requirement?

Section 1711(a)(1) mandates that all actions under Section 1709(a) to enforce violations of Section 1703(a)(1) must be brought within three years of contract signing. Similarly, Section 1711(b) mandates that actions under Section 1709(b) to enforce violations of Section 1703(b)-(e) must be brought within three years of contract signing. Defendants have the burden of establishing facts sufficient to prevail on a statute of limitations defense.

The dual mandates of Section 1711 are complicated somewhat because this case was filed as a class action lawsuit. Plaintiffs argue that the commencement of a class action suit tolls

the running of the applicable statute of limitations for all asserted members of the class. *See American Pipe and Constr. Co. v. Utah*, 414 U.S. 538, 553-54 *reh'g denied* 415 U.S. 952 (1974); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-54 (1983). Defendants argue that tolling should not apply because the complaint failed to include a verifiable class definition. (Docket no. 132 at 14). If the tolling applies, the limitations period is tolled until class certification is denied. *Crown, Cork & Seal*, 462 U.S. at 354. The Fourth Circuit has held that tolling of the class members' claims occurs "regardless of whether the members eventually intervened or filed new actions *and regardless of why the district court denied certification.*" *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 210 (4th Cir. 2006) (emphasis added) (discussing *Crown, Cork & Seal*, 462 U.S. 345); *see also Smith v. Pennington*, 352 F.3d 884, 892-93 (4th Cir. 2003). The burden of establishing facts that support a conclusion that the limitations period has been tolled rests with the proponent of tolling. *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 597 (4th Cir. 1976). Once those facts have been established, whether they set forth a viable claim for tolling is a conclusion of law. *Smith*, 352 F.3d at 892.

As discussed in the facts section above, the defendants argue that ten plaintiffs joined the *Kim* case more than three years after they signed their respective UPAs, but before *Kim* was joined into *Plant* and class certification was denied. Thus, if tolling is not applicable to these plaintiffs and the defendants are correct as to when they were named as plaintiffs, those plaintiffs joined the case too late and the defendants have met their burden of proving that the statute of limitations bars their recovery. Importantly, the *Crown, Cork & Seal* Court has noted:

> that a tolling rule for class actions is not inconsistent with the purposes served by statutes of limitations. Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights, but these ends are met when a class action is commenced. Class members who do not file suit while the class action is pending cannot be accused of sleeping on their rights; Rule 23 both permits and encourages class members to rely on the named

plaintiffs to press their claims. And a class complaint "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *American Pipe*, 414 U.S. at 555. The defendant will be aware of the need to preserve evidence and witnesses respecting the claims of all the members of the class. Tolling the statute of limitations thus creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification.

*Crown, Cork & Seal*, 462 U.S. at 352-53 (internal citations omitted). The mandate of the

Supreme Court is clear. The filing of a class action lawsuit tolls the statute of limitations for all

members of the asserted class until certification is denied, regardless of the reasons for denial.

The ten plaintiffs identified by the defendants were undoubtedly "contract purchasers of

condominium units in the Virginia condominium regime named Vantage at Merrifield," the

definition of the class contained in the original complaint. (Docket no. 1). Furthermore, there is

no dispute that each of those plaintiffs had been joined as a named plaintiff in this action prior

the Court's Order of November 12, 2008 denying plaintiffs' motion for class certification.

(Docket no. 35). As such, they were members of the asserted class and the undersigned

magistrate judge recommends a finding that the plaintiffs' claims are not barred by the statute of

limitations.[16]

## V. Are defendants Michael D. Collier, Uniwest Group, LLC, and Uniwest Development, LLC, "developers" or "agents" of developers subject to ILSFDA liability under 15 U.S.C. § 1701(5) and (6)?

There are two areas of concern raised by this question. First, paragraph thirty eight of the

UPAs is a clause that attempts to exculpate all defendants save Merrifield from liability under

---

[16] Even if the Court declines to find that the statute of limitations was tolled based on the filing as a class action, it appears that at least the following plaintiffs were named as plaintiffs in the amended complaint filed in *Kim* on June 6, 2008, which would be less than three years after they signed their respective UPAs: Jeong Eui Lee; Ryan Jin Lee; Sungkyoon Park; Kwang Y. Choi; and Sae Rho Mee Kim. The fact that the amended complaint did not comply with certain form requirements and was refiled on a later date does not mean the statute of limitations was not tolled upon its filing. *See Loya v. Desert Sands Unified Sch. Dist.*, 721 F.2d 279, 280-81 (9th Cir. 1983); Fed. R. Civ. P. 5(d)(4).

the UPAs regardless of whether they are considered developers or agents. Second, an analysis must be conducted under the provisions of the ILSFDA and existing case law.

### a. Paragraph thirty eight of the UPAs

Paragraph thirty eight of the UPAs is an exculpatory clause that purports to limit the plaintiffs' causes of action to Merrifield and eliminate the ability of the plaintiffs to sue Merrifield's "owners, stockholders, members, partners, managers, directors, officers, employees or agents . . . in connection with any claim arising directly or indirectly" from the contract. (Docket no. 121, Exs. C and D, ¶ 38). The critical language in paragraph thirty eight is clearly written in bold, capital letters. (Docket no. 121, Exs. C and D, ¶ 38). Paragraph thirty eight states that its preclusions extend to, but are not limited to "claims sounding in contract, tort, negligence, fraud, or by any applicable statute . . . ." (Docket no. 121, Exs. C and D, ¶ 38).

Under Virginia law, exculpatory clauses are not favored and are strictly construed against the drafter. *Gill v. Rollins Protective Servs. Co.*, 722 F.2d 55, 58 (4th Cir. 1983) (citing *Fairfax Gas & Supply Co. v. Hadary*, 151 F.2d 939, 940 (4th Cir. 1945)). In *Gill*, the Fourth Circuit held an exculpatory clause invalid where "[t]he limiting provision . . . [did] not in terms attempt to limit [the defendant's] liability for violations of the Virginia Consumer Protection Act." *Gill*, 722 F.2d at 58.

The *Fairfax Gas & Supply* Court held an exculpatory clause to be inapplicable where a supplier of natural gas had knowledge of a leak yet instructed a consumer to start the gas. *Fairfax Gas & Supply*, 151 F.2d at 940. The Court found that the supplier's unique knowledge, coupled with the consumer's lack thereof, required a finding that the exculpatory clause did not relieve the supplier of liability. *Id.* at 942. In so holding, the Court noted that exculpatory clauses are:

31

frequently limited to the principle that parties cannot stipulate for protection against liability for negligence in the performance of a legal duty or a duty of public service, or where a public interest is involved or a public duty owed, or, when the duty owed is a private one, where public interest requires the performance thereof, or where the party to whom the private duty is owed is compelled to submit to such stipulation for exemption.

*Id.* at 940.

Plaintiffs argue, not unexpectedly, that a party may not contract away liability for harm caused to another in violation of a statute. Plaintiffs assert that even if the UPA is not void *ab initio*, these clauses are void and unenforceable. Plaintiffs further argue that the remedies set forth in the ILSFDA must be considered individually against each wrongdoer. Thus, plaintiffs take the position that no developer or agent may limit its liability under the ILSFDA.

Defendants argue that paragraph thirty eight of the contract at issue limits the plaintiffs' causes of action to suits against Merrifield and no other defendant, claiming there is nothing in the ILSFDA or the case law that prevents them from limiting their liability in this way. Rather, defendants suggest that the only limitations on the parties' right to contract imposed by the ILSFDA are found in Section 1712. Section 1712 provides that "[a]ny condition, stipulation, or provision binding any person acquiring any lot in a subdivision to waive compliance with any provision of this chapter or of the rules and regulations of the Secretary shall be void." 15 U.S.C. § 1712. Defendants focus on the word "compliance" in Section 1712 and argue that paragraph thirty eight does not limit defendants' duty to comply with the ILSFDA, but instead limits the remedies that may be sought by plaintiffs and the parties that may be subject to those remedies.

The undersigned magistrate judge does not find the defendants' arguments persuasive. Exculpatory clauses, being strongly disfavored, must explicitly state which causes of action are being waived. Although the exculpatory clause in question waives causes of action against all

32

the defendants save Merrifield for claims arising under "any applicable statute," it does not explicitly waive claims arising out of violations of the ILSFDA. In addition, the duties imposed by the ILSFDA have public and private aspects. They are intended to ensure that purchasers of land have before them enough information to make an intelligent decision. Furthermore, the ILSFDA is intended to protect consumers from fraud and deceit. Given the strong presumption against exculpatory clauses, and interpreting the contract against the drafter, it is the recommendation of the undersigned magistrate judge that the Court find that the exculpatory clause in paragraph thirty eight of the UPAs does not waive causes of action under the ILSFDA against the defendants other than Merrifield.

### b. Defendants' designations under the ILSFDA

As discussed earlier, while the claim under Section 1703(a) can be asserted against a developer or an agent, the claim under Section 1703(c) may be asserted only against a developer. Section 1703(a) prohibits certain activities by a "developer" or "agent" as defined in 15 U.S.C. § 1701. Section 1701(5) defines "developer" as "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision." Section 1701(6) defines "agent" as "any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision . . . ."[17] Under these definitions, it is involvement in efforts to sell, lease, or advertise property that subjects a person to liability under the ILSFDA as a developer or agent. *See Bartholomew v. Northampton Nat. Bank of Easton, Easton, Pa.*, 584 F.2d 1288, 1293 (3d Cir. 1978). Pursuant to the ILSFDA, officers and directors of developers and agents are personally liable for violations of the Act if

---

[17] Section 1701(6) includes the caveat that this definition is not to be found to include "an attorney at law whose representation of another person consists solely of rendering legal services." No defendant has raised this clause as a defense and it will not be further addressed in this Report and Recommendation.

they had personal involvement in efforts to sell the property. *See Kemp v. Peterson*, 940 F.2d 110, 113 (4th Cir. 1991); *Santidrian v. Landmark Custom Ranches, Inc.*, 2008 WL 4571820 at *3 (S.D. Fla. Oct. 14, 2008); *see also U.S. v. Sebring Homes Corp.*, 879 F. Supp. 894, 898 (N.D. Ind. 1994) (discussing *Kemp*, 940 F.2d 110). Signing property reports and having the ability to control employees are actions sufficient to warrant a finding that an officer or director was personally involved in sales efforts. *Hester v. Hidden Valley Lakes, Inc.*, 495 F. Supp. 48, 54 (N.D. Miss. 1980).

### 1. Uniwest Group, LLC

It is established that Merrifield is a Virginia limited partnership. (Docket nos. 47, 51). Plaintiffs state in their second amended complaint that Uniwest Group, LLC is the sole general partner of Merrifield. (Docket no. 47, ¶ 8). Defendants admit that this is true in their answer. (Docket no. 50). Plaintiff makes several allegations about Uniwest Group, LLC's sales efforts. (Docket no. 47). Plaintiffs assert that Uniwest Group, LLC is the only entity having the authority to make decisions on behalf of Merrifield. (Docket no. 47, ¶ 8). Plaintiffs further allege that Uniwest Group, LLC and Merrifield "devised a scheme to deceive buyers who signed 24-month UPAs into signing amendatory documents which were falsely made to appear to be of no or only minor consequence . . . ." (Docket no. 47, ¶ 21). Finally, the UPAs were signed on behalf of Merrifield "[b]y: Uniwest Group, LLC, its general partner." (Docket no. 47, Exs. C and D).

Under Virginia law, unless otherwise agreed upon, a general partner of a limited partnership has the same liabilities as a partner in a general partnership without limited partners. Va. Code Ann. § 50-73.29, *see also Dulles Corner Properties II, Ltd. v. Smith*, 431 S.E.2d 309, 311 (Va. 1993). General partners are liable on contracts made by a partner in the scope of the

partnership business and on any other contracts expressly authorized by the partners. Va. Code Ann. § 50-73.95.

In this case, it would appear that the plaintiffs have pled sufficient facts to support a finding that Uniwest Group, LLC was a developer or an agent for purposes of the ILSFDA. Plaintiffs have alleged that Uniwest Group, LLC was involved in sales efforts. Furthermore, under the reasoning set forth by the *Kemp* Court, Uniwest Group, LLC may be held liable because it signed the UPAs as the general partner of Merrifield. Finally, under Virginia law, Uniwest Group, LLC, as the general partner, may be held liable on all contracts of Merrifield that were formed in the scope of partnership business. As such, the undersigned magistrate judge recommends a finding that plaintiffs have alleged sufficient facts to support a finding that Uniwest Group, LLC was itself a developer or an agent of Merrifield.

## 2. Michael D. Collier

Plaintiffs make several allegations regarding Mr. Collier's involvement with Merrifield. First, plaintiffs allege that Mr. Collier is the president, registered agent, and controlling person of Uniwest Group, LLC and the controlling person and registered agent of Merrifield. (Docket no. 47, ¶ 9). In this capacity, Mr. Collier signed the UPAs. (Docket no. 47, Exs. C and D). Plaintiffs further allege that Mr. Collier was in charge of all operations at Merrifield and Uniwest Group, LLC, including "the planning of Vantage at Merrifield, its condominium registration with the Virginia Real Estate Board, its construction and its marketing . . . ." (Docket no. 47, ¶ 23). In addition, plaintiffs allege that Mr. Collier personally monitored and controlled "the attempts to evade the provisions of [the ILSFDA] . . . ." (Docket no. 47, ¶ 24).

Under the reasoning elucidated in *Kemp*, it appears that the plaintiffs have pled sufficient facts to warrant a finding that Mr. Collier was a developer or an agent of Merrifield. Mr. Collier

had extensive involvement with the sales, marketing, and planning efforts of Merrifield. In addition, Mr. Collier's signature appears on the UPAs. As such, the undersigned magistrate judge recommends a finding that plaintiffs have pled sufficient facts to warrant a finding that Mr. Collier was a developer or an agent of Merrifield for purposes of the ILSFDA.

### 3. Uniwest Development, LLC

In the second amended complaint, plaintiffs make only three allegations regarding Uniwest Development, LLC. First, plaintiffs allege that Uniwest Development, LLC is a Virginia limited liability company with offices in Virginia. (Docket no. 47, ¶ 10). Next, plaintiffs claim that Uniwest Development, LLC is liable because it was "'a person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots . . .' in the Vantage project." (Docket no. 47, ¶ 26) (citing 15 U.S.C. § 1701(5)). Finally, plaintiffs allege that Uniwest Development, LLC "was an 'agent' of Merrifield Town Center, LP, as a 'person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision.'" (Docket no. 47, ¶ 26) (citing 15 U.S.C. § 1701(6)). Plaintiffs make no mention of Uniwest Development, LLC in their prayer for relief and they make no attempt to connect Uniwest Development, LLC to any of the sales efforts surrounding the Vantage project, any ILSFDA violations, or any of the other defendants. When confronted with these deficiencies at oral argument, plaintiffs counsel stated only that he rested on the allegations in the amended complaint. It is the recommendation of the undersigned magistrate judge that as currently pled, there are insufficient facts to support a finding that Uniwest Development, LLC is a developer or agent for purposes of the ILSFDA.

## Notice

By means of the Court's electronic filing system, the parties and the public are notified that objections to this Report and Recommendation must be filed within ten (10) days of service of this Report and Recommendations in accordance with 28 U.S.C. § 636(b)(1)(C) and a failure to file timely objections waives appellate review of the substance of the Report and Recommendations and waives appellate review of any judgment or decision based on this Report and Recommendations.

Entered this **29**th day of September 2009.

/s/ _____
John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia