## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## (ALEXANDRIA DIVISION)

| | |
|---|---|
| **ZHOU JIE PLANT**, *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Civ. Act  No. 1:08-374 TSE/JFA** |
| | ) |
| **MERRIFIELD TOWN CENTER** | ) **CONSOLIDATED WITH** |
| **LIMITED PARTNERSHIP,** *et al.* | ) |
| | ) **Civ. No. 1: 08-cv-566-TSE-JFA** |
| **Defendants.** | ) |
| | ) |

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
### MOTION FOR SUMMARY JUDGMENT

Plaintiffs hereby file their Memorandum in Support of their Motion for Summary Judgment.

### ARGUMENT

**I.      THE UNIT PURCHASE AGREEMENTS CONSTITUTE *PER SE* VIOLATIONS OF THE ACT FOR WHICH EQUITABLE REMEDIES ARE AVAILABLE.**

No additional statements of undisputed facts or additional affidavits are necessary to support the grant of further summary judgment to the Plaintiffs, requiring the Defendants to pay to the Plaintiffs in this case the amounts of their deposits paid to Defendant Merrifield Town Center Limited Partnership.  That is because the ordinary application of proper legal principles to the facts already determined requires that the Court award these Plaintiffs summary judgment requiring the payment to these Plaintiffs the amounts of the contract deposits paid to Merrifield, plus interest, attorney fees and costs.

The grant of partial summary judgment in favor of these Plaintiffs has already been made, determining that the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 *et seq*., (the "Act" or "ILSFDA") applied to the Merrifield project and that every uniform purchase agreement ("UPA")

entered into with respect to units in that project was a violation of the Act.

The statutory violations found by this Court in its opinion granting partial summary judgment are all *per se* violations of Section 1703(a) of the Act, that is, what the violator did is what the statute specifically provided would constitute a violation of the Act.

Section 1703(a) provides, in pertinent part:

> it shall be unlawful . . . with respect to the sale of any lot not exempt under sections 1702 of this title - (A) to sell or lease any lot unless a statement of record with respect to such lot is in effect in accordance with section 1706 of this title; (B) to sell or lease any lot unless they printed property report meeting the requirements of section 1707 of this title has been furnished to the purchaser or lessee in advance of the signing of any contract or agreement by such purchaser or lessee; . . ."

This Court's grant of partial summary judgment establishes that (paraphrasing the language quoted above):

> With respect to the sale of a lot not exempt under section 1702 of the Act Merrifield sold to each of these Plaintiffs a "lot" not exempt under section 1702 of the Act when no statement of record with respect to that lot was in effect in accordance with section 1706 of the Act and when no printed property report meeting the requirements of section 1707 of the Act had been furnished to the purchaser in advance of the signing of the purchase agreement.

The acts and omissions found by this Court to have occurred establish as a matter of law that [a] each purchase agreement signed by a Plaintiff was unlawful, [b] each Plaintiff had an actionable claim under section 1703(a) of the Act at the moment the Plaintiff signed the purchase agreement, and [c] that the deposit paid by each Plaintiff pursuant to each unlawful contract constituted money illegally obtained by Merrifield.

Possibly because a motion for further summary judgment such as this one was not then pending before the Court, the Court referred the matter to a magistrate judge for recommendations as to the remedy to be awarded and as to whether there were any statutory or equitable defenses to the award of the appropriate remedy.  Following the referral to the Magistrate Judge the proceeding generated more complications, took extended time and produced recommendations by the

Magistrate Judge which have been objected to an appealed to this Court.

That sequence in the proceedings will be discussed hereinafter and is the subject of separate briefing in the separate appeals cases.  But for the purposes of the summary judgment being sought here we will demonstrate that this record requires the grant of summary judgment as sought in this motion regardless of the reference to the Magistrate Judge or the results of that reference.  This is because there are no statutory or other defenses to the award of an appropriate remedy for the *per se* violations already found and at the very least (although other remedies are available and could be awarded), the Court should require as a remedy that the Defendants pay to the Plaintiffs the amounts of the deposits which the Plaintiffs paid to Merrifield, plus interest, attorney fees and costs.

The Court has found that, in spite of pleading and praying in many places in the record for the award of damages, the Plaintiffs are essentially seeking equitable relief.  Without conceding that their claims have not been claims for damages, but without attempting to argue that point further, the Plaintiffs are here proceeding to argue for summary judgment on the basis that the Plaintiffs' claims are for equitable relief.

In discussing the posture of the case following the grant of summary judgment the Court has already commented on the result which the Plaintiffs are seeking here.  The Court said:

> Moreover, plaintiffs' only proffered "damages" measure has been return of their deposits paid under the contracts, a form of restitution plainly consistent with equitable relief providing for rescission and corresponding return of the deposits, not with a legal damages remedy.  Thus, it appears on this record, based on a fair reading of all of plaintiffs' pleadings and oral representations, that plaintiffs have elected to seek equitable relief, not damages, and plaintiffs must be bound by that choice.

July 21, 2009 Order at pp. 4-7.

Section 1709 of the Act specifically provides that equitable relief is available for violations of section 1703(a) which the Court has found:

(a) Violations; relief recoverable A purchaser or lessee may bring an action at law or in equity against a developer or agent if the sale or lease was made in violation of section 1703(a) of this title. In a suit authorized by this subsection, the court may order damages, specific performance, or such other relief as the court deems fair, just, and equitable.

The statutory violations already found by the Court in its grant of partial summary judgment are ample basis for equitable relief from those violations, whether as restitution, correction of unjust enrichment or return of money illegally obtained and wrongfully withheld.  Nothing beyond the statutory violations already found is needed to provide the basis for equitable relief from the violations.

With this Court acting as a court of chancery, it is impossible to conceive of an argument under which a chancery court would allow a statutory violator to keep any part of the money illegally obtained in violation of the statute.

This Court has already considered arguments regarding the Defendants' conduct under the Act**.**  In its order of March 16, 2009, this Court stated:

> Accordingly, the sales contracts at issue are not exempt from ILSFDA, and because the Merrifield Defendants do not contend that they complied with ILSFDA's reporting and disclosure requirements, plaintiffs are entitled to partial summary judgment with respect to Count I.

Docket No. 69, p. 9 (footnote omitted.).  The Court went on to hold:

> It is further ORDERED that plaintiffs' motion for partial summary judgment with respect to Count I is GRANTED, insofar as (i) the 24-month UPA sales contracts are not exempt, pursuant to 15 U.S.C. § 1702(a)(2), from ILSFDA's reporting and disclosure requirements; (ii) the 36-month UPA sales contracts are not exempt, pursuant to 15 U.S.C. § 1702(b)(l), from ILSFDA's reporting and disclosure requirements; and (iii) it is undisputed that defendants failed to comply with ILSFDA's reporting and disclosure requirements with respect to all sales contracts at issue.[7]

> Note 7.   Of course, the result reached here does not address, inter alia, (i) which defendants may be held liable for the ILSFDA violations; (ii) the appropriate remedy, if any, for those violations; or (iii) any statutory or equitable defenses that defendants may have to plaintiffs' ILSFDA claim.

*Id*., at p. 10.

The violations of the Act having been established, the Court then ordered that the matter referred to the Magistrate Judge, pursuant to 28 U.S.C. § 636, to file a Report and Recommendation addressing "the outstanding ILSFDA issues in this matter."  Docket No. 70, Order of March 24, 2009.

The Magistrate Judge heard arguments and issued his Report and Recommendations to this Court on June 1, 2009. (Docket No. 82).  The Report and Recommendations were appealed to this Court where they were briefed and argued.  On July 21, 2009, this Court entered another Order (Docket no. 96) adopting the Magistrate Judge' report in part and modifying the report in part.  This Court ordered that the Plaintiffs are entitled to

> (i) such "relief as the court deems fair, just, and equitable," pursuant to §1709(a), for any § 1703(a) violation provided that each such plaintiff can establish a basis for equitable relief; and

> (ii) any equitable remedy, pursuant to § 1709(b), for any § 1703(b), (c), or (d) violation provided that each such plaintiff can establish a basis for equitable relief.

The Court then noted that:

> Importantly, permitting plaintiffs to pursue the equitable remedy of rescission on a proper showing does not read the time requirements of § 1703(b), (c), and (d) out of those subsections. Rather, the time limitations in those subsections govern those circumstances in which an aggrieved purchaser seeks to enforce an automatic, unconditional right to revoke consistent with those subsections' requirements. By contrast, the three-year limitation period of 15 U.S.C. § 1711 governs those circumstances in which a purchaser seeks rescission that is not automatic, but must be supported by proper proof. The scant case law addressing these issues has incorrectly presumed that the only ILSFDA revocation or rescission remedies are those automatic revocation rights in § 1703(b), (c), and (d). *See, e.g., Taylor v. Holiday Isle, LLC*, 561 F. Supp. 2d 1269, 1271-72 (S.D. Ala. 2008) (accepting defendant's position "that rescission is an available remedy under the ILSFDA only if a plaintiff invokes such remedy within two years after he or she signs the purchase agreement" (emphasis added)); *Jankus v. Edge Investors, L.P.*, F. Supp. 2d , No. 08cv80200, 2009 WL 961154, at *6 (S.D. Fla. Apr. 8, 2009) (holding that "theoretical action for damages under § 1709(b) is not a meaningful alternative" to automatic revocation where plaintiff "is still bound to perform under the contract of purchase" but not addressing whether non-automatic revocation under § 1709(b) may be appropriate on a proper showing). In this regard, § 1709's plain terms make pellucidly clear that equitable remedies (such as rescission and return of deposits) may be

ordered, where justified by the facts of a particular case, for § 1703 violations such as those alleged here. Although *Orsi v. Kirkwood*, 999 F.2d 86 (4th Cir. 1993), suggested in dicta that ILSFDA "provides a two-year statute of limitations for rescission of a contract to buy property[,]" the Fourth Circuit panel that decided *Orsi* explicitly sidestepped whether a two-year statute of limitations applied to the rescission sought in that case, holding instead as a threshold matter that ILSFDA did not apply to the contracts at issue. *Id*. at 89, 90 n.2. Moreover, *Orsi* appears to have involved plaintiffs seeking only automatic revocation under § 1703(c), not equitable relief on a proper evidentiary showing.

*Id.*, at footnote 6.  The Court having found the *per se* violations of the Act and that the Plaintiffs

may seek relief under 15 U.S.C. § 1709(a) or (b), the Court again referred the matter to the

Magistrate Judge (Docket No. 96) for consideration of five questions.  The answers to each question

will be provided after each, and then the Magistrate Judge's answers will be discussed.

(1) What facts or proof must each plaintiff adduce and establish to obtain the equitable relief sought, namely an order rescinding or voiding the plaintiffs contract and requiring the return of his or her deposit thereunder, in the form of either

(a) such "relief as the court deems fair, just, and equitable" for any 15 U.S.C. § 1703(a) violation, pursuant to 15 U.S.C. § 1709(a); or

(b) any remedy "in equity" for any 15 U.S.C. § 1703(b), (c), or (d) violation, pursuant to 15 U.S.C. § 1709(b)?

**ANSWER**: No further facts or proof is required to obtain the equitable relief sought,

since each purchase agreement constituted an actionable violation of §1703(a),

without more.  See Argument I, above.

(2) What facts or proof must defendants (or each of them) adduce to establish each asserted affirmative defense?

**ANSWER**: No affirmative defenses are available to the Defendant.  See Argument

IV below.

(3) Are plaintiffs entitled to a jury trial on any fact or issue that each plaintiff must establish to obtain the equitable remedies they seek?

**ANSWER**: Treating the case as a case in equity, no jury trial is available as a matter of right. Otherwise, since the purchase agreements are either void ab initio or are voidable and have been avoided, ab initio, the jury waiver provided in the purchase agreements does not exist, and a jury trial would be available at law.

(4) Has any plaintiff failed to comply with 15 U.S.C. § 1711 's three-year statute of limitations requirement?

**ANSWER**:   No Plaintiff has failed to comply with the three-year statute of limitations requirement.

(5) Are defendants Michael D. Collier, Uniwest Group, LLC, and Uniwest Development, LLC, "developers" or "agents" of developers subject to ILSFDA liability under 15 U.S.C. § 1701(5) and (6)?

**ANSWER**: Michael Collier, as the operating head of Merrifield and who directed all of its operations and signed its purchase agreements, was an agent of the developer Merrified and is subject to liability under the Act.

Uniwest Group, LLC, as the general partner of Merrifield itself is a developer and an agent of the developer Merrifield and is subject to liability under the Act.

There is insufficient evidence in the record to show that Uniwest Development, LLC, was a developer or agent of the developer in the sale to the Plaintiffs of the units in the Merrifield Project.

At this point, the Magistrate Judge went astray.  The Magistrate Judge found that the *per se* violation of the Act did not render the Unit Purchase Agreements void under Virginia law.  The Magistrate Judge found that even though the Defendants did not include notice of it in the contract, the Plaintiffs' right of automatic revocation under Section 1093(c) expired before the Plaintiffs were

aware they had that right.  The Magistrate Judge went on to recommend applying a burden of proof

on the Plaintiff which gives more rights to the developer than if he had followed the Act, registered

with HUD and made the appropriate disclosures.  Even though the Defendants candidly admit that

they failed to comply at all with the statutory requirements, the Magistrate Judge's report of

September 29, 2009 states:

> In this case, to obtain rescission under Section 1709(a), the plaintiffs must establish facts sufficient to show that they are entitled to the equitable relief of rescission of the UPAs and that the parties may be restored substantially to the position they occupied before the UPAs were consummated. In order for each plaintiff to invoke the equitable remedy of rescission under Virginia law, it is recommended that that [sic] each **plaintiff must establish by a preponderance of the evidence that the violations of the ILSFDA were of a substantial character and that he or she was prejudiced by the violation.** *See Blick,* 360 S.E.2d at 348; *Bolling,* 41 S.E.2d at 62. In that regard, the undersigned recommends, that to obtain rescission under Section 1709(a) for a violation of Section 1703(a)( I )(A), each plaintiff must show that the failure to have a statement of record in effect at the time he or she signed the UPA **constituted a substantial violation** and **that he or she was prejudiced as a result**. For a violation of Section 1703(a)( 1 )(3), each plaintiff must show that the failure to have a property report in compliance with Section 1707 delivered prior to the signing of the UPA **constituted a substantial violation and that he or she was prejudiced as a result.** This would include a showing that the information that should have been contained in those documents was not provided to the plaintiff in any other form, that the information would have been significant to the plaintiff in deciding whether to enter into a UPA at that time, and that if that information would have been provided in a timely manner he or she would not have entered into the UPA. Finally, each plaintiff will have to demonstrate that the parties may be placed back into the position they occupied before the UPA was signed, which would include having the deposits paid by the plaintiffs returned and releasing the parties from any further obligations to perform under the UPAs.

In short, the Magistrate Judge ignored the Congressionally mandated factual disclosures and

shifted the burden to the Plaintiffs to show that if a hypothetical disclosure had been made including

all the material facts omitted by the Defendants, that Plaintiffs would not have bought the unit,

would not have signed the UPA and each was individually prejudiced because he or she did not

receive the undetermined disclosures.

A proper analogy would be a publicly traded company which failed to register securities with the Securities and Exchange Commission, failed to obtain and deliver a SEC approved prospectus for the sale of securities, but nevertheless sold them to the public.  If such a company were to assert that each and every shareholder would have to show that the failure to register, and the failure to obtain and deliver a SEC approved prospectus prior to the sale were all material to them individually, such would be rejected out of hand.  The omission of such statutorily mandated requirements would constitute *per se* violations of the Securities Act*s*.   ILSFDA was intended by Congress to apply securities' type registration and disclosure requirements to the sale of <u>real property</u>, and the Act followed securities law as closely as possible, including adjustments for the difference between securities and real estate.  The same outcome should apply in an ILSFDA context where a real estate developer, such as Merrifield, failed to register with HUD and failed to distribute a HUD approved property report describing what was being sold to buyers under HUD's regulations.  Merrifield's violations of the statute and of the HUD regulations constitute violations of the Act.

The Magistrate Judge's opinion relieved the Defendants of their absolute failure to comply with the Act and granted them far greater rights than a Developer who had complied with the Act. The Magistrate Judge's opinion plainly conflicts with the intention of Congress and this Court's Orders of March 16, 2009 and July 21, 2009, and should not be followed for this Summary Judgment Motion.

## II.      THE UNIT PURCHASE AGREEMENTS SIGNED BY THE PLAINTIFFS ARE VOID UNDER VIRGINIA LAW

In ILSFDA cases, state law of contracts governs, and in Virginia a contract which violates a public health and welfare statute is void. *Lasting Products Co. v. Genovese*, 197 Va. 1, 87

S.E.2d 811 (Va., 1955) (A void contract is no contract at all, binds no one, and is a mere nullity), *Ewing v. National Airport Corporation*, 115 F.2d 859, 860 (4th Cir., 1940), cert denied, 312 U.S. 705 (1941) (A court will not assist in carrying out the terms of an illegal contract), *Colbert v. Ashland Construction Co.*, 176 Va. 500, (Va., 1940) (Courts will not aid a party to enforce an agreement made in furtherance of acts made illegal by statute).  The Plaintiffs here have exercised their right to treat the Unit Purchase Agreements as void and to recover the money they were illegally induced to pay Merrifield Town Center Limited Partnership.  A court of equity has ample power to require payment of money illegally obtained.

The Defendants have not and cannot cite a single case where a person who has violated a consumer statute has been allowed to keep their ill-gotten gains.  Equitable intervention, which is fully available under the maxim "equity follows the law" permits the Court to enter an order requiring the Defendants to pay to the Plaintiffs the monies illegally obtained from them.  There are no further facts or proof which each Plaintiff should have to adduce to obtain the relief sought, namely an order requiring the return of his or her deposit  Therefore, the answer to the District Court's first question is that no further proof is required for the Court to enter its judgment that the Defendants are liable to the Plaintiffs for the amounts of the deposits made by the Plaintiffs and interest thereon. Those precise amounts, totaling approximately $2,375,000.00, have been made a part of the record by the affidavit of Walker Title L.L.C. which is attached hereto as Exhibit 1.

The U.S. Magistrate Judge has recommended that the Court find that Defendants' violations of the Act do not render the Unit Purchase Agreements signed by Plaintiffs void, but voidable. Report at 10-12.  This recommendation is not supported by Virginia case law.

The Magistrate Judge rests his recommendation on the holdings in *Niemeyer v. Wright*, 75 Va. 239 (1881) and *Taylor & Aitken v. Hayes*, 418 S.E.2d 897 (Va. 1992).  Report at 10, 11.  These

cases acknowledge the general rule in Virginia that a contract made in violation of a statute is void (and there can be no recovery thereon), but hold that if it is apparent from the statute or legislative history that the legislature did not intend to make the contract void and unenforceable, but instead intended simply to leave those violating its provisions amenable to its penalties, then the contract is voidable. ILSFDA says simply that doing what the Defendants did here is "unlawful." [1]

Moreover, under Virginia law, any agreement in violation of a statute that involves the exercise of the legislature's <u>police power</u> is deemed void. For example, in *Blick v. Marks, Stokes and Harrison*, 234 Va. 60, 360 S.E.2d 345 (1987), the Supreme Court of Virginia reaffirmed the general principle under Virginia law that a contract to perform an act prohibited by statute is void, but held that the contract *sub judice* was not void, because it "was not intended to be an exercise of the Commonwealth's police power." 234 Va. at 67, 360 S.E.2d at 349. The Court went on to distinguish those cases which have held that contracts made in violation of a statute that constitutes the exercise of police power are void:

> To be compared, but not confused with the foregoing line of cases [*Watters & Martin, Niemeyer, and Middleton*] is a different set of decisions . . . . These cases stand for the proposition that "a contract made in violation of a statute enacted to protect the public against fraud, imposition, or to safeguard the public health, or morals, is illegal and unenforceable by the guilty party," *Lasting Products Co. v. Genovese*, 197 Va. 1, 8, 87 S.E.2d 811, 816 (1955). *See, e.g.*, *Cohen v. Mayflower Group*, 196 Va. 1153, 86 S.E.2d 860 (1955); *Rohanna v. Vazzana*, 196 Va. 549, 84 S.E.2d 440 (1954); *Bowen Electric Co. v. Foley*, 194 Va. 92, 72 S.E.2d 388 (1952); *Colbert v. Ashland Construction Co.*, 176 Va. 500, 11 S.E.2d 612 (1940).

*Blick, supra*, 234 Va. at 66-67, 360 S.E.2d at 349. *See also P.M. Palumbo, Jr., M.D., Inc. v.*

---

[1] The mere fact that the ILSFDA provides that a purchaser or lessee may bring an action at law or equity against a developer or agent for any sale or lease transaction in violation of the Act, does not compel a conclusion one way or the other as to whether a violation of the Act renders the underlying purchase agreement void or voidable as a matter of federal law.

*Bennett*, 409 S.E.2d 152 (1991) (reversing a ruling that a contract in violation of a Virginia statute

was unenforceable, because the statute did not involve an exercise of the police power of the State).

The Interstate Land Sales Full Disclosure Act is designed to protect the public from fraud,

misrepresentation, and imposition, and therefore clearly is an exercise of Congressional police

power. *See Olsen v. Lake Country, Inc.*, 955 F.2d 203, 205 (4th Cir. 1991) ("More important is the

undisputed purpose of the {Interstate Land Sales Full Disclosure} Act to prohibit fraud and to protect

purchasers of land which is part of a common promotional scheme. The language of the Act is to be

read broadly to effectuate this goal") (citations omitted); *Stein v. Paradigm Mirsol, LLC,* 551

F.Supp.1323, 1327 (M.D. Fla. 2008); *Cf., Csb, Inc. v. Cradle of Democracy Broadcasting Co.*, 547

F.Supp. 106  (E.D. Va., 1982) ("The New York approach is in line with Virginia's policy reasons for

requiring real estate brokers to procure a license. The statute is alleged to be designed to 'protect the

public from the fraud, misrepresentation and imposition of dishonest and incompetent persons,' and

is said to be a legitimate exercise of the police power."); *Cranberry Hill Corporation v. Shaffer*, 629

F. Supp. 628 (N.D. New York 1986).[2]

Accordingly, because the ILSFDA is an exercise of Congressional police power, and there is

no indication that Congress intended that purchase agreements in violation of the Act be  merely

voidable, Plaintiffs' Unit Purchase Agreements executed in violation of the ILSFDA are null and

void as a matter of law.

---

[2] *See also Travelers Health Association v. Commonwealth of Virginia*, 188 Va. 877, 885 (VA 1949) ("It is settled beyond controversy . . . that the regulation of the promotion and sale of securities is a proper exercise of the police power of the States. The purpose of laws regulating such promotions and sales is to protect the public against the imposition of fraudulent or unsubstantial schemes or projects, or from being misled into the purchase of securities based upon them") (citations omitted).

III.    **EVEN IF THE UNIT PURCHASE AGREEMENTS ARE VOIDABLE RATHER THAN VOID, THEN THE PLAINTIFFS HAVE AVOIDED THE UPAs.**

Even if it were correct to construe Plaintiffs' UPAs as being voidable, rather than void, Plaintiffs have properly exercised their right to rescind based on their timely filing of the instant lawsuits.  *See Depner v. Joseph Zukin Blouses*, 13 Cal.App.2d 124, 127 (Cal. App. 1936) ("A voidable act takes its full and proper legal effect unless and until it is disputed and set aside by some tribunal, entitled so to do. (Bouvier's Law Dictionary, 3406.) 'Voidable' means subject to be avoided by judicial action of a court of adequate jurisdiction. (8 Words and Phrases, 7342.)"); *Jankus v. Edge Enterprises*, L.P., 619 F.Supp. 1328, 1337 (S.D. Florida 2009) ("A developer's failure to give the required notice of the right of rescission . . . automatically violates the Act in a manner that frustrates the Act's express purposes, leaving the consumer committed to a land purchase made without the benefit of the advance, detailed information required by the statutorily mandated property report. Accordingly, this court now holds that a developer's failure to give the statutorily mandated notice of rescission rights under § 1703(c) extends the buyer's rescission period until two years after the disclosure.").

IV.    **THE DEFENDANTS HAVE NO DEFENSE TO ILSFDA LIABILITY.**

There are no statutory defenses pleaded to the §1703(a) claim of violation of selling lots without an approved registration and approved property reports delivered to the purchasers prior to the signing of purchase agreements by the purchasers.

The only defenses pleaded by the Defendants to the §1703(a) claim: unclean hands, laches, estoppel and "first breach" (which the Defendants have conceded is the same as unclean hands) are all defenses which may be available to a complaint in equity, but are not available in a suit by a victim of a statutory violation seeking to recover a statutorily provided remedy intended by Congress

to serve as a deterrent to other violations of the statute.

In *Perma Life Mufflers, Inc v. International Parts Corp*, 392 U.S. 134, 137-139, 88 S.Ct.

1981, 20 L.Ed.2d 982 (1968), the U.S. Supreme Court said:

> Petitioners alleged that they had often requested Midas to eliminate these restrictions but that Midas had refused and had threatened to terminate their agreements if they failed to comply. Finally they alleged that one of the plaintiffs had had his agreement canceled by Midas for purchasing exhaust parts from a Midas competitor, and that the other plaintiff dealers had themselves canceled their agreements. All the plaintiffs claimed treble damages for the monetary loss they had suffered from having to abide by the restrictive provisions.

> The Court of Appeals, agreeing with the District Court, held the suit barred because petitioners were in *pari delicto*. The court noted that each of the petitioners had enthusiastically sought to acquire a Midas franchise with full knowledge of these provisions and had 'solemnly subscribed' to the agreement containing the restrictive terms. Petitioners had all made enormous profits as Midas dealers, had eagerly sought to acquire additional franchises, and had voluntarily entered into additional franchise agreements, all while fully aware of the restrictions they now challenge. Under these circumstances, the Court of Appeals concluded, '(i)t would be difficult to visualize a case more appropriate for the application of the pari delicto doctrine.' 376 F.2d, at 699.

> We find ourselves in complete disagreement with the Court of Appeals. There is nothing in the language of the antitrust acts which indicates that Congress wanted to make the common-law in pari delicto doctrine a defense to treble-damage actions, and the facts of this case suggest no basis for applying such a doctrine even if it did exist. Although in pari delicto literally means 'of equal fault,' the doctrine has been applied, correctly or incorrectly, in a wide variety of situations in which a plaintiff seeking damages or equitable relief is himself involved in some of the same sort of wrongdoing. We have often indicated the inappropriateness of invoking broad common-law barriers to relief where a private suit serves important public purposes. It was for this reason that we held in *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons*, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951), that a plaintiff in an antitrust suit could not be barred from recovery by proof that he had engaged in an unrelated conspiracy to commit some other antitrust violation. Similarly, in Simpson v. Union Oil Co., 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964), we held that a dealer whose consignment agreement was canceled for failure to adhere to a fixed resale price could bring suit under the antitrust laws even though by signing the agreement he had to that extent become a participant in the illegal, competition-destroying scheme. Both *Simpson* and *Kiefer-Stewart* were premised on a recognition that the purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws.

In *McKennon v. Nashville Banner Publishing*, 513 U.S. 352, 360, 115 S.Ct. 879, 130 L.Ed.2d

852 (1995) the Supreme Court, citing with approval the Perma-Life case, said:

> Equity's maxim that a suitor who engaged in his own reprehensible conduct in the course of the transaction at issue must be denied equitable relief because of unclean hands, a rule which in conventional formulation operated *in limine* to bar the suitor from invoking the aid of the equity court, 2 S. Symons, Pomeroy's Equity Jurisprudence § 397, pp. 90-92 (5th ed. 1941), has not been applied where Congress authorizes broad equitable relief to serve important national policies. We have rejected the unclean hands defense "where a private suit serves important public purposes." *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 138, 88 S.Ct. 1981, 1984, 20 L.Ed.2d 982 (1968) (Sherman and Clayton Antitrust Acts).

Ever since this Court granted the Plaintiffs' Motion for Partial Summary Judgment, the Defendants have been attempting to put liability back at issue in this case.  The Defendants have no defense to liability.

The Magistrate Judge has erroneously added requirements to ILSFDA liability when he recommended:

> In this case, to obtain rescission under Section 1709(a), the plaintiffs must establish facts sufficient to show that they are entitled to the equitable relief of rescission of the UPAs and that the parties may be restored substantially to the position they occupied before the UPAs were consummated. In order for each plaintiff to invoke the equitable remedy of rescission under Virginia law, it is recommended that that [sic] each **plaintiff must establish by a preponderance of the evidence that the violations of the ILSFDA were of a substantial character and that he or she was prejudiced by the violation.** *See Blick,* 360 S.E.2d at 348; *Bolling,* 41 S.E.2d at 62. In that regard, the undersigned recommends, that to obtain rescission under Section 1709(a) for a violation of Section 1703(a)( I )(A), each plaintiff must show that the failure to have a statement of record in effect at the time he or she signed the UPA **constituted a substantial violation** and **that he or she was prejudiced as a result**. For a violation of Section 1703(a)( 1 )(3), each plaintiff must show that the failure to have a property report in compliance with Section 1707 delivered prior to the signing of the UPA **constituted a substantial violation and that he or she was prejudiced as a result.** This would include a showing that the information that should have been contained in those documents was not provided to the plaintiff in any other form, that the information would have been significant to the plaintiff in deciding whether to enter into a UPA at that time, and that if that information would have been provided in a timely manner he or she would not have entered into the UPA. Finally, each plaintiff will have to demonstrate that the parties may be placed back into the position they occupied before the UPA was signed, which would include having the deposits paid by the plaintiffs returned and releasing the parties from any further obligations to perform under the UPAs.

The Magistrate Judge has put these Defendants in a better position that if they had registered under the ILSFDA.[3]

## V.   CONGRESS AND HUD HAVE DETERMINED THAT THE FAILURE TO REGISTER WITH HUD AND PROVIDE A PROPERTY REPORT ARE ELEMENTS OF A VIOLATION OF THE ACT.

Congress and HUD, by enacting the statute and regulations, made the failure to register with HUD and the failure to provide a property report a "substantial" and material violation of the ILSFDA.   The touchstone for the interpretation of any statute is the intent of Congress.   In *U.S. v. Passaro*, 577 F.3d 207 (4th Cir., 2009), the Fourth Circuit stated:

> When interpreting any statute, we must first and foremost strive to implement congressional intent by examining the plain language of the statute. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).

Section 1703(a)(1)(B) provides that it is illegal  "to sell or lease any lot unless a printed property report, meeting the requirements of section 1707 of this title, has been furnished to the purchaser or lessee in advance of the signing of any contract or agreement by such purchaser or lessee."

In Section. 1707, Congress sets out the mandatory contents of the property report, which are extensive, for the protection of buyers:

> (a) Contents of report A property report relating to the lots in a subdivision shall contain such of the information contained in the statement of record, and any amendments thereto, as the Secretary may deem necessary, but need not include the documents referred to in paragraphs (7) to (11), inclusive, of section 1705 of this title. A property report shall also contain such other information as the Secretary may by rules or regulations require as being necessary or appropriate in the public interest or for the protection of purchasers. (b) Promotional use The property report shall not be used for any promotional purposes before the statement of record becomes effective and then only if it is used in its entirety. No person may advertise or

---

[3]  Plaintiffs have timely appealed the Magistrate Judge's decision.

represent that the Secretary approves or recommends the subdivision or the sale or lease of lots therein. No portion of the property report shall be underscored, italicized, or printed in larger or bolder type than the balance of the statement unless the Secretary requires or permits it.

Congress has stated that the property report must contain the same information as contained in the statement of record.  The statement of record which Defendants were required to file is described in Section. 1705:

The statement of record shall contain the information and be accompanied by the documents specified hereinafter in this section -

(1) the name and address of each person having an interest in the lots in the subdivision to be covered by the statement of record and the extent of such interest;

(2) a legal description of, and a statement of the total area included in, the subdivision and a statement of the topography thereof, together with a map showing the division proposed and the dimensions of the lots to be covered by the statement of record and their relation to existing streets and roads;

(3) a statement of the condition of the title to the land comprising the subdivision, including all encumbrances and deed restrictions and covenants applicable thereto;

(4) a statement of the general terms and conditions, including the range of selling prices or rents at which it is proposed to dispose of the lots in the subdivision;

(5) a statement of the present condition of access to the subdivision, the existence of any unusual conditions relating to noise or safety which affect the subdivision and are known to the developer, the availability of sewage disposal facilities and other public utilities (including water, electricity, gas, and telephone facilities) in the subdivision, the proximity in miles of the subdivision to nearby municipalities, and the nature of any improvements to be installed by the developer and his estimated schedule for completion;

(6) in the case of any subdivision or portion thereof against which there exists a blanket encumbrance, a statement of the consequences for an individual purchaser of a failure, by the person or persons bound, to fulfill obligations under the instrument or instruments creating such

encumbrance and the steps, if any, taken to protect the purchaser in such eventuality;

(7)(A) copy of its articles of incorporation, with all amendments thereto, if the developer is a corporation; (B) copies of all instruments by which the trust is created or declared, if the developer is a trust; (C) copies of its articles of partnership or association and all other papers pertaining to its organization, if the developer is a partnership, unincorporated association, joint stock company, or any other form of organization; and (D) if the purported holder of legal title is a person other than developer, copies of the above documents for such person;

(8) copies of the deed or other instrument establishing title to the subdivision in the developer or other person and copies of any instrument creating a lien or encumbrance upon the title of developer or other person or copies of the opinion or opinions of counsel in respect to the title to the subdivision in the developer or other person or copies of the title insurance policy guaranteeing such title;

(9) copies of all forms of conveyance to be used in selling or leasing lots to purchasers;

(10) copies of instruments creating easements or other restrictions;

(11) such certified and uncertified financial statements of the developer as the Secretary may require; and

(12) such other information and such other documents and certifications as the Secretary may require as being reasonably necessary or appropriate for the protection of purchasers.

The intent of Congress is clear: the seller must register with HUD and provide buyer with a fact filled property report in the form set out in the Act and 24 C.F.R. §1710.100(b).   Congress has mandated that the failure to register with HUD or provide the report to the buyer is a substantial and material violation.  In *Ahn*, this Court stated: "[t]aken together, these provisions reflect Congress's recognition that the need for buyer protection is critical prior to the time the buyer makes the decision to sign and incur obligations; accordingly, the seller must provide the property report before the buyer signs the contract so the buyer can make an informed decision."  584 F.Supp.2d at 855.

For the Court to find that the consumer has the burden of showing that the Act's registration and disclosures are "substantial" and "material" flies in the face of the obvious Congressional intent and would confer on sellers the power to violate the registration and disclosure requirements of the ILSFDA at will with proof burdens on their victims, a result plainly contrary to Congress's carefully crafted scheme to protect property purchasers. *See Ahn* at p. 855.   The "undisputed purpose of the Act [is] to prohibit fraud and to protect purchasers of land which is part of a common promotional scheme. The language of the Act is meant to be read broadly to effectuate this goal." *Olsen v. Lake Country*, 955 F.2d at 205.   To place the burden on the buyer to make a showing that the Congressionally required disclosures were substantial would "allow sellers to engage in an end-run around ILSFDA's protections." *Ahn Id.*

## VI.      THE PLAINTIFFS DO NOT HAVE TO PROVE RELIANCE ON ANYTHING.

The Magistrate Judge recommended that each individual Plaintiff be required to make "a showing that the information that should have been contained in those documents was not provided to the plaintiff in any other form, that the information would have been significant to the plaintiff in deciding whether to enter into a UPA at that time, and that if that information would have been provided in a timely manner he or she would not have entered into the UPA.**"**  That is directly contrary to the requirements of the statute.

In *Burns v. Duplin Land Development, Inc.*, 621 F.Supp.2d 292, 306 (E.D.N.C., 2009), the developer had registered its project with HUD and provided purchasers with a property report prior to the execution of a purchase agreement.[4]  *Id.*, p.  The developer told the purchasers prior to executing the purchase contract that their lots were located in a flood zone.  However, the property

---

[4]  Certainly, the Defendants here cannot be place in a better position than a developer who registered with HUD and provided the purchaser with a property report.

report failed to list that the lots were located in a flood plain. Even though the information had been

disclosed, the court found that alternative disclosure was not relevant:

> Initially, the court examines the text of section 1703(a)(1)(C). The text makes no reference to reliance. *See* 15 U.S.C. § 1703(a)(1)(C); *Ayes*, 473 F.3d at 108. The statute's plain language simply prohibits the sale of a lot when "any part" of the property report "omitted to state a material fact" that the ILSFDA requires. *See* 15 U.S.C. § 1703(a)(1)(C). Accordingly, the text appears to refute Duplin's argument. *See id.*; *Dongelewicz v. First E. Bank*, 80 F.Supp.2d 339, 348 (M.D.Pa. 1999) ("[T]he language of the statute is to the effect that simply making a material misrepresentation or omission in a document required to be prepared and/or provided under the Act is actionable under §§ 1709, 1703(a)(1), and does not require proof of reliance ...."), *aff'd sub nom. Dongelewicz v. PNC Bank Nat'l Ass'n*, 104 Fed.Appx. 811 (3d Cir.2004) (unpublished). In light of the statutory text, it is not surprising that since the Act's inception, courts have uniformly concluded that a purchaser need not rely on the property report to establish liability under section 1703(a)(1)(C) (and its predecessors). *See Paniaguas v. Aldon Cos.*, No. 2:04-CV-468-PRC, 2006 WL 2568210, at *19 (N.D.Ind. Sept. 5, 2006) (unpublished); *Dongelewicz*, 80 F.Supp.2d at 348; *Shirley v. Mann*, No. 90-C-0008, 1993 U.S. Dist. LEXIS 13843, at *21 (N.D.Ill. Sept. 22, 1993) (unpublished); *Gibbes v. Rose Hill Plantation Dev. Co.*, 794 F.Supp. 1327, 1334 (D.S.C.1992); *DiSandro v. Makahuena Corp.*, 588 F.Supp. 889, 895 (D.Haw. 1984); *see also Hester v. Hidden Valley Lakes, Inc.*, 495 F.Supp. 48, 53-54 (N.D.Miss.1980) (holding liability under a predecessor to section 1703(a)(1)(C) did not require reliance by purchaser on misrepresentations); *Bryan v. Amrep Corp.*, 429 F.Supp. 313, 317 (S.D.N.Y.1977); *Husted*, 429 F.Supp. at 310-11; *Hoffman v. Charnita, Inc.*, 58 F.R.D. 86, 90-91 (M.D.Pa.1973); *cf. Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 596 n. 11 (4th Cir.1976) ("Whether `reliance' is essential to [an action for material misrepresentations or omissions in the property report] is subject to some doubt."). Thus, a "plaintiff does not need to prove ... that the plaintiff relied on the property report. Plaintiff needs only to show that the omission or misrepresentation existed in the report at the time the property was sold." *Gibbes*, 794 F.Supp. at 1334 (citation omitted).

> In concluding that section 1703(a)(1)(C) does not require reliance, the court has considered the jurisprudence of the Securities Act of 1933. *See, e.g., Cost Control*, 64 F.3d at 924; *Hester*, 495 F.Supp. at 54. Section 1703(a)(1)(C) has its origins in section 12(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77l (a)(2). *Compare* 15 U.S.C. § 1703(a)(1)(C) (prohibiting sale of lot "where any part of the statement of record or the property report contained an untrue statement of a material fact or omitted to state a material fact required" by the Act), *with id.* § 77l (a)(2) (prohibiting sale of security "by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements ... not misleading"); *see, e.g., Hester*, 495 F.Supp. at 54 (finding a predecessor section to 1703(a)(1)(C) had similarities to section 12); Husted, 429 F.Supp. at 304 (finding predecessors to 1703(a)(1)(C) "were modelled" on section 12); Hoffman, 58 F.R.D. at 90-91 ("[T]he remedy provided [by the predecessor to section 1703(a)(1)(C)] is analogous to that provided by § 12....").3 Under section 12(a)(2), a

claim "may be grounded on untrue statements and omissions that make a [document] misleading, whether or not the plaintiff relied on the [document] or even read it" *Caviness v. DeRand Res. Corp.*, 983 F.2d 1295, 1305 (4th Cir.1993). Thus, reliance is not an element of a section 12(a)(2) claim. *See, e.g., Dunn v. Borta*, 369 F.3d 421, 433 (4th Cir.2004); *Gasner v. Bd. of Supervisors,* 103 F.3d 351, 356 (4th Cir.1996). Given section 1703(a)(1)(C)'s roots in section 12(a)(2) and with no textual reason to conclude otherwise, the court gives similar legal effect to the text of section 1703(a)(1)(C).

Finally, the Fourth Circuit's analysis in *Dunn* bolsters the conclusion that section 1703(a)(1)(C) does not require reliance. *See* 369 F.3d at 432-33. In *Dunn*, the Fourth Circuit analyzed a Virginia statute modeled on section 12. *Id.* at 428-29. Defendants argued that the statute should be construed to require reliance. *See id.* at 432. The Fourth Circuit rejected the argument. *Id.* First, the Fourth Circuit analyzed the plain language of the statute. *Id.* Finding no element of reliance in the plain language, the court then evaluated whether to judicially imply a reliance requirement. Id. at 432-33. The Fourth Circuit declined to do so. *Id.* at 433. In reaching this conclusion, the Fourth Circuit acknowledged that federal courts have implied the element of reliance in claims under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. *See id.* at 433 n. 22. However, a cause of action under section 10(b) was "judicially created," unlike a cause of action under section 12 or the Virginia statute at issue. *See id.* Alternatively, even assuming the Virginia statute at issue in *Dunn* was ambiguous on the issue of reliance, the Fourth Circuit stated it would reach the same result and find no reliance requirement. *See id.* at 433. The Fourth Circuit reasoned that its "construction comports with the purpose of the [Virginia statute], which is intended to protect investors from fraudulent sales of securities." *Id.* (quotation omitted). It was "therefore proper to construe a statutory ambiguity, if any exists, in favor of the investor." *Id.*

*Burns,* 621 F.Supp.2d at 304-305.  Here, the Defendant failed to provide any property report to any Plaintiff.  How could a Plaintiff be forced to prove they would have relied upon a property statement if one had been provided?  How can the Plaintiffs be expected to guess at which "certified and uncertified financial statements of the developer" that the Secretary may require to be placed in the property report?  *See* Section 1705(a)(11).  How can a buyer be expected to prove which other information and other documents and certifications that the Secretary of HUD may require as being reasonably necessary or appropriate for the protection of purchasers?  *See* Section 1705(12).  The *Burns* Court went on to state:

However, section 12(a)(2) is explicit on this point. See 15 U.S.C. § 77l (a)(2) ("the purchaser not knowing of such untruth or omission"). Section 1703(a)(1)(C) contains no such

language, and the court declines to rewrite the statute. See *Sunterra*, 361 F.3d at 269; *First S. Prod. Credit Ass'n v. Farm Credit Admin.*, 926 F.2d 339, 346 (4th Cir.1991); *cf. Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427-28, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998) (rejecting the use of general contract principles to override the plain text of the release provisions in the Older Workers Benefit Protection Act where the Act "implements Congress' policy via a strict, unqualified statutory stricture on waivers, and [the Court is] bound to take Congress at its word").

Burns, *Id*. pp 305-306.

The Burns court also found that the oral disclosure did not overcome the developer's failure

to provide a property statement:

> Duplin argues that its oral statements and "the disclosure items contained in the statement of record should be determined to have supplemented and cured the omission found in the Property Report." Def.'s Mem. 17. According to Duplin, the "HUD regulations for ILSFDA contemplate supplementing the Property Report," as evidenced by "their treatment of the cost sheet, which is a blank form in the Property Report that HUD regulations require and instruct the seller to complete in supplementation of the information provided to the prospective purchaser at the time of sale." Def.'s Mem. 17; see 24 C.F.R. § 1710.117.

> Duplin cites no statutory or regulatory authority for concluding that section 1703(a)(1)(C) should be interpreted to permit the statement of record or oral statements to supplement a property report under section 1703(a)(1)(C). In fact, Duplin's argument is merely an invitation to interpret "or" conjunctively or to accept "substantial compliance" under section 1703(a)(1)(C). This court declines Duplin's invitation. *See, e.g., Gaudet v. Woodlake Dev. Co.*, 399 F.Supp. 1005, 1006 (E.D.La. 1975) (rejecting application of substantial compliance under the ILSFDA); *Rockefeller v. High Sky, Inc.*, 394 F.Supp. 303, 304-05 (E.D.Pa.1975) (rejecting defendant's argument that verbal disclosure can cure failure to deliver property report and remarking "had Congress intended to provide developers with an alternative means of furnishing information to purchasers, it could have said so very plainly and simply"); *see generally Oubre*, 522 U.S. at 427-28, 118 S.Ct. 838. Because section 1703(a)(1)(C) targets "any part" of a property report which contains an omission of material fact, the court declines to hold that the statement of record or oral statements may supplement the property report.

*Burns, Id.* at page 306-307.

> Finally, Duplin argues that the omitted fact of flood plain status was not material. Def.'s Mem. 20-23. Of course, section 1703(a)(1)(C) requires materiality. See 15 U.S.C. § 1703(a)(1)(C) ("where any part of ... the property report ... omitted to state a material fact required to be stated therein"). Further, the parties agree on the Act's materiality standard: "The test of materiality is whether a reasonable investor might have considered the omitted

fact or erroneous statement as important in making a decision." *Paquin*, 519 F.2d at 1109; *accord Gibbes*, 794 F.Supp. at 1334; *Price v. Owens-Ill. Dev. Corp.*, 646 F.Supp. 314, 316 (M.D.Ga.1986); *Prebil v. Pinehurst, Inc.*, 638 F.Supp. 1314, 1317 (D.Mont.1986).

   The Act's materiality standard is borrowed from federal securities jurisprudence. *See Paquin*, 519 F.2d at 1109 (*citing Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) ("[In the securities context, all] that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of [the] decision.")). In the Fourth Circuit, "a fact stated or omitted is material if there is a substantial likelihood that a reasonable purchaser or seller of a security (1) would consider the fact important in deciding whether to buy or sell the security or (2) would have viewed the total mix of information made available to be significantly altered by disclosure of the fact." *Longman v. Food Lion, Inc.,* 197 F.3d 675, 683 (4th Cir.1999) *see Basic Inc. v. Levinson*, 485 U.S. 224, 231-32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 448-49, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). The court takes guidance from this articulation of the materiality standard in construing section 1703(a)(1)(C). *See, e.g., Cost* Control, 64 F.3d at 924.

   The Fourth Circuit has made clear that the fact itself must be material, not the misrepresentation or omission. See *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 656 (4th Cir.2004). Thus, assuming other requirements are met, any omission of a material fact is prohibited. See *id.* In addition, the materiality inquiry is objective and examines the significance of the omitted fact to a hypothetical reasonable investor, not to the specific plaintiff. See *Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 315 (4th Cir.2004). Further, materiality "does not require proof that an investor would not have invested had he known the truth; rather, the reasonable investor standard requires `a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable [investor].'" *Dunn*, 369 F.3d at 427 (quoting *TSC Indus.*, 426 U.S. at 449, 96 S.Ct. 2126) (alteration in original). Moreover, in the analogous section 12(a)(2) context, the fact that omitted information is publicly available does not defeat materiality as to a seller's omission. *See, e.g., Dunn*, 369 F.3d at 429. "[I]nvestors are not generally required to look beyond a given document to discover what is true and what is not." *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 887 (9th Cir.), cert. denied, U.S. ___, 129 S.Ct. 161, 172 L.Ed.2d 43 (2008); *see Dunn*, 369 F.3d at 429.

   Duplin contends that the omitted fact of flood plain status was not material for numerous reasons. See Def.'s Mem. 20-23. First, Duplin argues the omission is not material because Duplin provided the Lot's flood plain status to plaintiffs through other documents and oral statements. See id. at 21. Duplin's argument, however, erroneously focuses on the omission — which need not be material — instead of the fact omitted, which must be. See 15 U.S.C. § 1703(a)(1)(C) ("material" modifies "fact"); Greenhouse, 392 F.3d at 656. That an omission is insignificant in the face of information otherwise available has no bearing on whether the fact itself is material.

The omission of the <u>entire </u>property report means that no material facts were provided to the

buyer.  Since <u>no</u> property report was provided, no material facts were disclosed.

## VII.   SECTION 1703(c) PROVIDES AN ALTERNATIVE GROUND FOR SUMMARY JUDGMENT TO BE AWARDED TO PLAINTIFFS.

The Plaintiffs' primary reliance in this motion for summary judgment is for relief under section 1703(a), as argued above.

But in its reference to the Magistrate Judge the Court has given attention to the provisions of subsection (c) of Section 1703, which provides a statutory remedy of revocation whenever a property report is not furnished to a buyer prior to the signing of the purchase agreement, and we will address that issue here.

An alternative ground for summary judgment is provided by  subsection (c) of Section 1703.

Although the statute requires that a seller provide in the purchase contract clear notice of a two-year right to revoke the contract, if no property report was furnished to that buyer prior to the signing of the purchase agreement, none of the contracts here provided <u>any</u> notice, much less clear notice of a right to revoke.

While the statutorily granted right of revocation contained within it a provision that the right must be exercised within two years of the signing of the contract, the failure of the seller to include a clear notice of the right to revoke within two years was a violation of the statute by the seller, depriving the buyer of an important revocation right which Congress intended a purchaser to receive, if no property report had been furnished that purchaser.

That violation of the statute by Merrifield deprived each Plaintiff of the statutorily mandated information that each Plaintiff had the right to revoke the purchase agreement within two years.  That statutory violation by Merrifield, therefore, provides ample ground for an equity court to intervene and relieve the buyer of the two-year provision for revocation and permit the buyer to revoke or

rescind the contract <u>after</u> the expiration of two years from execution.

The basic statute of limitations provided in the Act is three years from the execution of an agreement by a purchaser.  All the suits in this case, which serve as notice of revocation, rescission or rejection were filed within three years of execution by the purchasers and so are within the basic limitations period of the Act.

Therefore, §1703(c) provides an alternate and adequate ground for the grant of summary judgment to these Plaintiffs, awarding the remedy referred to above.

The term"automatic revocation" does not appear in the ILSFDA but has been used by all Parties and the Court as a shorthand method of referring to the revocation right under Section 1703 (c) which states:

> (c) Revocation of contract or agreement at option of purchaser or lessee where required property report not supplied
> In the case of any contract or agreement for the sale or lease of a lot for which a property report is required by this chapter and the property report has not been given to the purchaser or lessee in advance of his or her signing such contract or agreement, such contract or agreement may be revoked at the **option of the purchaser or lessee within two years from the date of such signing, and such contract or agreement shall clearly provide this right.**

(Emphasis added).  The plain terms of this section provides for revocation based upon the showing of two facts, namely that: (1) purchaser did not receive a property report, and (2) the purchaser revoked the contract containing the right of revocation within two years of "his or her signing such contract or agreement."  However, the clear language of the statute also puts a burden on the seller who wants to use this limitation, namely that he must disclosure the revocation rights in the contract or agreement.

A developer cannot take advantage of the two year limitation period unless the contract or agreement clearly notifies the purchaser of this right.

Defendants argue that they have the right to invoke the two-year limitation even though their

UPA does not clearly give notice of the right to revoke.

The statute does not specifically provide for a situation where the Developer fails to give clear notice of the right to revoke.  The issue is whether a Developer can assert the two-year limitation as an affirmative defense even though it failed to provide clear notice of the right of revocation.  Given the Congressional intent in enacting the Act generally and Section 1703(c) specifically, the structure of the provision and the placement of the section in the Act, the answer must be that Defendants will be estopped from taking advantage of the two-year limitation when there was no property report provided and the Defendants failed to give a clear notice in the contract of the revocation right.

In *Jankus v. Edge Enterprises, L.P., supra,* 619 F.Supp. at 1337, the Court stated "{A} developer's failure to give the statutorily mandated notice of  rescission rights under § 1703(c) extends the buyer's rescission period until two years after the disclosure.", *see also  Plaza Court, L.P. v. Shane Baker-Chaput,* Case No. 5D08-899 (District Court of Florida, Fifth District, June 26, 2009) (The two-year right of rescission under the ILSFDA does not begin to run until proper notice of the right to rescind is given.).

As the United States District Court for the Southern District of Alabama has recently ruled:

> Plaintiffs failed to exercise their statutory option to rescind their purchase agreements within two years, for want of a property report.  As a result, they lost their right to recover their security deposits and walk away from the contracts on which (for whatever reason) plaintiffs no longer wished to close.  The question is why they did not rescind in time.  If plaintiffs prove at trial (as they have averred in declarations and deposition testimony) that the reason why they did not rescind in a timely manner was that [the developer] failed to disclose their right to rescind the purchase agreements, as [the developer] was obligated to do under ' 1703(c), then plaintiffs will be entitled to recover those lost security deposits, and potentially interest and attorney's fees, as damages.  To hold otherwise would be effectively to excise the ' 1703(c) notice of rescission rights requirement from the text of the statute.

*Murray v. Holiday Isle, LLC*, 620 F.Supp.2d 1302, 1314 (S.D. Alabama 2009) (emphasis added).  As this Court noted it its Order of July 21, 2009, the *Murray* Court failed to recognize the full panoply of rights available under Section 1709, including the ability to restore any Section 1703(c) rights when the Defendants did not give the required disclosures.  *See also Schatz v. Jockey Club Phase III, Ltd.*, 604 F.Supp. 537, 542 ("The Congressional purpose behind the [ILSFDA] was to protect the consumer.  This Court is of the opinion that this purpose would be thwarted were the Court to burden the purchaser with the requirement of claiming actual injury when Congress does not require such a claim . . . Since the uncontroverted facts establish that no property report was furnished, the purchasers have a statutory right to rescission and the refund of their deposits.").

Thus, where a plaintiff failed to exercise his right to rescind his purchase agreement within two years, resulting from Defendants' unlawful failure to disclose his right to rescind, said plaintiff is entitled to the full recovery of his purchase deposits, plus interest and attorney's fees.

**VIII.   THE LEGISLATIVE HISTORY OF THE ILSFDA SHOWS THAT CONGRESS INTENDED TO REQUIRE EXTENSIVE FACTUAL DISCLOSURES APPROVED BY HUD FOR SELLERS OF LOTS PRIOR TO SALE.**

The Act was enacted in 1968 and is "designed to prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers. The Act is based on the full disclosure provisions and philosophy of the Securities Act of 1933, which it resembles in many respects." *Flint Ridge Dev. Co. v. Scenic Rivers Ass'n*, 426 U.S. 776, 778 (1976) (internal citations omitted). The "undisputed purpose of the Act [is] to prohibit fraud and to protect purchasers of land which is part of a common promotional scheme. The language of the Act is meant to be read broadly to effectuate this goal." *Olsen v. Lake Country*, 955 F.2d 203, 205 (4th Cir. 1991) (internal citations omitted).

The Act was prompted by "revelations of substantial 'abuse in the sale of undeveloped land by promoters' in hearings held before the Senate Special Committee on Aging in 1964, and by its Securities Subcommittee in 1966-67." *Husted v. Amrep Corporation*, 429 F. Supp. 298, 303 (S.D.N.Y. 1977) (*quoting* U.S. Senate Banking and Currency Committee Report, S. REP. No. 90-1123, at 109-10 (1968)). The Act was intended to provide adequate protection to purchasers of land promoted and sold via interstate commerce who "may have lost 'their entire life savings' by investing in shaky land deals." *Id*. Since the Act is based on the Securities Act of 1933, it was intended to "give the purchaser [of land] such information necessary to make his own determination of the quality of what is being sold … the seller of undeveloped land covered by this title would be required to inform the purchaser not only of the desirable but also of any undesirable aspects." *Id*.

The ILSFDA requires developers to file with the United States Department of Housing and Urban Development ("HUD") a detail statement of record, which includes information required by §§ 1704 – 1705 of the Act, as well as HUD regulations codified at 24 CFR 1710.100(b). *Id*.  This statement of record was to be filed with HUD's Office of Interstate Land Sales.

In addition to the statement of record, developers must also provide to every purchaser a property report containing any information in the statement of record, or any other information determined by HUD as being necessary or appropriate in the public interest or for the protection of purchasers. It is a violation of the ILSFDA to sell or lease any lot where the "property report contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein." 15 U.S.C. § 1703(a)(1)(C) (2008). The property report must contain the same information as included in the statement of record (with certain non-relevant exceptions) filed with the Department of Housing and Urban Development's Office of Interstate Land Sales. 15 U.S.C. § 1707(a) (2008).

The ILSFDA provides for a private cause of action against a Defendant for violations of the Act. 15 U.S.C. § 1709 (2008). This District Court has jurisdiction of this action pursuant to 15 U.S.C. § 1719 (2008). A court may award "damages, specific performance, or such other relief as the court deems fair, just, and equitable." 15 U.S.C. 1709(a) (2008).  The revocation rights under the ILSFDA extend far beyond those automatic revocation rights in 15 U.S.C. § 1703(b), (c), and (d). Docket No. 95, Order of July 21, 2009 at fn 6. 15 U.S.C. § 1709's plain terms make pellucidly clear that equitable remedies (such as rescission and return of deposits) may be ordered, where justified by the facts of a particular case, for § 1703 violations such as those alleged here.  *id*.  Additionally, a prevailing plaintiff is entitled to "interest, court costs, and reasonable attorneys' fees, independent appraisers' fees, and travel to and from the lot." 15 U.S.C. § 1709(c) (2008).

15 U.S.C. § 1703(a) states, "It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails – (1) with respect to the sale or lease of any lot not exempt under [15 U.S.C. §1702]…." Thus, as a land developer involved in interstate land sales, Defendant was statutorily required to provide Plaintiffs with a property report meeting the requirements of § 1707. 15 U.S.C. § 1703(a)(1)(B) (2007). Subsection (B) of § 1703(a)(1) continues by requiring the developer to furnish to the purchaser the property report "in *advance of the signing of any contract* or agreement by such purchaser or lessee." 15 U.S.C. §1703(a)(B) (2007) (emphasis added).

Merrifield was obligated to file the property report with HUD and provide the Property Report in advance of contract execution. According to the legislative history of the ILSFDA, Congress intended that the property report be furnished far enough in advance of contract execution so that a purchaser could actually read and understand the information contained therein. As the Banking Committee of the U.S. House of Representatives stated, "[t]his bill would require that the

property report always be given to the purchaser in advance of (not at the time of) signing of the contract or agreement . . . ." H.R. REP. No. 96-154, at 36 (1979) (House Report), *as reprinted in* 1979 U.S.C.C.A.N. 2317, 2352.

Congress clearly intended to attack sharp business practices that prevented prospective purchases from utilizing the information contained in a property report. While considering the 1979 ISLA amendments, the House Banking Committee reported:

> By requiring that the property report be furnished in advance of signing, the Committee hopes to assure that the prospective purchaser has a reasonable opportunity to review and benefit from the information contained therein. If the prospective purchaser does not have this opportunity, clearly the report is of less value in evaluating the advantage and disadvantage of the sale [or] lease. If the report is provided at the outset of, or very early in the sale, lease, or offering process, this would be reasonable. If the report were provided, a few seconds before or virtually simultaneously with the contract documents to be executed, this would not meet the requirements of the Act. Developers and their agents should be clearly aware of the role the Committee intends the report to play and the importance and value which the Committee places on the property report in designing their sales practices and procedures.

H.R. REP. No. 96-154, at 36 (1979) (House Report), *as reprinted in* 1979 U.S.C.C.A.N. 2317, 2352.

Congress and HUD have required these disclosures to be filed with HUD and provided to the buyer prior to the time the buyer signs a contract.  The Merrifield Defendants do not contend that they complied with ILSFDA's reporting and disclosure requirements and this Court has already granted the Plaintiffs' partial summary judgment on this Count.  Docket No. 69, p. 9.

Section 1703(a)(1)(C) requires that a property report contain all material facts that are required by, among other sections, 15 U.S.C. § 1707 (and any HUD regulations promulgated under § 1707). Under 15 U.S.C. § 1707(a), a "property report relating to the lots in a subdivision shall contain such of the information contained in the statement of record." (The requirements for the statement of record are enumerated in 15 U.S.C. § 1705).  Section 1707(a) also requires the property report to contain "such other information as the [Secretary of Housing and Urban Development] may

by rules or regulations require." 15 U.S.C. § 1707(a) (2007).  The Merrifield Defendants have admittedly failed to disclose a single material fact under these provisions.

The U.S. Supreme Court stated that "[Section 1705 (5)] of the [Act] recognizes that disclosure of some of the environmental aspects of a subdivision is necessary to protect prospective purchasers and requires such disclosure in the statement of record and property report. The developer must provide information on such factors as roads, water, sewage, drainage, soil erosion, climate, nuisances, natural hazards, municipal services, and zoning restrictions. Moreover, [§§ 1705 (12) and 1707(a)] confer on the Secretary authority to require 'other information' from developers in their statements of record and property reports, both for the 'protection of purchasers' and 'in the public interest.'" *Flint Ridge Dev. Co. v. Scenic Rivers Ass'n,* 426 U.S. 776, 792 (1976).

Turning to the Federal Regulations promulgated by HUD pursuant to the ILSFDA, this Court has already ruled that HUD's regulations, which are subject to Administrative Procedure Act, including public notice and comment, is entitled to "*Chevron* deference as an authoritative interpretation." *Ahn v. Merrifield Town Ctr. Ltd. P'ship*, 584 F. Supp 2d 848, Fn. 15  (E.D. Va. 2008).  24 C.F.R. § 1710.33 states: "In non-exempt transactions, the developer must give each purchaser a printed Property Report, meeting the requirements of this part, in advance of the purchaser's signing of any contract or agreement for sale or lease."

The format of the property report is spelled out in significant detail in 24 C.F.R. §1710.100(b). This regulation enumerates the specific topical sections that must be included in the property report by stating:

```
(b) General format. The Statement of Record shall be
prepared in accordance with the following format:

        Property Report Heading and Section Number

Cover Sheet................................  1710.105
```

Table of Contents............................ 1710.106

Risks of Buying Land, Warnings............... 1710.107

General Information.......................... 1710.108

Title and Land Use.......................... 1710.109

      (a) General Instructions
      (b) Method of Sale
      (c) Encumbrances, Mortgages and Liens
      (d) Recording the Contract and Deed
      (e) Payments
      (f) Restrictions
      (g) Plats, Zoning, Surveying, Permits, Environment

Roads....................................... 1710.110

Utilities................................... 1710.111

      (a) Water
      (b) Sewer
      (c) Electricity
      (d) Telephone
      (e) Fuel or other Energy Source Financial

Information................................. 1710.112

Local Services.............................. 1710.113

Recreational Facilities..................... 1710.114

Subdivision Characteristics and
Climate..................................... 1710.115

      (a) General Topography
      (b) Water Coverage
      (c) Drainage and Fill
      (d) Flood Plain
      (e) Flooding and Soil Erosion
      (f) Nuisances
      (g) Hazards
      (h) Climate
      (i) Occupancy

Additional Information...................... 1710.116
      (a) Property Owners' Association
      (b) Taxes
      (c) Violations and Litigation
      (d) Resale or Exchange Program

```
        (e) Unusual Situations
             1. Leases
             2. Foreign Subdivision
             3. Time Sharing
             4. Membership
        (f) Equal Opportunity in Lot Sales
        (g) Listing of lots
```

Cost sheet..................................   1710.117

Receipt, Agent Certification
and Cancellation Page.......................   1710.118

Additional Information and Documentation General
Information.................................   1710.208

Title and Land Use..........................   1710.209

Roads.......................................   1710.210

Utilities...................................   1710.211

Financial Information.......................   1710.212

Recreational Facilities.....................   1710.214

Subdivision Characteristics.................   1710.215

Additional Information......................   1710.216

Affirmation.................................   1710.219

Each topical section listed in 24 C.F.R. § 1710.100(b) has a corresponding regulation which further details the material that must be included or addressed in the respective topical section. **The Defendants have admitted that none of these material facts were disclosed as they have Admitted that they failed to provide a property report.**

## CONCLUSION

The Court should grant the Plaintiffs' Motion for Summary Judgment on the Second Amended Complaint by:

a..    Ordering the Defendant Merrifield Town Center, its general partner Uniwest Group

LLC and Walker Title Company to return to each Plaintiff the deposit money held by

Walker Title along with interest at the legal rate.

b.      Ordering Defendant Merrifield Town Center Limited Partnership to pay to any

Plaintiff whose deposit is not held by Walker Title the amount that Plaintiff deposited

with interest at the legal rate; and

c.      Continue the case for further proceedings to award attorney's fees.

Respectfully submitted,
Zhou Jie Plant, *et al*,
by counsel,

/s/

_____
Henry St. J. FitzGerald, VSB # 6546
Law Offices of Henry St. J. FitzGerald
2300 9th St S Ste 304
Arlington, VA  22204-2345
(703) 486-1160
(703) 486-1161 (fax)
Counsel for Plaintiffs
hstjf1@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of January, 2010 that I will electronically file the foregoing Memorandum in Support of Partial Summary Judgment with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Edward W. Cameron, Esquire (VSB No. 29448)
John Patrick Sherry, Esquire (VSB No. 48768)
Sean Patrick Roche, Esquire (VSB No. 71412)
CAMERON McEVOY, PLLC
11325 Random Hills Road, Suite 200
Fairfax, Virginia 22030
(703) 273-8898
(703) 273-8897 (facsimile)
ecameron@cameronmcevoy.com

/s/

_____
Henry St. J. FitzGerald, VSB # 6546

Law Offices of Henry St. J. FitzGerald
2300 9th St S Ste 304
Arlington, VA  22204-2345
(703) 486-1160
(703) 486-1161 (fax)
Counsel for Plaintiffs