# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

ZHOU JIE PLANT, et al., )
    Plaintiffs, )
)
v. )    No. 1:08cv374
)
MERRIFIELD TOWN CENTER )
LIMITED PARTNERSHIP, et al., )
    Defendants. )

## MEMORANDUM OPINION

This federal question suit alleging violations of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 *et seq.* ("ILSFDA"), is before the Court on several motions and objections.[1] Specifically, at issue are the following:

> (i) plaintiffs' objection to the magistrate judge's December 23, 2009 report and recommendation on discovery sanctions recommending dismissal of noncomplying plaintiffs from this case (Docket No. 195), defendants' motion for attorney's fees and costs incurred in connection with their third motion for sanctions (Docket No. 198), and defendants' motion for leave to file a supplemental declaration in support of their motion for attorney's fees and costs (Docket No. 211);

> (ii) plaintiffs' objections to the magistrate judge's orders compelling discovery (Docket Nos. 143 & 178);

> (ii) the parties' objections to the magistrate judge's September 29, 2009 report and recommendation concerning the parties' evidentiary burdens on liability and affirmative defenses (Docket Nos. 177 & 179); and

> (iv) plaintiffs' motion for partial summary judgment (Docket No. 192), and defendants' motion to strike plaintiffs' pleadings in support of their motion for partial summary judgment (Docket No. 204).

---

[1] For a summary of the underlying facts, *see Plant v. Merrifield*, No. 1:08cv374 (E.D. Va. Mar. 16, 2009); *see also Ahn v. Merrifield*, 584 F. Supp. 2d 848 (E.D. Va. 2008).

-1-

The motions and objections have been fully briefed and argued,[2] and are now ripe for disposition. Each set of motions and objections will be separately addressed.

## I. Objection to the Report and Recommendation on Sanctions

### A.

Review appropriately begins with plaintiffs' objection to the magistrate judge's December 23, 2009 report and recommendation on sanctions ("R&R I"). In his report and recommendation, the magistrate judge recommends dismissal of the 97 (out of 120) plaintiffs who have repeatedly failed to comply with orders compelling discovery. The timeline pertaining to the magistrate judge's report and recommendation is as follows:

1. On August 3, 2009, defendants served each plaintiff with twenty interrogatories and twenty-four requests for production of documents.

2. On or about August 18, 2009, plaintiffs served defendants with objections to four of the twenty interrogatories and to eight of the twenty-four document production requests.

3. By September 2, 2009, the date on which responses to the August 3, 2009 discovery requests were due, plaintiffs had failed to file any such responses. Instead, on that date, plaintiffs filed a motion seeking a two week enlargement of time to respond to defendants' discovery requests.

4. Also on September 2, 2009, defendants filed a motion to compel responses to the discovery requests.

5. On September 11, 2009, the magistrate judge granted plaintiffs' motion for an extension of time and extended plaintiffs' discovery deadline to September 16, 2009. By the same order, the magistrate judge granted in part and denied in part defendants' motion to compel.

---

[2] Oral argument was heard on January 29, 2010, and additional oral argument on defendats' motion to strike pleadings was heard on February 12, 2010.

6.	By September 16, 2009, the new discovery deadline, defendants still had not received any of plaintiffs' responses. Instead, plaintiffs on that date filed an objection to the September 11, 2009 order granting in part the motion to compel. Plaintiffs objected to the order compelling discovery only insofar as it compelled responses to two of the interrogatories to which plaintiffs had previously objected. Plaintiffs neither objected to nor served responses to the other discovery requests, a clear violation of the Magistrate Judge's September 11, 2009 order and Rules 33(b)(2) and 34(b)(2), Fed. R. Civ. P.

7.	Also on September 16, 2009, plaintiffs filed a certificate of service giving notice that "Plaintiffs . . . have served, via US Mail, their responses to discovery." This statement was incorrect. In fact, by September 16, 2009, plaintiffs had mailed, at most, fifteen of the 120 required interrogatory responses.

8.	On September 18, 2009, two days after the discovery deadline had passed, defendants filed a motion to compel and a motion for sanctions, stating that no discovery responses had yet been received.

9.	On September 23, 2009, plaintiffs filed an opposition to defendants' motions stating that the discovery responses "were served by mail on September 16, 2009, and also that a "second group of documents" would be produced on September 24, 2009.

10.	On September 24, 2009, defendants filed a brief indicating that they received responses from fifteen (out of 120) plaintiffs on September 22, 2009, and further indicating that only five of the interrogatories were signed, and only four of those signatures were made under oath as required by Rule 33(b), Fed. R. Civ. P. Thus, as of September 24, 2009, 115 plaintiffs were in clear violation of the Magistrate Judge's September 11, 2009 order and the Federal Rules governing discovery.

11.	By order dated September 25, 2009, the magistrate judge granted defendants' second motion to compel. The order indicated that failure to file full responses by 5:00 p.m., Friday, October 2, 2009, would result in sanctions "which may include costs and a recommendation to the District Judge to dismiss the claims asserted by the disobedient party."

12.	On October 2, 2009, at 4:25 p.m., some thirty-five minutes before the new discovery deadline, plaintiffs filed a motion requesting five additional days to respond to the discovery requests. In that motion, plaintiffs represented

that they "have produced the vast majority of the signed interrogatories and all responsive documents," and indicated that plaintiffs' counsel was having difficulty reaching "approximately ten plaintiff [sic]."

13.     At 4:41 p.m. on October 2, 2009, plaintiffs' counsel filed an involuntary bankruptcy petition in United States Bankruptcy Court against defendant Merrifield Town Center, L.P. ("Merrifield"). At 5:07 p.m., plaintiffs filed a notice of the involuntary bankruptcy petition in the instant civil action requesting a stay of proceedings with respect to all defendants pursuant to the bankruptcy code's automatic stay provisions, codified at 11 U.S.C. § 362(a).

14.     At 5:01 p.m. on October 2, 2009, defendants filed a third motion for sanctions indicating that sworn responses to interrogatories had been received from only six of the 120 plaintiffs. Thus, as of the 5:00 p.m. discovery deadline, 114 plaintiffs were in clear violation of two orders of the magistrate judge and the Federal Rules governing discovery.

15.     By the end of the day on October 2, 2009, defendants had received interrogatory responses from only twenty-three of 120 plaintiffs.

16.     An Order dated October 7, 2009 held that although the automatic stay provision applied with respect to Merrifield and not to any other defendants, the case was nonetheless stayed in its entirety as of October 7 pursuant to Rule 19(b), Fed. R. Civ. P., because Merrifield was an essential party.

17.     On December 2, 2009, the involuntary bankruptcy petition was dismissed and the automatic stay was terminated. The bankruptcy judge found that the involuntary petition was filed in order "to secure what clearly appears to me to be a tactical advantage, that this involuntary petition was filed because a trial date was looming." *In re: Merrifield Town Center Limited Partnership*, No. 09-18119, tr. at 8 (Bankr. E.D. Va. Dec. 1, 2009) (transcript of bench ruling).

18.     On December 4, 2009 defendants filed a motion to lift the stay on the case, which motion was granted by Order dated December 7, 2009. Defendants also filed a renewed motion for sanctions and noticed a hearing for December 18, 2009.

19.     Late in the afternoon on December 17, 2009, plaintiffs' counsel served signed and unsigned interrogatory responses from eighteen plaintiffs, two of whom had already submitted responses, and one of whom is not a plaintiff in this case. Thus, plaintiffs' counsel, by December 18, 2009, had served

interrogatory responses from only thirty-eight of the 120 plaintiffs. The other 82 plaintiffs remained in clear violation of two discovery orders and the Federal Rules.

20.     Plaintiffs' counsel failed to appear at the hearing on the sanctions motion scheduled for 9:00 a.m., Friday, December 18, 2009, until 10:00 a.m., at which point argument had already been heard.

In his report and recommendation, the magistrate judge made factual findings as summarized in the timeline. He found that 97 of the 120 plaintiffs had failed to comply with two orders compelling discovery, including an order that clearly and explicitly warned that noncompliance could result in sanctions including dismissal. The magistrate judge further found that the 97 noncomplying plaintiffs "have undoubtedly acted in bad faith by disregarding two Orders compelling them to serve full and complete responses to discovery." R&R I at 10. In this regard, the magistrate judge found that bad faith was evidenced by the noncomplying plaintiffs' "willful disregard of the federal rules" and by plaintiffs' counsel's "representations to the court concerning the status of the plaintiffs' discovery responses that clearly were not correct." *Id.* at 11. Citing "the persistent nature of these violations and the various misleading or untrue representations made by plaintiffs' counsel" concerning plaintiffs' compliance with discovery, and applying the factors articulated by the Fourth Circuit in *Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998), the magistrate judge concluded that dismissal of the 97 noncomplying plaintiffs was warranted. R&R I at 13. The magistrate judge further recommended that defendants be awarded costs incurred in filing their third motion for sanctions pursuant to Rule 37(d)(3), Fed. R. Civ. P.

B.

Findings and conclusions of the magistrate judge on dispositive motions must be reviewed *de novo* when objections are timely filed. 43 U.S.C. § 636(b)(1)(B); Rule 72(b)(3), Fed. R. Civ. P.; *see United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007). Here, plaintiffs' timely objection advances the following arguments: (i) that they were not required to comply with the discovery orders and deadlines because their timely objections to the discovery orders stayed those orders and deadlines in all respects, (ii) that no deadline expired because the filing of the bankruptcy petition stayed the case, (iii) that the discovery sought is irrelevant, (iv) that the lead plaintiff properly responded to the discovery request on behalf of all plaintiffs, (v) that jurisdiction to impose sanctions is lacking because the bankruptcy court has retained jurisdiction over the sanctions request, and (vi) that the sanctions recommended by the magistrate judge are too severe in light of the alleged violations. Each of these arguments is separately addressed.

First, plaintiffs contend that their objections to the magistrate judge's orders excused their compliance with discovery deadlines pending resolution of these objections. This argument is without merit for two reasons. First, there is no support for the contention that a magistrate judge's order on a nondispositive motion, such as the discovery orders in issue here, is automatically stayed upon timely filing of an objection to that order. Instead, governing law is to the contrary. *See* Local Civil Rule 26(C) ("Any such objection does not extend the time within which the objecting party must otherwise answer or respond . . . ."); *see also* 12 Charles Alan Wright et al., *Federal Practice & Procedure* § 3069 ("Moreover, a timely objection does not automatically render the magistrate judge's ruling invalid until the district court acts on the

objection.") (citing cases). Indeed, plaintiffs' counsel's repeated requests—subsequent to his objections—for additional time and his factual representations concerning compliance clearly indicate that he knew that his objections had no staying effect. Moreover, plaintiffs objected only to a fraction of the discovery requests. Thus, even assuming, *arguendo*, that the objections had a staying effect, they could not excuse plaintiffs from complying with those discovery requests to which they did not object. In any event, because plaintiffs' objections did not operate to stay the magistrate judge's binding orders, plaintiffs were obligated to file timely responses to the discovery requests, which they failed to do.

Plaintiffs' second argument—that no deadline was violated because the involuntary bankruptcy petition filed by plaintiffs' counsel nineteen minutes before the discovery deadline stayed the entire case and terminated all deadlines—is also meritless. As indicated in the Order dated October 7, 2009, the automatic stay provisions of the bankruptcy code only applied with respect to Merrifield and not to any other joined defendant.[3] Thus, the case was not stayed in its entirety until the October 7, 2009 Order staying proceedings pursuant to Rule 19(b), Fed. R. Civ. P. *See Plant v. Merrifield*, No. 1:08cv374 (E.D. Va. Oct. 7, 2009) (Order).

Plaintiff now argues, citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), that the "unusual circumstances" required for the automatic stay to apply to the non-Merrifield defendants existed here. Yet, *Robins* does not support this argument. Instead, it is clear that for an automatic stay to apply to non-debtor defendants, these other defendants must

---

[3] Contrary to plaintiffs' counsel's repeated assertion in the pleadings, the October 7, 2009 Order staying proceedings was entered by the undersigned district judge and not by the magistrate judge.

have "such identity" with the debtor that suing the non-debtor is functionally the same as suing the debtor. *Robins*, 788 F.3d at 999. In this matter, the non-Merrifield defendants are Uniwest Group, LLC, Uniwest Development, LLC, and Michael D. Collier. The second amended complaint in this case alleges that Uniwest Group, LLC is the sole general partner of Merrifield and "is the *only* entity having the authority to make decisions on behalf of [Merrifield]. All decisions and actions of [Merrifield] are therefore the responsibility of Uniwest Group, LLC." 2d Am. Compl. ¶ 8. Assuming, *arguendo*, the truth of this allegation, it is at least possible that Uniwest Group, LLC satisfies the *Robins* test for the application of the automatic stay to third parties. But there are no allegations that would satisfy *Robins* with respect to the other two defendants, Uniwest Development, LLC, and Mr. Collier. In this regard, the amended complaint merely alleges (i) that Uniwest Development, LLC shares its place of business with Uniwest Group, LLC, and (ii) that Mr. Collier is the president, registered agent, and "controlling person" of Uniwest Group, LLC and Merrifield. The active complaint in this case therefore alleges no facts to suggest that either of these two defendants would be liable for Merrifield's debts, or vice versa. Thus, the involuntary bankruptcy petition against Merrifield did not stay the entire proceeding, and hence the October 2, 2009 discovery deadline was not stayed. Additionally, plaintiffs should not receive the benefit of having filed a bankruptcy petition solely for the strategic purpose of delaying these proceedings. Finally, any mistaken belief that plaintiffs' counsel may have had about the effect of the bankruptcy petition does not explain (i) plaintiffs' failure to comply with the September 2 and September 16, 2009 deadlines, (ii) plaintiffs' counsel's repeated misrepresentations to the Court about plaintiffs' compliance with discovery

orders, or (iii) plaintiffs' failure to file discovery responses after the stay was lifted on December 2, 2009. .

Plaintiffs also argue that the requested discovery is irrelevant and thus should not have been compelled. Put another way, plaintiffs contend that they were justified in disobeying the magistrate judge's orders compelling discovery because those orders were in error. As discussed in the next section, the magistrate judge did not err in ordering plaintiffs to respond to defendants' request. But even assuming, *arguendo*, that the magistrate judge's rulings were contrary to law, this would not justify plaintiffs' failure to obey these rulings. To accept this argument would be to strip the magistrate judge's orders of any binding effect, leaving parties free to ignore these orders whenever they disagreed with them. This result is unsupported by any Rule or statute and would, if applied, undermine the very reasons—judicial economy and efficiency—that magistrate judges are authorized to rule on nondispositive motions. Accordingly, plaintiffs' argument in this regard must be rejected.

Plaintiffs' next argument is that the response of the lead plaintiff was sufficient to satisfy the discovery requests and the orders compelling discovery. This contention is plainly meritless, as the record indicates that it was quite clear that individual responses were required. Indeed, the magistrate judge's second order compelling discovery requires that "each individual plaintiff shall serve full and complete responses" to the discovery request. *Plant v. Merrifield Town Center, L.P.*, No. 1:08cv374 (E.D. Va. Sept. 25, 2009) (Order). There is no room for ambiguity in these terms: all plaintiffs were required to file individual responses and yet, the great majority of them failed to do so.

Plaintiffs next contend that there is no jurisdiction to impose sanctions here because the bankruptcy court is currently considering whether to sanction plaintiffs' counsel for filing a frivolous bankruptcy petition against Merrifield. This argument, too, lacks any foundation in law. The bankruptcy court may, pursuant to Rule 9011, Fed. R. Bankr. P., sanction plaintiffs' counsel for any bad faith conduct in bankruptcy court, including the filing of a frivolous petition. Similarly, district courts are empowered, pursuant to Rules 11 and 37, Fed. R. Civ. P., to sanction plaintiffs' counsel for bad faith conduct and discovery violations that occurred in *this* Court. While there might be some merit to plaintiffs' contention if sanctions were sought here for plaintiffs' counsel's conduct in the bankruptcy court, that is simply not the case. The sanctions recommended by the magistrate judge are for discovery violations and bad faith conduct by plaintiffs' counsel that occurred solely in the district court proceedings. Thus, it is clear there is jurisdiction here to impose sanctions notwithstanding the ongoing sanctions proceeding in bankruptcy court.

Plaintiffs finally contend that the recommended sanctions are too severe. This argument also fails, for a careful review fo the record confirms that the magistrate judge properly applied the *Anderson* factors, and his findings are accordingly adopted here. It is clear from the factual record that plaintiffs' counsel knew that he was required to file responses from each of his clients individually and notwithstanding his objections to some—not all—of the discovery requests. And indeed, plaintiffs' counsel repeatedly represented to the Court, in pleadings subject to Rule 11, Fed. R. Civ. P., that he had made significant progress in complying with the discovery requests. For example, in a court filing on September 16, 2009, plaintiffs' counsel stated,

"Plaintiffs . . . have served, via US Mail, their responses to discovery." Then, on September 23, plaintiffs' counsel stated in a pleading that discovery responses "were served by mail on September 16, 2009, and also that a "second group of documents" would be produced on September 24, 2009. Finally, on October 2, 2009, that plaintiffs "have produced the vast majority of the signed interrogatories and all responsive documents," and that only responses from approximately ten plaintiffs were missing. These representations were false; plaintiffs' counsel had, in fact, produced discovery responses from only twenty-three of the 120 plaintiffs by the end of the day on October 2, 2009, and he produced no additional responses until the eve of the sanctions hearing on December 17, 2009. And even by the time of the hearing on sanctions, plaintiffs' counsel had produced interrogatory responses from only thirty-eight plaintiffs. Thus, even by then, 82 plaintiffs had failed to file compelled discovery, choosing instead to ignore the magistrate judge's orders and clear warnings.

Put simply, all four of the *Anderson* factors are satisfied on this record. First, bad faith is clearly evidenced by the repeated and flagrant disregard for the binding orders of the magistrate judge and plaintiffs' counsel's misrepresentation of material facts concerning plaintiffs' noncompliance with these orders. Second, the scope and length of the violations have clearly resulted in prejudice to defendants. These discovery requests were made on August 3, 2009. Yet, 97 of the 120 plaintiffs had not responded to the discovery requests by the October 2, 2009 deadline—which was at least the third discovery deadline that plaintiffs missed with respect to these specific requests—and despite repeated warnings, discovery responses still had not been produced from 82 of the 120 plaintiffs by the time of the hearing on the sanctions motion. Thus,

while defendants have complied with their discovery obligations, they were left without any responses from the great majority of plaintiffs for four and one half months. Third, dismissal is necessary for purposes of deterrence. The repeated and deliberately misleading nature of the violations—including conduct after plaintiffs were warned of the possibility of dismissal—indicates that dismissal and an award of costs is necessary to deter plaintiffs' counsel and others from such conduct in the future. Finally, for the same reason, it is plain from the nature of the conduct in issue that a lesser remedy would be inadequate to provide a sufficient deterrent to noncompliant plaintiffs and their counsel from similar conduct in the future. Thus, pursuant to Rule 37, Fed. R. Civ. P., it is appropriate for the 82 plaintiffs who failed to provide interrogatory responses by December 18, 2009, to be dismissed from the case.[4] Moreover, pursuant to the recommendation of the magistrate judge and Rule 37, Fed. R. Civ. P., the 97 plaintiffs who failed to provide interrogatory responses by October 2, 2009, and their counsel, are appropriately held responsible for reasonable attorney's fees and costs related to defendants'

---

[4] These 82 plaintiffs are: Ollie An Hong, Kwang Y. Choi, Stephen Ghang, Sung Bun Jung, Maria Rosa Cisneros, Hyunsook Kim, Suhee Chris Park, Xiao Pei Yang, Eun Soo Lee, Minna Lee, Hyo Sook Yun, Sung Hee Oh, James B. Lai, Jeonghe Lal, Eunice Cha, Nikki Kim, Ha Il Chung, Sok K. Yi, Hyung Min Kim, Jiin Kim, Lisa Young Hee Kim, Jung Hae Kim, Hyung Nim Yi, Gloria Eunmi Lim, Kum Hee Kang, Kevin Wu, Kelly Wu, Chun Won Hwang, Kang Hon Lee, Kyong Eun Lim, Young Hoon Jung, Il Hwan Oh, Ronnie Kim, Joo Ho Song, Jae Sun Park, Young R Chang, Jong Hui Lee, Uyn Son Yang, Xia Jin. Hyunghee Kim, Soonae Jeon, Olivia Shanelle Kim, Emily Sunwoon Kim, Karen Sun Lee, Janice S. Ko, Linda T. Ko, Hye Yon Ko, Tongil Lee, Giel Lee, Bong Hyun Yoo, Chang Jeon Lee, Sun Hee Song, Chang Hyo Na, Sung Hee Na, Jennifer Young Kim, Cindy S. Jeong, Yun Ok Choi, Hae Sook Yoo, Yong Suk Stevenson, Anh Doan, Dorn Trang, Yang Kim, Soon Ja Kim, Soon Hak Kwon, Junghee Ro, Soon Ryeah Lee, Sung Ho Lee, Ji Hee Nam, Kun Soo Han, Chien Ming Yee, Haeng Ja Kim, Byoung C. Cho, Sae Rho Mee Kim, Leah S. Her, Jerry Kim, Joung Ran Kim, Song C. Ho, Jeong Eui Lee, Ryan Jin Lee, Sungkyoon Park, Jessy Mansup Hyun, and Min Lee Hyun.

third motion for sanctions.[5]  Plaintiffs' counsel is advised that any further failure to comply strictly with court orders, and any further misrepresentations to the Court, will result in additional sanctions, including dismissal and award of fees and costs to defendants.  The matter is appropriately referred to the magistrate judge for further proceedings to prepare a report and recommendation of the amount of fees and costs to which defendants are entitled.

## II. Objections to the Orders Compelling Discovery

The analysis next turns to plaintiffs' objections to the magistrate judge's orders compelling discovery.  These nondispositive orders are reviewed for clear error of fact and for conclusions that are contrary to law.  28 U.S.C. § 636(b)(1); Rule 72(a), Fed. R. Civ. P.  In their objections, plaintiffs contend (i) that defendants' interrogatories 2 and 9 are not reasonably related to any material issues remaining in the case,[6] and (ii) that it was unreasonable to require a plaintiff who resides in Georgia to be deposed in the Eastern District of Virginia.  With respect to the first issue, plaintiffs argue that these two interrogatories are not reasonably related to any material issues because defendants' fraudulent inducement defense was previously stricken.  *See*

---

[5] These 97 plaintiffs are the 82 plaintiffs named in the immediately preceding footnote, plus: Rahul Chaudhry, Jin O'Neill, Oriole O'Neill, Chris Padden, Han Ho Kim, Sinthia Kim, Maria Bras, Jung N. Cho, Annie J. Cho, Joon Yong Ahn, Yang Ja Kim, Julia Kim, Lydia Cotto, Kyong Chu Ashby, and Ahlam Abdel Meguid Sharaf Aldin.  It is worth noting that, pursuant to the magistrate judge's recommendation, it would have been entirely appropriate for all of these 97 plaintiffs to be dismissed from the case.  Nonetheless, because these fifteen plaintiffs did eventually comply, at least in part, with the discovery request, the amount of prejudice to defendants was less grave, and thus, they will be allowed to remain in the case.

[6] Plaintiffs' objection to the September 25, 2009 order compelling discovery does not specifically identify the interrogatories to which the objections applied, a violation of Rule 72, Fed. R. Civ. P.  Nonetheless, because the objection was essentially identical in substance to the objection to the September 11, 2009 order, it is assumed that objections were properly made to interrogatories 2 and 9.

*Plant v. Merrifield*, No. 1:08cv374 (E.D. Va. Mar. 16, 2009) (Order).[7] The interrogatories in issue are as follows:

> Interrogatory No. 2:
>> As to each Purchase Agreement referenced in your complaint, provide the following:
>> (i)     the date, location, and identities of the individuals present at the time you executed such Agreement (including a description for each Addendum executed as part of the Agreement);
>> (ii)    the substance of any discussions between you and anyone acting on behalf of Merrifield Town Center relating (in any way) to such Agreement (including a description for each Addendum executed as part of the Agreement."

> Interrogatory No. 9:
>> If you contend that, at the time of contracting with Merrifield Town Center, you intended the subject condominium unit to be your principal residence, state, in detail, all facts which support or otherwise relate to such contention. Include in your answer the following:
>> (i)     your principal residence address at the time of contracting and whether you owned such residence at that time;
>> (ii)    if you owned the principal residence in which you lived at the time of contracting, identify any and all steps taken by you to sell or rent such residence from the time of contracting through the time you decided not to purchase the subject condominium unit from Merrifield Town Center; and,
>> (iii)   identify all efforts made by you to obtain financing for your purchase of the subject condominium unit from Merrifield Town Center.

Plaintiffs contend that the information requested in these interrogatories could pertain only to a fraudulent inducement defense, and because that defense was previously stricken, there is no basis for the discovery requests. Defendants argue, and the magistrate judge correctly concluded, that the material is related to other potential defenses, including unclean hands,

---

[7] The defense was stricken for failure to allege fraud with specificity in the answer as required by Rule 9(b), Fed. R. Civ. P.

-14-

waiver, and estoppel. Indeed, there is a reasonable relationship between the information requested and the elements necessary to assert these defenses as construed by the magistrate judge and as adopted here. Moreover, the information requested is material to whether defendants are liable and, if they are, whether the rescission remedy is appropriate. Additionally, these requests for information impose only a minimal burden on plaintiffs. Thus, the magistrate judge's order compelling responses to these interrogatories was neither clearly erroneous nor contrary to law. Accordingly, this objection is appropriately overruled.

Plaintiffs also object to the magistrate judge's September 11, 2009 order on the ground that requiring in-person deposition of a plaintiff who resides in Georgia would be unduly burdensome.[8] According to defendants, the parties successfully resolved this disagreement and the plaintiff in issue was deposed.[9] Accordingly, on the basis of defendants' representation, the objection is appropriately overruled as moot.

## III. Objections to the Report and Recommendation on the Parties' Evidentiary Burdens

Next to be considered are the parties' objections to the magistrate judge's September 29, 2009 report and recommendation ("R&R II") concerning various matters relating to the merits of plaintiffs' claim and defendants' defenses. Specifically, the report addressed the following issues:

---

[8] It is not entirely clear whose deposition it is to which plaintiffs object. The objection describes the individual in question only as "Plaintiff Lee." "Lee" is the last name of several plaintiffs.

[9] Moreover, barring exceptional circumstances, plaintiffs must be available for a deposition in the district in which the action was brought. *See* 8A *Federal Practice & Procedure* § 2112.

(i) plaintiffs' evidentiary burden to establish entitlement to rescission of the Unit Purchase Agreements ("UPAs"),

(ii) defendants' evidentiary burden to prove affirmative defenses,

(iii) whether plaintiffs are entitled to a jury trial,

(iv) whether any plaintiff has failed to comply with the applicable statute of limitations, and

(v) whether certain defendants are developers or agents thereof subject to liability under the Interstate Land Sales Full Disclosure Act ("ILSFDA"), 15 U.S.C. § 1701.

The parties have lodged various objections to the magistrate judge's conclusions of law, which are reviewed *de novo*. Fed. R. Civ. P. 53(f)(3). The objections to each of these five issues will be addressed in turn.

A.

With respect to the first issue, the magistrate judge concluded that plaintiffs may seek rescission of the UPAs under 15 U.S.C. § 1709(a) or under 15 U.S.C. § 1709(b). More specifically, the magistrate judge found that rescission is available under § 1709(a), which empowers district courts to award all "fair, just, and equitable" relief insofar as it would be available under Virginia law, which law requires a showing that violations (i) were substantial, and (ii) prejudiced the plaintiff. Similarly, the magistrate judge found that under § 1709(b), which allows an equitable action to enforce "any right" under § 1703, plaintiffs are entitled to rescission provided they show that the § 1703(c) violation—the failure to provide notice of the automatic revocation right—was a substantial violation that prejudiced each plaintiff.

To begin with, the magistrate judge incorrectly concluded that it was appropriate to refer to Virginia law in considering the availability and elements of an ILSFDA claim for

equitable rescission. It is well established that federal law, and not state law, governs the remedies available in a lawsuit in federal court arising under a federal cause of action. *See Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 66 (1992) (holding that federal law governs remedies available under Title IX); *Howlett v. Rose*, 496 U.S. 356, 375 (1990) ("The elements of, and the defenses to, a federal cause of action are defined by federal law."). And where, as here, the statutory provisions in issue do not specify the available remedies, federal common law governs the analysis. *See Franklin*, 503 U.S. at 60; *Griggs v. E.I. Dupont de Nemours & Co.*, 385 F.3d 440, 447 n.4 (4th Cir. 2004) (holding that federal common law governs equitable remedies available under ERISA). This conclusion is further supported by the principle that there is a strong federal interest in the uniformity of remedies available under a federal cause of action such as ILSFDA. Indeed, the Supreme Court has long held that the very act of creating a federal cause of action is a strong Congressional indication of the federal interest in the uniformity of remedies available to a party aggrieved by a violation of federal law. *See Monessen S.W. Ry. Co. V. Morgan*, 486 U.S. 330, 335 (1988) (applying federal common law to question of postjudgment interest under Federal Employers Liability Act and noting that "the proper measure of damages is inseparably connected with the right of action.") (quoting *Chesapeake & Oh. Ry. Co. v. Kelly*, 241 U.S. 485, 490 (1916)).[10] Thus, federal common law

---

[10] *See also United States v. Kimbell Foods*, 440 U.S. 715, 728 (1979) (holding that federal programs that require uniform application "necessitate formulation of controlling federal rules"); Caleb Nelson, The Persistence of General Law, 106 *Colum. L. Rev.* 503, 548 (2006) ("Absent contrary guidance from Congress, statutes creating federal causes of action to enforce federal duties are typically understood not only to federalize questions about the proper measure of damages, but also to draw the substance of the federal rules from principles of general law.").

governs the analysis here, namely whether, and under what circumstances, rescission is available for violations of §§ 1709(a) and (b).

While the question whether equitable rescission is available under these provisions of ILSFDA is apparently a matter of first impression, the Supreme Court has construed similar provisions in the Securities Act of 1933 and ERISA to create an entitlement to equitable rescission where the necessary circumstances exist. *See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250 (2000) (applying federal common law to interpretation of § 502(a)(3) of ERISA, which creates cause of action for "appropriate equitable relief"); *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 289 (1940) (applying federal common law to interpretation of § 22(a) of the Securities Act, which creates cause of action for "suits in equity"). There is no basis to conclude that the ILSFDA provisions creating "an action at law or in equity" should be interpreted any differently from the provisions of ERISA and the Securities Act. Indeed, the broad language of §§ 1709(a) and (b) indicates that all equitable remedies "typically available" under the common law are available for qualifying ILSFDA violations. *Mertens*, 508 U.S. at 256 (construing ERISA). Because it is beyond dispute that rescission is such a typically available remedy, *see* 3 Pomeroy's Equity Jurisprudence § 891 (5th ed. 1941), it is clear that rescission is available if the required elements are established.

The analysis therefore properly turns to the elements necessary to establish equitable rescission under federal common law.[11] In the ERISA context, courts have borrowed from

---

[11] *See Griggs*, 385 F.3d at 447 n.4 ("Because no statutory provision addresses the contours of the rescissionary remedy that we have concluded is proper under [ERISA] section 502(a)(3), the question is one of federal common law.").

traditional common law contract principles in concluding that misstatements or omissions must be "material" in order to warrant rescission.[12] And in this regard, misstatements or omissions are material when they "would have influenced the decision" to enter into the disputed contract with the omitting or misrepresenting party. *Shipley*, 333 F.3d at 905 (citing cases); *see also Grymes v. Sanders*, 93 U.S. 55, 60 (1876) (holding, for rescission of contract for sale of land, that mistake "must be such that it animated and controlled the conduct of the party"). This standard is an objective one; in other words, rescission is appropriate only where an omission "would be likely to affect the conduct of a reasonable man" with respect to the specific contract in issue. Restatement (First) of Contracts § 470 (1932); *see also McCormick & Co. v. Childers*, 468 F.2d 757, 765–66 (4th Cir. 1972) (citing Restatement (First) of Restitution § 28 (1937); Williston on Contracts § 1500 (3d ed.); 3 Pomeroy's Equity Jurisprudence § 891 (5th ed. 1941)). This well established materiality requirement is properly adopted here.[13] Moreover, as the Fourth Circuit held in *Griggs*, rescission is generally appropriate only where the parties may be restored to their position prior to the contract, but this requirement is neither absolute nor unmoving, and federal common law allows rescission "where the equities of the situation so demand[]," even if full

----

[12] *See Shipley v. Ark. Blue Cross & Blue Shield*, 333 F.3d 898, 902 (8th Cir. 2003); *Provident Life & Accident Ins. Co. v. Sharpless*, 364 F.3d 634, 639–40 (5th Cir. 2004); *Sec. Life Ins. Co. of Am. v. Meyling*, 146 F.3d 1184, 1191 (9th Cir. 1998); *Davies v. Centennial Life Ins. Co.*, 128 F.3d 934, 943–44 (6th Cir. 1997); *Hauser v. Life Gen. Sec. Ins. Co.*, 56 F.3d 1330, 1333–35 (11th Cir. 1995); *see also Griggs*, 385 F.3d at 446 n.3 (citing cases requiring materiality with approval).

[13] It is worth noting that adoption of the materiality requirement for rescission under ILSFDA is further supported by ILSFDA's prohibition of obtaining money or property by means of "any omission to state a material fact necessary in order to make the statements made . . . not misleading." § 1703(a)(2)(B).

restoration is not possible. 385 F.3d at 449. Accordingly, in order to prove entitlement to rescission of the UPAs, plaintiffs must prove: (i) that ILSFDA violations occurred, (ii) that these violations were material or, in other words, that they would have influenced a reasonable purchaser's decision to enter into the contract for sale, and (iii) either that rescission would restore the parties to the *status quo ante*, or that the equities of the situation demand rescission.

Plaintiffs make four objections to the magistrate judge's recommendation concerning the rescission remedy. First, plaintiffs argue that the UPAs are void as a matter of Virginia law because they violate ILSFDA, and because a contract to perform an act prohibited by statute is generally void under Virginia law. *See Niemeyer v. Wright*, 75 Va. 239 (1881). There is, to be sure, a question whether the ILSFDA remedy provisions preempt state law claims based on an ILSFDA violation. But this question need not be resolved, for it is clear that the UPAs would not be void under Virginia's doctrine of illegality. As the magistrate judge noted, a contract is not void if the statute prohibiting the acts underlying the contract makes it "manifest that [the law] was *not intended* to render the act in contravention of the statute void." *P.M. Palumbo, Jr., M.D., Inc. v. Bennett*, 409 S.E.2d 152, 153 (Va. 1991). Applying this principle, the magistrate judge analyzed ILSFDA and correctly concluded that Congress did not intend for contracts that violate ILSFDA to be void *ab initio*. Instead, ILSFDA contains detailed remedies provisions, including allowing revocation of the contract under certain conditions. *See, e.g.*, § 1703(c) (allowing revocation by purchaser for § 1703 violation within two years of signing); § 1709(a) (allowing relief "as the court deems fair, just, and equitable"). Thus, ILSFDA makes it "manifest" that contracts that violate the statute are not *per se* void and, applying this rule, unless

one of these statutory revocation conditions is met, the contract in issue is not void. Accordingly, this objection is overruled.

Second, plaintiffs dispute the magistrate judge's conclusion that plaintiffs' right of automatic revocation pursuant to § 1703(c) has lapsed because more than two years passed between execution of the UPAs and the date this action was filed. This was not a finding that the magistrate judge made in his September 29, 2009 report and recommendation; rather, this finding was made in the June 1, 2009 report and recommendation. Plaintiffs objected to the finding at that time, and the objection was overruled by Order dated July 21, 2009. *See Plant v. Merrifield*, No. 1:08cv374 (July 21, 2009) (Order). Accordingly, this conclusion is not presently reviewable.

Third, plaintiffs argue that they are entitled to rescission based on defendants' failure to provide notice to plaintiffs of their right of automatic revocation. This argument is essentially a reformulation of plaintiffs' first and second arguments: plaintiffs contend they are entitled to an automatic revocation right because they were not provided notice of their automatic revocation right under § 1703(c). To the extent this objection is appropriately raised at this time, it is clear that ILSFDA does not provide for an additional automatic revocation right where the seller fails to notify the purchaser of their automatic revocation right for failure to provide a property report pursuant to § 1703(c). Instead, rescission is appropriate only insofar as plaintiffs are entitled to rescission "in equity" under §§ 1709(a) and (b) to enforce a right under § 1703. Accordingly, this objection is overruled.

Fourth, plaintiffs object to the magistrate judge's finding that, in order to obtain rescission, plaintiffs must show actual prejudice. Specifically, the magistrate judge concluded (i)

that in order to obtain rescission for the § 1703(a) violations, plaintiffs must show that they would not have entered into the UPAs had they been provided with the required property information, and (ii) that in order to obtain rescission for the § 1703(c) violations, plaintiffs must show that they would have exercised their automatic revocation rights within the two-year statutory period had they received proper notice of those rights. While plaintiffs incorrectly argue for the application of Virginia law governing materiality, they are correct, for the reasons stated above, that actual prejudice is not required under proper application of principles of federal common law. Instead, under federal common law, rescission is available under ILSFDA only if plaintiffs can prove objective materiality. Accordingly, this objection is appropriately sustained in part and overruled in part.

Defendants raise several objections relating to plaintiffs' right to seek rescission, but these objections primarily involve the rulings in the July 21, 2009 Order and other prior rulings, and not the magistrate judge's September 29, 2009 report and recommendation. Accordingly, these objections are neither reached nor decided here because they are not the proper subject matter of an objection pursuant to R&R II pursuant to Rule 72, Fed. R. Civ. P. Specifically, the following objections do not raise issues addressed by the magistrate judge in the report and recommendation and are therefore not considered here:

(i) defendants' argument that ILSFDA does not apply to the UPAs (Objection No. 1),

(ii) defendants' argument that plaintiffs cannot seek damages pursuant to ILSFDA (Objection No. 2),

(iii) defendants' contention that the Court lacks subject matter jurisdiction over

plaintiffs' claim for rescission (Objection No. 3),[14]

(iv) defendants' objection to the report and recommendation's failure "clearly [to] reflect[s] that Plaintiffs must proceed with the purchase of the subject condominium units" if they prevail in their claim for damages but not in their claim for rescission (Objection No. 4), and

(v) defendants' argument that plaintiffs are not entitled to rescission because they have "expressly disavow[ed]" such a claim (Objection No. 6).

Nonetheless, defendants also lodge several objections that do pertain to the magistrate judge's findings concerning the availability of the rescission remedy to plaintiffs. First, defendants argue that the magistrate judge's findings "authorize[] an independent right of revocation" in excess of ILSFDA's statutory authorization. Def. Objection No. 5. In this respect, it is clear that the magistrate judge correctly interpreted the plain language of §§ 1709(a) and 1709(b) to allow "an action at law or in equity" that includes "such other relief as the court deems fair, just, and equitable," including the rescission remedy. Accordingly, this objection is appropriately overruled.

Defendants also object to the rescission remedy because "equity cannot restore the parties to the position which they occupied" prior to entering into the UPAs and because "the breach (if any) is not so substantial as to defeat the object of the parties." Def. Objection No. 7. As stated above, restoration of the *status quo ante* is generally required, unless the equities of the situation demand rescission even though full restoration is not possible. This objection is not ripe. To the contrary, defendants' "objection" is merely an argument that the evidence does not support a

---

[14] Defendants are, of course, free to file a motion to dismiss for lack of subject-matter jurisdiction at any time pursuant to Rule 12(h).

finding that these requirements are met. This objection is premature: the magistrate judge reached no conclusions on the sufficiency of the evidence. Accordingly, the merits of this objection are neither reached nor decided here.

Defendants further contend that rescission is not authorized by the UPAs and therefore cannot be granted (Objection Nos. 8 & 12). While defendants are correct that the UPAs do not expressly provide a right of rescission for plaintiffs in these circumstances, plaintiffs do not seek rescission as a matter of contractual right, but rather as a matter of statutory right under ILSFDA. Accordingly, rights and remedies normally available under ILSFDA govern with respect to the UPAs, except to the extent contractually waived—a matter addressed in subpart E *infra*. Because, as the magistrate judge correctly held, those rights and remedies include the right of rescission in some circumstances, rescission is available here if plaintiffs meet their burden to demonstrate entitlement to the equitable remedy under ILSFDA's remedy provisions. Accordingly, this objection is overruled.

Finally, defendants argue that the complaint only alleges violations of § 1703(a), and thus no other claims under ILSFDA—specifically, for violations of § 1703(b) or (c)—are properly pleaded (Objection No. 9). In this respect, while it is true that the amended complaint does not specifically reference § 1703(b) or (c), it is also true that the amended complaint alleges that defendants failed to deliver a property report to the purchasers as required by ILSFDA. This allegation is sufficient to satisfy the notice pleading requirements of Rule 8, Fed. R. Civ. P., and

thus states a valid claim for relief for violations of § 1703(b) or (c).[15] Thus, this objection, too, must be overruled and accordingly, the magistrate judge's findings and conclusions on this first issue are adopted as modified by this section.

## B.

On the second issue, the magistrate judge considered defendants' evidentiary burden to establish each of their asserted affirmative defenses. In this regard, magistrate judge's conclusions may be succinctly summarized as follows:

(i) to establish the applicability of the doctrine of laches, defendants must prove (1) that each plaintiff knew of his or her right to revoke the UPA, (2) that the plaintiff inexplicably or inexcusably delayed in asserting his or her right to revoke, and (3) that evidence has been lost that would support defendants' position or defendants have changed their position in a manner that would not have occurred but for plaintiffs' delay;

(ii) to prevail on the equitable estoppel defense, defendants must prove (1) that a plaintiff represented that he or she would perform under the UPAs, (2) that the plaintiff never acted inconsistently with that intent during the time of defendants' performance, (3) that defendants reasonably relied on the plaintiff's representation, and (4) that this reasonable reliance resulted in injury to defendants;

(iii) to prevail on an unclean hands defense, defendants must show that each plaintiff engaged in inequitable or wrongful conduct;

(iv) to prevail on the "first material breach" affirmative defense, defendants must show that each plaintiff materially breached their UPA before defendants did;

(v) the failure of condition precedent defense is not available to defendants because communication of revocation within two years is only a condition precedent to exercise of § 1703(c)'s automatic revocation provision and not to the Court's exercise of equitable powers under § 1709;

---

[15] Nonetheless, the magistrate judge also correctly noted that plaintiffs do not appear to have a viable claim for relief for a violation of § 1703(b). *See* R&R II at 13 n.7.

(vi) the Court has previously decided that ILSFDA applies to the UPAs and thus defendants may not argue that it does not apply;

(vii) the Court has previously ruled that plaintiffs have stated a valid claim for rescission of the UPAs under ILSFDA;

(viii) plaintiffs' intention not to perform on a contract is no defense to an action for equitable rescission; and

(ix) plaintiffs do not seek declaratory relief and thus whether there is a legal or factual basis for such relief is immaterial.

Whereas the magistrate judge applied Virginia law with respect to affirmative defenses, as noted above, federal common law controls this inquiry. *See Howlett v. Rose*, 496 U.S. 356, 375 (1990) ("The elements of, and the defenses to, a federal cause of action are defined by federal law."). In this respect, the Fourth Circuit held in *Griggs* that federal common law defines the doctrine of laches to require (i) unreasonable delay and (ii) prejudice. In *Griggs*, the defendant waited over four years from the time he became aware of the defendant-employer's negligent conduct in managing its pension program to bring his claim for rescission of his election to enter the pension program. This delay caused a statute of limitations for recovery of excessive tax payments to lapse. Accordingly, had rescission been ordered, the defendant-employer would have borne the entire cost of the excessive tax payments. On these facts, the Fourth Circuit concluded that the equitable defense of laches prevented equitable rescission because (i) the plaintiff unreasonably delayed seeking rescission and (ii) that delay prejudiced the defendant. *Id.* (citing Restatement (First) of Restitution § 64 (1937)). Applying these elements to the facts of this case, defendants must prove (i) that each plaintiff inexplicably or inexcusably delayed in seeking revocation of the UPAs once he or she became aware of the ILSFDA

-26-

violations, and (ii) that defendants have been prejudiced in a manner that would not have occurred but for each plaintiff's delay.[16]

With respect to the second asserted defense to rescission, the Supreme Court has elucidated the principles of equitable estoppel as understood by federal common law as follows:

> If one person makes a definite misrepresentation of fact to another person having reason to believe that the other person will rely upon it and the other in reasonable reliance upon it does an act . . . the first person is not entitled . . . to regain property or its value that the other acquired by the act, if the other in reliance upon the misrepresentation and before discovery of the truth has so changed his position that it would be unjust to deprive him of that which he thus acquired. Thus, the party claiming the estoppel must have relied on its adversary's conduct in such a manner as to change his position for the worse. And that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading.

*Heckler v. Comm. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 59 (1984) (quoting Restatement (Second) of Torts § 894(1) (1979); 3 Pomeroy, Equity Jurisprudence § 805 (1941)) (citing *Wilber Nat'l Bank v. United States*, 294 U.S. 120, 124–25 (1935) (internal quotation marks and citations omitted). Applying these principles to the facts of this case, in order to prevail on the equitable estoppel defense, defendants must prove (i) that each plaintiff represented that he or she intended to perform on the UPAs despite knowing of the ILSFDA violations, (ii) that defendants changed position in reliance on that representation, and (iii) that defendants' reliance was reasonable.

---

[16] Particularly relevant to the application of the doctrine of laches to this case is the Supreme Court's comment that the doctrine is "peculiarly applicable to speculative property . . . , which is liable to large and constant fluctuations in value." *Grymes v. Sanders*, 93 U.S. 55, 62 (1876) (citing cases and treatises). Indeed, defendants allege that the property in issue here was purchased by plaintiffs for precisely the same speculative purposes as the Virginia land in issue in the *Grymes* case.

Next, with respect to the unclean hands defense, the law of Virginia and the federal common law are the same: no party asserting an equitable claim or an equitable defense may himself or herself be "tainted with inequitableness or bad faith relative to the matter in which he [or she] seeks relief, however improper may have been the behavior" of the other party. *Precision Instr. Mfg. Co. v. Auto. Maintenance Mach. Co.*, 324 U.S. 806, 814 (1945). Accordingly, plaintiffs are not entitled to rescission if they have engaged in inequitable conduct with respect to the UPAs, and likewise, defendants may not assert an equitable defense if their hands are similarly unclean.

Defendants next assert the first material breach doctrine. It is well established that the first material breach doctrine is a defense to breach of contract cases. Williston on Contracts § 63:3 (citing cases). This defense, however, has no bearing on claims asserting statutory violations. Plaintiffs' breach of contract claim has previously been dismissed from this case. *See Plant v. Merrifield*, No. 1:08cv374 (E.D. Va. Mar. 16, 2009) (Order). Accordingly, the first material breach defense fails as a matter of law with respect to the statutory violation claim remaining in this case.

On the asserted failure of condition precedent defense, the magistrate judge correctly applied federal law in concluding that the plain language of ILSFDA does not require notice of intent to revoke the contract within § 1703(c)'s two-year period as a condition precedent to seeking a remedy in equity pursuant to § 1709. Accordingly, the magistrate judge's conclusion in this respect is adopted in full.

In their objection, plaintiffs assert that defendants should not be allowed to assert

equitable defenses because of their "unclean hands." The magistrate judge was not asked to address whether plaintiffs may rebut defendants' assertion of equitable defenses by showing "unclean hands," and thus this objection is appropriately overruled. Nonetheless, as discussed above, federal common law requires that any party claiming an equitable remedy or an equitable defense is subject to the "clean hands" rule.

Defendants do not object to this portion of the magistrate judge's report and recommendation. The magistrate judge's findings and conclusions on this question are correct in all other respects and are adopted as modified above.

## C.

The third issue the magistrate judge considered is whether plaintiffs are entitled to a jury trial on any fact or issue that must be established in order to obtain the equitable relief that they seek. The magistrate judge correctly concluded plaintiffs are not entitled to a jury trial because (i) they waived any jury trial right through an express waiver clause in the UPAs,[17] and (ii) plaintiffs seek equitable relief and accordingly are not entitled to a jury trial under the well settled

---

[17] The relevant contract language states, in bold, large-case type:

**WAIVER OF JURY TRIAL. PURCHASER AND DECLARANT EACH WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES HERETO AGAINST THE OTHER, ON OR WITH RESPECT TO ANY MATTER WHATSOEVER RELATING IN ANY WAY TO THIS AGREEMENT, THE CONDOMINIUM, CONDOMINIUM UNIT OR OTHERWISE, INCLUDING BUT NOT LIMITED TO CLAIMS ARISING IN CONTRACT, TORT, NEGLIGENCE, FRAUD, OR BY ANY APPLICABLE STATUTE, OR IN ANY MANNER, DIRECTLY OR INDIRECTLY ARISING OUT OF THIS TRANSACTION AND/OR RELATING TO THE PROPERTY.**

interpretation of the Seventh Amendment of the Constitution of the United States. Plaintiffs object to this finding by renewing their argument that the UPAs are void and thus the jury waiver clause is a legal nullity. This argument is rejected above as unsupported by the case law or by the statute. Moreover, plaintiffs do not address the constitutional issue, and it is clear that, because plaintiffs only seek equitable rescission, they are not entitled to a jury trial. *See Ross v. Bernhard*, 396 U.S. 531, 537–38 (1970). Accordingly, because plaintiffs are not entitled to a jury trial, the objection is overruled and the magistrate judge's findings and conclusions on this issue are adopted in full.

## D.

The fourth issue that the magistrate judge considered is whether plaintiffs have complied with ILSFDA's three-year statute of limitations. The magistrate judge concluded that the statute of limitations was tolled by filing a motion for class certification prior to the expiration of the limitations period, and thus all plaintiffs have complied with the three-year time limit. Plaintiffs, not unexpectedly, do not object to this conclusion. Defendants, however, object on two grounds. First, defendants argue that a prior suit filed in another district court and subsequently nonsuited should not toll plaintiffs' limitations period. This prior action played no part in the magistrate judge's analysis and thus, this objection is appropriately overruled. Second, defendants contend that a motion for class certification does not toll the limitations period where, as here, the proposed class fails to satisfy any of the requirements of Rule 23, Fed. R. Civ. P. This position is contrary to the holdings of the Supreme Court and the Fourth Circuit. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352–53 (1983); *Bridges v. Dep't of Md. State Police*, 441 F.3d 197,

210 (4th Cir. 2006) (holding that limitations periods are tolled "regardless of why the district court denied certification). Accordingly, the objection is appropriately overruled, and the magistrate judge's findings and conclusions concerning plaintiffs' compliance with ILSFDA's three-year statute of limitations are adopted in full.

## E.

Finally, the magistrate judge considered whether defendants Mr. Collier, Uniwest Group, LLC, and Uniwest Development, LLC are "developers" or "agents" thereof subject to ILSDFA liability under §§ 1701(5) and 1701(6). The magistrate judge concluded (i) that the exculpatory clause found at paragraph 38 of the UPAs does not waive ILSFDA claims against non-Merrifield defendants, and (ii) that plaintiffs have alleged sufficient facts from which to conclude that Uniwest Group, LLC and Mr. Collier are developers or agents of Merrifield within the meaning of ILSFDA, but that there are insufficient factual allegations from which to conclude that Uniwest Development, LLC is such a developer or agent.

Plaintiffs object to the conclusion that there are insufficient facts from which to conclude that Uniwest Development, LLC is a developer or agent under ILSFDA. In their amended complaint, plaintiffs allege (i) that Uniwest Development LLC is a Virginia limited liability company with offices in Virginia, (ii) that it "directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots . . . in the Vantage project," and (iii) that it "was an 'agent'" of Merrifield as a "person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision." The complaint alleges, moreover, that Uniwest Development, LLC is located at the same address as Uniwest

Group, LLC, which the complaint alleges to be the sole general partner of Merrifield. It may ultimately be the case that the evidence does not support plaintiffs' claim that Uniwest Development, LLC is a developer or agent thereof as those terms are understood by ILSFDA. Yet, the factual allegations contained in the amended complaint are sufficient to create a plausible inference that Uniwest Development, LLC is, in fact, a developer or agent. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Accordingly, the objection is sustained and Uniwest Development, LLC properly remains a defendant in this case.

Defendants object to the magistrate judge's conclusions concerning whether the three non-Merrifield defendants are subject to ILSFDA liability for two reasons. First, defendants object to the magistrate judge's conclusion that the exculpatory clause does not apply to ILSFDA claims. Defendants do not, however, dispute that exculpatory clauses are disfavored and construed narrowly. *See Chesapeake & Ohio R. Co. v. Clifton Forge-Waynesboro Tel. Co.*, 224 S.E.2d 317 (Va. 1976).[18] Moreover, the Fourth Circuit has held that an exculpatory clause did not bar an action under a Virginia statute when the clause did not "in terms attempt to limit [the defendant's] liability for violations of the" statute. *Gill v. Rollins Protective Servs. Co.*, 722 F.2d

---

[18] It is clear that Virginia law governs interpretation of the UPAs. They are contracts made in Virginia for the construction and sale of property in Virginia. *See Food Consulting Group, Inc. v. Azzalino*, 270 F.3d 821, 827 (9th Cir. 2001) (applying California law to contractual interpretation in federal copyright case); *Med. Mutual of Ohio v. deSoto*, 245 F.3d 561, 570 (6th Cir. 2001) ("In the absence of any established body of federal choice of law rules, we begin with the Restatement (Second) of Conflicts of Law."); *Barry v. Midtown Miami No. 4, LLC*, 651 F. Supp. 2d 1320, 1324 (S.D. Fla. 2008) (in ILSFDA claim, applying state law to interpret land sale contract). It is pellucidly clear—and the parties do not dispute—that there is no federal interest in uniformity of interpretation of land sale contracts and Virginia law applies to interpretation of the UPAs under any choice of law rule.

55, 58 (4th Cir. 1983). Thus, because the exculpatory clause is ineffective to waive ILSFDA claims, this objection is overruled.

Second, defendants contend that the magistrate judge erred in finding that plaintiffs' factual allegations are sufficient to allow the conclusion that Uniwest Group, LLC and Mr. Collier are developers or agents. For the reasons stated above, while the evidence may not ultimately support plaintiffs' claim, the allegations are sufficiently plausible to allow the ILSFDA claims to proceed against these defendants. Thus, this objection is overruled, and the findings and conclusions of the magistrate judge are adopted as modified above.

## IV. Plaintiffs' Motion for Partial Summary Judgment

On January 5, 2010, plaintiffs filed a motion for partial summary judgment. The memorandum accompanying the motion contains no argument, but instead "adopt[s] the arguments" contained in (i) plaintiffs' objections to the magistrate judge's September 29, 2009 report and recommendation, and (ii) plaintiffs' opposition to defendants' objections to the same report and recommendation. Pl. Mem. at 1. On these grounds, plaintiffs claim that they are entitled to summary judgment on five issues:

1. The applicability of § 1703(c) given Defendants' failure to give notice of the right to revoke,

2. The status of the UPA as void given that they violate the ILSFDA,

3. The materiality of the Defendants' violations of the ILSFDA,

4. The applicability of the reasonable investor standard, and

5. Entry of Judgment in the amounts shown on the Walker Title Affidavit.

Defendants filed an opposition to plaintiffs' motion on January 10, 2010, and thereafter,

-33-

on January 20, 2010, plaintiffs filed a thirty-four page brief titled "Plaintiffs' Memorandum in Support of Their Motion for Summary Judgment." This brief shall be construed as an amendment to the January 5, 2010 memorandum.[19] As such, it violates the local rules governing summary judgment briefs in at least two respects. First, it exceeds the thirty-page limit by four pages. *See* Local Civil Rule 7(F). Second neither the January 5 nor the January 20 brief provides a listing of undisputed facts upon which the motion for summary judgment is based and, moreover, plaintiffs' factual contentions are unsupported by citations to record evidence. *See* Local Civil Rule 56(B). Indeed, the January 20 memorandum is nothing more than a recitation of plaintiffs' objections to the magistrate judge's report and recommendations, which objections have been resolved in this Memorandum Opinion.

The summary judgment standard is too well-settled to require elaboration here. In essence, summary judgment is appropriate under Rule 56, Fed. R. Civ. P., only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In this matter, plaintiffs have not carried their burden to demonstrate that judgment as a matter of law is warranted on the basis of the undisputed factual record. They have not presented a list of undisputed facts in violation of the local rules; they have not provided citations to the record that would support the conclusion that judgment is warranted as a matter of law; and, indeed, their legal argument is largely irrelevant to the matters on which they seek

---

[19] *See* Rule 15(a)(1), Fed. R. Civ. P. (permitting pre-trial amendment of a pleading once as a matter of course within twenty-one days of service).

summary judgment. Accordingly, plaintiffs' motion for partial summary judgment is appropriately denied, and defendants' motion to strike plaintiffs' summary judgment pleadings should be denied as moot.

## V. Referral to Magistrate Judge

Pursuant to 28 U.S.C. § 636(b)(1)(B), this matter is appropriately referred to the magistrate judge to prepare a report and recommendation containing factual findings and legal conclusions concerning *all* outstanding issues for trial, including (i) whether each plaintiff has proven that he or she is entitled to rescission of the UPA to which he or she is a party, (ii) whether defendants have proven that an affirmative defense applies to prohibit rescission with respect to each plaintiff, and (iii) whether each plaintiff has proven entitlement to any other remedy.

The magistrate judge may conduct evidentiary hearings and all other proceedings necessary in order to prepare this report and recommendation.

## VI. Conclusion

To summarize, plaintiffs' counsel's disregard for binding deadlines, and his material misrepresentations in pleadings filed in this Court, warrant dismissal of 82 of 120 of the plaintiffs in this case and an award of fees and costs to defendants. Additionally, plaintiffs' objections to the magistrate judge's orders compelling discovery are overruled, and the parties' objections to the magistrate judge's September 29, 2009 report and recommendation are sustained in part and overruled in part as set forth herein. Plaintiffs' motion for partial summary judgment is appropriately denied, and the matter is referred to the magistrate judge for

-35-

evidentiary hearings on all triable issues.

An appropriate Order will issue.

Alexandria, Virginia
March 18, 2010

/s/ TB

T. S. Ellis, III
United States District Judge