IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ZHOU JIE PLANT, etp al.,            )
    Plaintiffs,                     )
                                    )
    v.                              )       Case No. 1:08cv374
                                    )
MERRIFIELD TOWN CENTER               )
LIMITED PARTNERSHIP, et al.,         )
    Defendants.                     )

## MEMORANDUM OPINION

In this consolidated federal question case, more than one hundred purchasers of

condominiums in the heart of Fairfax County sued the developer of those condominiums alleging

that violations of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 *et seq.*

("ILSFDA") entitle them to rescission of their condominium sales contracts and the return of

their deposits. At issue on the basis of a Report and Recommendation of the Magistrate Judge

pursuant to 28 U.S.C. § 636(b)(1) is whether plaintiffs, who did not timely seek automatic

rescission under 15 U.S.C. §§ 1703(b), (c), or (d), are nonetheless entitled to an equitable remedy

pursuant to 15 U.S.C. § 1709 given defendants' failure to comply with certain ILSFDA

disclosure requirements.

### I.

### A.    Procedural History

Plaintiffs are approximately one hundred fifteen individuals who contracted to purchase

condominium units from defendant Merrifield Town Center Limited Partnership ("Merrifield"),

a Virginia limited partnership. The units were to be built as part of the Vantage Condominiums

at Merrifield Town Center ("Vantage Condominiums") in Falls Church, Virginia. Buyers of the

units signed one of two Unit Purchase Agreements ("UPAs"): (i) one UPA form required

Merrifield to complete construction within 36 months of the date on which Merrifield signed the UPA; and (ii) a second UPA form required Merrifield to complete construction within 24 months of Merrifield's signing. In addition to Merrifield, this consolidated action includes four other defendants: (i) Uniwest Group, LLC, a Virginia limited liability company and Merrifield's sole general partner; (ii) Michael D. Collier, Uniwest Group's President and the registered agent for both Merrifield and Uniwest Group; (iii) Uniwest Development, LLC, a Virginia limited liability company; and (iv) defendant Walker Title & Escrow Company, Inc., a Virginia corporation that plaintiffs allege to have custody of plaintiffs' condominium deposits. Plaintiffs allege that Collier, Uniwest Group, and Uniwest Development acted as Merrifield's agents for the purposes of the Vantage Condominiums development.

On November 6, 2008, plaintiffs' motion to consolidate this case with *Kim v. Merrifield Town Ctr. Ltd. P'ship*, No. 1:08cv566, was granted. *See Plant v. Merrifield Town Ctr. Ltd. P'ship*, No. 1:08cv374 (E.D. Va. Nov. 6, 2008) (Consolidation Order). The original complaint in *Kim* identified more than one hundred plaintiffs, nine of whom were also plaintiffs in the *Plant* action. The *Kim* complaint also named two defendants in addition to those names in the *Plant* complaint: McWilliams-Ballard, LLC and Jonnie Jameson. Following consolidation, plaintiffs' motion for class certification was denied on November 12, 2008 for failure to meet any of the four class certification requirements, namely numerosity, commonality, typicality, and adequacy of representation. *Plant v. Merrifield Town Ctr. Ltd. P'ship*, No. 1:08cv374 (E.D. Va. Nov. 12, 2008) (Order) (citing Rule 23, Fed. R. Civ. P.).

On December 16, 2008, the claims against defendants McWilliams-Ballard, LLC and Jonnie Jameson were dismissed with prejudice. *Plant v. Merrifield Town Ctr. Ltd. P'ship*, No. 1:08cv374 (E.D. Va. Dec. 16, 2008) (Order). On December 19, 2008, plaintiffs were granted

leave to file a second amended complaint adding additional plaintiffs. The second amended

complaint, filed January 12, 2009, named 126 plaintiffs who, individually or jointly, purchased

93 units in the Vantage Condominiums.

Both the *Kim* complaint and the *Plant* amended complaint alleged claims for (i) violation

of ILSFDA; (ii) statutory business conspiracy to injure plaintiffs' reputation, trade, business or

profession pursuant to Va. Code § 18.2-499 *et seq.*; and (iii) breach of contract. The claims in

both cases for statutory business conspiracy were withdrawn on September 19, 2008, and the

breach of contract claims in both cases were withdrawn on December 16, 2008.[1] Accordingly,

the alleged ILSFDA violations are the only remaining claims in the consolidated cases.

Defendants initially claimed they were exempt from the disclosure requirements of

ILSFDA. On March 16, 2009, an Order issued rejecting this argument and granting plaintiffs

partial summary judgment with respect to the ILSFDA claims

> insofar as (i) the 24-month UPA sales contracts are not exempt, pursuant to 15
> U.S.C. § 1702(a)(2), from ILSFDA's reporting and disclosure requirements; (ii)
> the 36-month UPA sales contracts are not exempt, pursuant to 15 U.S.C.
> § 1702(b)(1), from ILSFDA's reporting and disclosure requirements; and (iii) that
> it is undisputed that defendants failed to comply with ILSFDA's reporting and
> disclosure requirements with respect to all sales contracts at issue.

*See Plant v. Merrifield Town Ctr. Ltd. P'ship*, No. 1:08cv374, 2009 U.S. Dist. LEXIS

68113, at *20 (E.D. Va. Mar. 16, 2009) (Order) ("*Merrifield II*"). As to exemption, the

defendants had argued that the 24-month UPA contracts were exempt from ILSFDA under

§ 1702(a)(2), which exempts land sales "obligating the seller or lessor to erect [the building at

issue] within a period of two years." The 24-month UPAs were subject to "ratification" from the

---

[1] Plaintiffs' second amended complaint re-alleged claims for breach of contract, but since these claims exceeded the scope of leave granted for filing the second amended complaint, the breach of contract claims were dismissed on March 16, 2009. *See Plant v. Merrifield Town Ctr. Ltd. P'ship*, No. 1:08cv374 (E.D. Va. Mar. 16, 2009) (Order).

sellers, and the contract obligated sellers to build the condominiums within two years of the

ratification date. Thus, defendants argued that the exemption applied because the sellers were

obligated to build the condominiums within two years of the sellers' ratification date.

Defendants raised this same argument in a related case, *Ahn v. Merrifield Town Ctr. Ltd. P'ship*,

584 F. Supp. 2d 848 (E.D. Va. 2008) ("*Merrifield I*").[2] For the same reasons elucidated in

*Merrifield I*, defendants' § 1702(a)(2) argument was rejected because the two-year building

exemption requires the two-year period to commence when a purchaser signs the sales contract

and incurs obligations, not the later date of the sellers' "ratification." *Merrifield II*, 2009 U.S.

Dist. LEXIS 68113, at *20 (citing *Merrifield I*, 584 F. Supp. 2d 848, 849 (E.D. Va. 2008)).

Defendants also argued that the 36-month UPAs were exempt under the "One Hundred Lot

Exemption" of § 1702(b)(1), which exempts from ILSFDA "the sale or lease of lots in a

subdivision containing fewer than one hundred lots which are not exempt under" § 1702(a). Had

the § 1702(a) exemption covered the 24-month UPAs, then only the 36-month UPAs would have

been counted for the purposes of the "One Hundred Lots Exemption," and the exemption might

then have applied. Yet, because the § 1702(a) exemption did not apply to the 24-month UPAs,

more than one hundred lots remained, and the "One Hundred Lots Exemption" was inapplicable.

Accordingly, none of the Vantage Condominium lots are exempt from ILSFDA. *Id.*

On March 24, 2009, the matter was referred to the Magistrate Judge to determine what

remedies, if any, were appropriate for the plaintiffs to seek under ILSFDA. *See Plant v.*

*Merrifield Town Ctr. Ltd. P'ship*, No. 1:08cv374, 2009 U.S. Dist. LEXIS 67687, at *6 (E.D. Va.

Mar. 24, 2009) (Order). The subsequent Report and Recommendation from the Magistrate Judge

---

[2] *Merrifield I* involved different purchasers of the Vantage Condominiums apartments but
essentially identical claims as the present case. On September 22, 2009, the *Merrifield I*
plaintiffs voluntarily dismissed their case with prejudice after reaching a settlement. *See Ahn v.*
*Merrifield Town Ctr. Ltd. P'ship*, No. 1:08cv73 (E.D. Va. Sept. 22, 2009) (Order).

("First R&R") was adopted in part and modified in part by Order dated July 21, 2009, which

permitted plaintiffs to seek rescission of the contracts and return of their deposits "*provided* that

each plaintiff can establish a basis for such equitable relief with respect to the specific violation

at issue." *See Plant v. Merrifield Town Ctr. Ltd. P'ship*, No. 1:08cv374, 2009 U.S. Dist. LEXIS

65831 at *12, (E.D. Va. July 21, 2009) (Order) (emphasis in original). Plaintiffs were

specifically denied relief under the automatic rescission provisions of §§ 1703(b), (c), or (d),

because plaintiffs failed to submit notice of intent to revoke the UPAs within two years of their

signing, as required by those subsections. *Id.*

Discovery was then allowed to proceed but was interrupted briefly when on October 7,

2009, the matter was stayed with respect to defendant Merrifield because plaintiffs filed an

involuntary bankruptcy petition against Merrifield. *See Plant v. Merrifield Town Ctr. Ltd.

P'ship*, No. 1:08cv374 (E.D. Va. Oct. 7, 2009) (Order) (citing 11 U.S.C. § 362(a)). The same

order stayed the case with respect to all other defendants pursuant to Rule 19(b), Fed. R. Civ. P.

On December 2, 2009, the bankruptcy judge found that plaintiffs had only filed the petition "to

secure . . . a tactical advantage . . . because a trial date was looming," and dismissed the petition

as frivolous. *In re Merrifield Town Ctr. Ltd. P'ship*, No. 09-18119, tr. at 8 (Bankr. E.D. Va. Dec.

1, 2009) (transcript of bench ruling). Accordingly, on December 7, the stay in this case was

lifted and discovery proceeded. *See Plant v. Merrifield Town Ctr. Ltd. P'ship*, No. 1:08cv374

(E.D. Va. Dec. 7, 2009) (Order).

The question of the appropriate remedy for the ILSFDA violations was referred to the

Magistrate Judge prior to the stay. The Magistrate Judge addressed this question in a September

29, 2009 Report and Recommendation ("Second R&R"). Additionally, when the stay was lifted,

defendants moved for sanctions against plaintiffs, which question was also referred to the

Magistrate Judge and resulted in a third Report and Recommendation dated December 23, 2009

("Third R&R").   Objections to both the Second R&R and Third R&R were resolved in a

Memorandum Opinion on March 18, 2010. *See Plant v. Merrifield Town Ctr. Ltd. P'ship*, 711 F.

Supp. 2d 576, 600 (E.D. Va. 2010) (Memorandum Opinion) ("*Merrifield III*").

On to the question of sanctions, *Merrifield III* granted defendants' request for sanctions in

light of plaintiffs' consistent defiance of the Court's discovery orders. *Id.* at 584, 587-88.  In all,

ninety-seven plaintiffs failed to comply with the Court's deadlines, eighty-two of whom still had

not provided their required interrogatory responses at the time of the sanctions hearing. *Id.*  The

Magistrate Judge found that many of the plaintiffs had "undoubtedly acted in bad faith" by

disregarding orders to compel, and further, that plaintiffs' counsel had made "representations to

the court concerning the status of the plaintiffs' discovery responses that clearly were not

correct." *Id.* at 584.  Accordingly, costs and attorneys' fees were deemed appropriate against all

ninety-seven plaintiffs who had failed to comply with discovery deadlines, and dismissal was

ordered with respect to the subset of eighty-two plaintiffs who remained delinquent in

responding to discovery at the time of the sanctions hearing. *Id.* at 587-88.

On the issue of remedy for the remaining plaintiffs, *Merrifield III* provided a framework

for the elements of plaintiffs' claims and defendants' affirmative defenses based on the

applicable law, and then referred the case back to the Magistrate Judge pursuant to 28 U.S.C.

§ 636(b)(1) for a report and recommendation on all remaining triable issues.  The remaining

triable issues included:

> (i) whether each plaintiff has proven that he or she is entitled to rescission of the
> UPA to which he or she is a party, (ii) whether defendants have proven that an
> affirmative defense applies to prohibit rescission with respect to each plaintiff,
> and (iii) whether each plaintiff has proven entitlement to any other remedy.

*Merrifield III,* 711 F. Supp. 2d at 600.  With respect to the equitable rescission remedy,

*Merrifield III* set forth an explanation of the remedy and its elements.  In this regard, *Merrifield*

*III* noted that ILSFDA's rescission provisions parallel those found in the Securities Act of 1933

and the Employee Retirement Income Security Act of 1974 ("ERISA"), which the Supreme

Court has interpreted to create an entitlement to equitable rescission where the necessary

elements are established under federal common law.  *Id.* at 591 (citing *Harris Trust & Sav. Bank*

*v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250 (2000) (interpreting ERISA); *Deckert v.*

*Independence Shares Corp.*, 311 U.S. 282, 289 (1940) (interpreting the Securities Act)).  And, as

*Merrifield III* notes, the cases also make clear that equitable rescission under federal common

law borrows from traditional principles of contract law requiring that misstatements or omissions

be "material" to warrant rescission.  *Id.* at 591 & n.12 (collecting cases).  In this regard,

misstatements or omissions are material when they "would have influenced the decision" to enter

into the disputed contract with the omitting or misrepresenting party.  *Id.* (citing *Shipley v. Ark.*

*Blue Cross & Blue Shield*, 333 F.3d 898, 905 (8th Cir. 2003) (collecting cases)).  In other words,

unless plaintiffs demonstrated that the ILSFDA violations, if any, would have influenced a

reasonable purchaser's decision to enter into the condominium contract, equitable rescission

would not be appropriate.

**B.      Fourth Report and Recommendation**

The Magistrate Judge conducted an evidentiary hearing on June 28 and 29, 2010 in which

twenty-five plaintiffs and one defendant, Michael Collier, testified.  In the case of jointly

purchased units, only one joint purchaser testified, and no purchasers testified on behalf of five

units.[3]  Numerous exhibits were admitted and reviewed by the Magistrate Judge.  On September

2, 2010, the Magistrate Judge submitted his Fourth Report and Recommendation.  *See Plant v.*

*Merrifield Town Ctr. Ltd. P'ship,* No. 1:08cv374 (Sept. 2, 2010) (Report and Recommendation)

("Fourth R&R").  Plaintiffs and defendants filed objections to the Fourth R&R.

### 1.    *Proposed Factual Findings*

Based on a *de novo* review of the record, it is appropriate to adopt the Magistrate Judge's

Proposed Factual Findings, which are summarized as follows.  The Vantage Condominiums

development consisted of approximately 279 units.  The sale of all units in the Vantage

Condominiums was conducted as part of a single condominium project.  Buyers of the units all

signed either the 24-month UPA or the 36-month UPA; these UPAs were identical in every way

except for the time required for Merrified to complete construction of the units.  In the case of

the 24-month UPAs, Merrifield committed to complete construction within 24 months of

Merrifield's "ratifying" (*i.e.*, signing) the UPA, whereas the 36-month UPAs allowed Merrifield

36 months from ratification to complete construction.

In May 2005, before the first UPA was executed, Merrifield submitted both versions of

the UPA to the Virginia Real Estate Board ("VREB") for review and approval.  Yet, because

Merrifield mistakenly believed that its units were exempt from ILSFDA, no statement of record

was ever approved by the Department of Housing and Urban Development ("HUD") regarding

the Vantage Condominiums, nor was any statement of record provided to the purchasers.  In any

event, Merrifield began selling units in May or June 2005, and by August 2005, purchasers had

signed UPAs for all of the units.

---

[3] These five units are Unit S236 (Yang Ja Bae), Unit S513 (Rahul Chaudhry), Unit S508 (Raj
Chaudhry), Unit S203 (Dustin Han and Ae Ju Lee), and Unit S308 (Chris Padden).

Collier reviewed and signed each UPA, but he delayed in signing the 24-month UPAs until August or September 2005 because of delays in construction. Indeed, a series of delays plagued construction of the Vantage Condominiums practically from the start of the project. In the summer of 2005, Merrifield experienced unexpected difficulties obtaining site permits to begin construction. Then, in June 2006, Merrifield learned it had more contaminated soil samples on its site than it initially projected. Groundwater conditions also delayed construction, and eventually Merrifield was forced to redesign the foundation for the North building.[4] Although the problems with the design of the South building were not as significant, South building construction was delayed approximately three months to enlarge certain footings.

By December 31, 2006, the buildings were more than 50% finished. After that point, it was not realistically possible to stop construction of any one unit, since the structural components of each unit had to be completed to sustain the buildings.[5] In other words, if purchasers abandoned units in January 2007, construction of those units would necessarily have had to continue. In October 2005, Merrifield projected to complete construction of the units by May 4, 2007, within the two-year time period initially proposed. By June 2006, because of project delays, the expected completion date slipped to December 5, 2007.

Of the 279 units in the project, only twenty purchasers actually closed on their units. None of these purchases were made in cash. The units have continued to be marketed as condominiums, and since 2005, no material changes have been made to the exterior, the

---

[4] The Vantage Condominiums spanned two buildings, known as the North and South buildings.

[5] Although the units themselves would have to be built after this point, the finishes on the units, which individual purchasers were able to select prior to construction, could be abandoned if purchasers backed out on their contracts.

residential parking area, or other amenities such as the shuttle bus service, which is presently operational.

Plaintiffs admit that their decision to seek rescission of their contracts stemmed from the economic downturn and resulting loss in the condominiums' value, and not the defendants' nondisclosures. Indeed, none of the plaintiffs testified that the undisclosed information, had it been disclosed, would have affected their decision to sign the contracts.

### 2.    *Proposed Conclusions of Law*

The Fourth R&R also recommended the following conclusions of law:

1.  Defendants violated ILSFDA by failing to make certain disclosures to plaintiffs as required by the Act;

2.  Defendants' ILSFDA violations were not material for the purposes of plaintiffs' right to equitable rescission because they would not have influenced a reasonable purchaser's decision to enter into the contract for sale;

3.  Rescission would restore the parties to the *status quo ante*;

4.  Defendants failed to establish any of their affirmative defenses—namely laches, equitable estoppel, or unclean hands;

5.  Those plaintiffs who did not appear at the hearing and for whom no evidence was adduced concerning their ownership in the condominiums should be dismissed; and

6.  Defendants Michael Collier and Uniwest Development were developers or agents of developers within the meaning of ILSFDA, and thus they need not be dismissed on this basis.

Although the second recommendation, if adopted, would bar the equitable rescission claim for lack of materiality, the Magistrate Judge made all six recommendations as a matter of completeness. The parties raise various objections to these proposed findings. Each of these recommendations, and the accompanying objections, is reviewed separately.

## II.

Analysis of the various objections to the legal conclusions appropriately begins with the relevant ILSFDA provisions. In this regard, ILSFDA provides that the sale of any lot not exempt from its provisions must comply with a number of disclosure requirements and sales practices. Under 15 U.S.C. § 1703(a)(1), developers of nonexempt properties are required, *inter alia*, to provide a "statement of record" and a "printed property report" to purchasers prior to sale. Section 1709(a) provides that a purchaser may bring an action to enforce his or her rights under § 1703 at law or in equity, and the court may order any "relief as the court deems fair, just, and equitable." 15 U.S.C. § 1709(a).

As reflected in *Merrifield II*, defendants violated ILSFDA in failing to provide purchasers a statement of record and printed property report prior to the sale. 2009 U.S. Dist. LEXIS 68113, at \*20. And *Merrifield III* concluded that plaintiffs' remedy, if any, is the equitable remedy of rescission.[6] *See Merrifield III*, 711 F. Supp. 2d at 591. Accordingly, the question is whether plaintiffs have shown that equity requires rescission and return of their deposits.

### A.    ILSFDA Violations

As an initial matter, the Magistrate Judge correctly concluded that defendants violated ILSFDA by failing to include a statement of record and printed property report, a finding consistent with the March 16, 2009 Order. *See* Fourth R&R, at 40. This is not surprising, of course, in light of the fact that defendants did not include these required disclosures because they

---

[6] In particular, *Merrifield III* found that plaintiffs were not entitled to automatic statutory rescission under 15 U.S.C. § 1703(c). 711 F. Supp. 2d at 591-93. Plaintiffs have also sought damages in this case, but as explained in the July 21, 2009 Order, plaintiffs' claim for damages is, in reality, merely a claim for return of their deposits in accordance with their claim for rescission. While plaintiffs have occasionally labeled their claim as one for damages, they "have elected to seek equitable relief, not damages, and plaintiffs must be bound by that choice." *Plant v. Merrifield Town Ctr. Ltd. P'ship*, No. 1:08cv374, 2009 U.S. Dist. LEXIS 65831 at \*9, (E.D. Va. July 21, 2009) (Order).

mistakenly believed the Merrifield proprieties were exempt from ILSFDA. *See Plant v.*
*Merrifield Town Ctr. Ltd. P'ship,* No. 1:08cv374 (Mar. 16, 2009) (Order) (granting plaintiffs
partial summary judgment insofar as defendants failed to comply with ILSFDA's reporting
requirements).

The Fourth R&R next notes that plaintiffs did not present timely[7] evidence of defendants'
promotional material, and thus plaintiffs did not establish a violation of § 1703(a)(2), ILSFDA's
misleading sales practices provisions. Fourth R&R, at 40. The Magistrate Judge also correctly
rejected plaintiffs' argument that defendants violated § 1703(a)(2) by "bur[ying]" an amended
ratification date in a UPA amendment provided to plaintiffs in the summer of 2006. The change
in ratification date was not, as plaintiffs claim, buried in the document, but rather clearly set forth
in the one-page UPA amendment. The Fourth R&R, therefore, correctly concluded that there
was no basis for finding a § 1703(a)(2) violation. Fourth R&R, at 42.

Additionally, the Fourth R&R recommended concluding that defendants violated
§ 1703(c) by failing to provide "clearly" plaintiffs' statutory right to automatic rescission.
Fourth R&R, at 43 (quoting 15 U.S.C. § 1703(c)). Defendants do not deny this omission;
indeed, they admit they did not include such language in the UPA because they incorrectly
believed that the properties were exempt from ILSFDA.

In sum, the Magistrate Judge recommended a finding that defendants violated §
1703(a)(1) and § 1703(c).[8] Based on a *de novo* review of the record, it is appropriate to adopt
this recommendation and find that defendants violated ILSFDA by failing to include a printed

---

[7] Plaintiffs initially failed to introduce any evidence of defendants' promotional materials, and
then did so after the conclusion of the evidentiary hearing. Because this belated submission was
improper, the Magistrate Judge properly refused to consider such evidence.

[8] The Magistrate Judge also noted that plaintiffs do not assert a violation of § 1703(b).

property report, statement of record, and notice of plaintiffs' right to automatic statutory rescission.

### B.      Materiality of Defendants' Nondisclosures

*Merrifield III* requires that plaintiffs demonstrate that the ILSFDA violations were material in that they would have influenced a reasonable purchaser's decision to enter into the contract for sale. *Merrifield III*, 711 F. Supp. 2d at 592. Plaintiffs argue that all of the disclosures ILSFDA requires are *per se* material because ILSFDA and HUD regulations require such disclosures to be made prior to the sale of a nonexempt property. The Magistrate Judge correctly rejected this argument, pointing out that accepting plaintiffs' *per se* materiality argument would effectively erase the statutory distinction between equitable rescission under § 1709 and automatic rescission under § 1703(c).[9] In particular, if plaintiffs' *per se* materiality argument were accepted, the two-year limitation on the right to automatic rescission under § 1703(c) would have no effect, and would be rendered nugatory, since a plaintiff who failed to exercise the right to automatic rescission within two years could obtain the same relief on an equitable basis without such a time bar. Plaintiffs' *per se* materiality argument also renders meaningless ILSFDA's use of the term "in equity" when describing the remedy. As *Merrifield III* makes clear, rescission "in equity" is a reference to the federal common law of equitable rescission, which requires a showing of materiality. 711 F. Supp. 2d at 591-92. Nor does the mere fact that ILSFDA or HUD regulations require certain disclosures prior to sale render the absence of those disclosures material to the equitable remedy calculus. To conclude otherwise is to confuse the importance of certain disclosures required in particular circumstances with the *materiality* required to show an equitable remedy under ILSFDA. Materiality for the purposes of

---

[9] The Magistrate Judge also correctly noted that plaintiffs do not assert a claims for rescission under § 1703(b).

establishing entitlement to equitable rescission requires a case-by-case analysis based on the totality of the circumstances. *Cf. Holland v. Florida*, 130 S. Ct. 2549, 2563 (2010) (noting generally that "we have also made clear that often the exercise of a court's equity powers must be made on a case-by-case basis," and applying such principles to the equitable tolling of a habeas petition) (ellipsis and quotations omitted); *McCormick & Co. v. Childers*, 468 F.2d 757 (4th Cir. 1972) (conducting a case-specific analysis to determine whether equitable rescission is appropriate in a business sales contract case). In sum, the Magistrate Judge appropriately rejected plaintiffs' *per se* materiality argument.

Next, the Fourth R&R considered whether material not disclosed in this case, had it been disclosed, would have influenced a reasonable purchaser's decision to enter into the contract for sale. Fourth R&R, at 52. In this respect, the R&R correctly recommends concluding that none of the undisclosed information was material. Plaintiffs object to this finding, arguing that the Magistrate Judge failed to make this inquiry on an objective basis. According to plaintiffs, the Magistrate Judge improperly considered what the plaintiffs subjectively knew or believed rather than considering only what a reasonable purchaser would have known or believed. Yet, a review of the Fourth R&R shows no such error. Indeed, the Magistrate Judge framed the issue as:

> whether a reasonable purchaser who had the UPA and Public Offering Statement in the summer of 2005 would have been influenced in making a decision to enter into the contract if he or she had been provided with any additional information required to be disclosed or provided under the ILSFDA.

Fourth R&R, at 45. This statement is consistent with *Merrifield III* and appropriately recognizes the objective nature of the equitable rescission inquiry.

After setting forth this standard, the Magistrate Judge identified seven specific nondisclosures to be analyzed for materiality:

1. The failure to disclose average temperatures, rainfall, and snowfall in the area (24 C.F.R. § 1710.115(h));

2.  The failure to disclose the moderate hurricane risks in the area (24 C.F.R. § 1710.115(g)(2));

3.  The failure to disclose the availability and proximity of fire and police protection; elementary, junior high, and senior high schools; hospitals, doctors' offices, and dentists' offices; ambulance services; mail services; and public transportation (24 C.F.R. § 1710.113);

4.  The failure to disclose that there were risks in buying land, such as diminution in value, the difficulty of resale, and other ordinary risks associated with land sales (24 C.F.R. § 1710.107);

5.  The failure to include a form that could be used to cancel the contract, where defendants instead gave plaintiffs notice of the right to cancel and the address to which the notice of cancellation should be sent (24 C.F.R. § 1710.118);

6.  The failure to disclose that defendants would not discriminate on the basis of race, religion, sex, or national origin (24 C.F.R. § 1710.116(f)); and

7.  The failure to disclose a list of major costs (24 C.F.R. § 1710.117).[10]

In the end, the Magistrate Judge recommended a conclusion that none of the undisclosed information, had it been disclosed, would have influenced a reasonable purchaser for the simple reason that any reasonable purchaser of these condominiums in the heart of Fairfax County would have been well aware of, or would not have needed, such information. Given the prominent location of the Vantage Condominiums in this highly-developed and affluent urban area, purchasers would not need to be told about the availability of police, fire departments, and schools, nor would they require information about average rainfall and hurricane risks, which are well-known in this area and not at all extreme. It is not as though the condominiums in issue in

---

[10] Plaintiffs object that this list of nondisclosures fails to take into account that, having not filed a statement of record with HUD, the Secretary of HUD could not exercise the authority to require additional information deemed "reasonably necessary or appropriate for the protection of purchasers." 15 U.S.C. § 1705(12). Yet, plaintiffs do not suggest what additional disclosures might have been appropriate under the circumstances, nor do they address whether such disclosures would have been material. Plaintiffs cannot meet their burden to demonstrate material nondisclosures for the purposes of their equitable rescission claim with mere speculation, particularly when plaintiffs failed to suggest any additional disclosures that might have been material.

this case are located in a flood plain or exposed to otherwise aberrant climatic or environmental risks unknown to an average, reasonable purchaser of these relatively expensive condominiums.[11] Furthermore, given that these condominiums were multi-family, multi-story units selling for between $380,000 and $900,000 in a highly developed part of Fairfax County, reasonable purchasers of such units would not require reminders about the ordinary risks associated with buying real property. The failure to include a form for canceling the contract likewise would not have influenced a reasonable purchaser, particularly in light of the fact that purchasers were informed of the right to cancel and the address for sending notice of cancellation in both the UPAs and the Public Offering Statement.[12] As to the notice of nondiscrimination, the Public Offering Statement provided to all purchasers did not mention nondiscrimination compliance under federal law, but it did certify compliance with nondiscrimination provisions of Virginia law, which prohibits discrimination on all grounds prohibited by federal law, as well as

---

[11] Although it is difficult to imagine a circumstance where the fact that the property was located in a flood plain would not be material to an equitable rescission analysis, it is worth noting that flood conditions would likely be of greater interest to buyers of undeveloped land than to buyers of land where, as here, the sellers bear the responsibility of erecting the structure. This observation underscores the need for a case-by-case analysis when considering materiality. Additionally, the example of buying land in a flood plain is particularly apt because it distinguishes the present case from *Burns v. Duplin Land Dev., Inc.*, 621 F. Supp. 2d 292 (E.D.N.C. 2009). In *Burns*, the developer failed to disclose in the property report that the plaintiffs' lot was in a flood plain, and the district court found that the disclosure was material under ILSFDA. Importantly, the materiality at issue in *Burns* was materiality under the ILSFDA statute, not materiality under the doctrine of equitable rescission. Aside from this critical legal distinction, *Burns* is also distinguishable from this case in that unlike the buyers in *Burns*, plaintiffs' properties were not located in a flood plain, and plaintiffs were not responsible for the construction.

[12] It should be noted that 15 U.S.C. § 1703(c) provides that, where, as here, no property report is provided to purchasers, their right of automatic rescission extends for two years after signing the contract. The mere fact that plaintiffs were not provided the proper forms for canceling their contracts does not extend this automatic rescission right beyond the two year outer limit provided by statute, and as such, plaintiffs are, as previously noted, time-barred from seeking automatic rescission in this case.

additional grounds prohibited only under state law. Finally, as to the cost sheet, although a cost sheet similar to the one described in 24 C.F.R. § 1710.117 was not provided, the Public Offering Statement did explain the relevant property taxes and other settlement costs and expenses; since plaintiffs have failed to identify any major costs not provided in the Public Offering Statement or UPAs, the mere failure to include such information in the specific form outlined in 24 C.F.R. § 1710.117 does not amount to a material nondisclosure under ILSFDA.

The Magistrate Judge's analysis in this regard comports with the guiding principle that ILSFDA was meant to prevent fraud in land sales by protecting "unsuspecting and ill-informed investors from buying undesirable land." *Long v. Merrifield Town Ctr. Ltd. P'ship*, 611 F.3d 240 (4th Cir. 2010). None of defendants' nondisclosures would have influenced a reasonable purchaser of the condominiums in issue, particularly in light of the other disclosures made in the UPAs themselves or in the Public Offering Statement included for each purchaser. Plaintiffs object to this analysis, arguing that information found in other documents cannot be used to cure a nondisclosure that violates ILSFDA. This argument, a variant of the *per se* materiality argument, confuses the question whether an ILSFDA violation occurred with whether that violation was material. On the one hand, it is true that defendants cannot cure an ILSFDA violation for failing to include a Property Report by disclosing substantially the same information in another form. Yet, on the other hand, defendants' affirmative disclosure of such information to potential purchasers may bear on the materiality calculus by diminishing the extent to which the nondisclosure would have affected the reasonable purchaser's decision to purchase. Under these circumstances, defendants have violated ILSFDA, but their nondisclosures are not "material" as that term is used in the equitable rescission context. Indeed,

17

collapsing this distinction would effectively render any ILSFDA nondisclosure *per se* material, and as explained previously, such an interpretation is meritless.

In this respect, plaintiffs' reliance on *Rockefeller v. High Sky, Inc.*, 394 F. Supp. 303 (E.D. Pa. 1975), and *Gaudet v. Woodlake Development Co.*, 399 F. Supp. 1005 (E.D. La. 1975), is misplaced. The plaintiffs in *Rockefeller* and *Gaudet* sought automatic statutory rescission pursuant to 15 U.S.C. § 1703(b), not equitable rescission pursuant to § 1709, and thus the only question in those cases was whether the defendants violated ILSFDA by failing to make the required disclosures. The courts in those cases found that defendants violated ILSFDA, and thus plaintiffs were entitled to statutory rescission. *Rockefeller*, 394 F. Supp. at 306; *Gaudet*, 399 F. Supp. at 1007. As in *Rockefeller* and *Gaudet*, defendants here violated ILSFDA, but unlike the plaintiffs in those cases, plaintiffs here are time-barred from seeking automatic statutory rescission under § 1703. Because plaintiffs here seek equitable rescission under § 1709, a broader question of materiality arises, and alternative disclosures, while not curative of the ILSFDA violations, are relevant to the equitable rescission materiality inquiry.

Plaintiffs also mistakenly rely on *Burns v. Duplin Land Development, Inc.*, 621 F. Supp. 2d 292 (E.D.N.C. 2009), in support of their argument.[13] In *Burns*, the court rejected the theory of "substantial compliance" with ILSFDA, but once again, the court was not considering whether equitable rescission was an appropriate remedy. *Id.* at 304, 307. In fact, in *Burns*, the district court did not even reach the question of remedy, finding instead only that a violation of ILSFDA had occurred. *Id.* at 309. In *Burns*, the district court noted that the materiality standard under § 1703(a)(1)(c) focused only on whether the *fact* was material rather than whether the *disclosure* was material in light of other disclosures. This is so, in the view of the *Burns* court, because

---

[13] *See supra* n.11.

"material" modifies "fact" in § 1703(a)(1)(c), and in interpreting similar language in a federal securities statute, the Fourth Circuit found that "the fact itself must be material, not the misrepresentation or omission." *Id.* at 308 (citing *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 656 (4th Cir. 2004)). That is, when determining whether a nondisclosure violates ILSFDA, one must consider the *form* of the nondisclosure, and not simply the *substance*, because the Act explicitly requires that specific disclosures be provided in particular documents. Accordingly, it is sensible that, when deciding whether ILSFDA has been violated, a court need not consider whether the information was disclosed in an alternative form not recognized in the statute. But the analysis here does not rely on the statutory language of ILSFDA, but rather the materiality element of the federal common law doctrine of equitable rescission. The doctrine of equitable rescission is not tied to a specific type of contract, like land sales, and the doctrine sets forth no requirements about the form of particular disclosures. Accordingly, when considering materiality in the equitable rescission context, it is appropriate to consider the documents provided to purchasers in their totality.

Plaintiffs' objections to the Magistrate Judge's recommendation concerning the materiality of defendants' nondisclosures, therefore, are overruled, and adopted instead is the Magistrate Judge's conclusion that plaintiffs have failed to show the materiality of any nondisclosures. And because plaintiffs have failed to show that defendants' nondisclosures would have influenced a reasonable purchaser's decision to enter the contract for sale, plaintiffs are not entitled to the remedy of equitable rescission.

### III.

Although the conclusion reached here that plaintiffs are not entitled to equitable rescission disposes of this matter, the Magistrate Judge made additional findings, and the parties raise additional objections, that merit brief discussion.

19

A.    **Restoration to the *Status Quo Ante***

The Magistrate Judge recommended a conclusion that plaintiffs satisfied the third

element of equitable rescission by showing that rescission would restore the parties to the *status*

*quo ante*. Fourth R&R, at 54. Defendants' objection to this recommendation is not persuasive.

As the Fourth Circuit has stated, courts of equity generally require that rescission is appropriate

only where "full or complete restoration of the benefits exchanged" can be achieved. *Griggs v.*

*E. I. DuPont de Nemours & Co.*, 385 F.3d 440, 447 (4th Cir. 2004). Yet, this requirement is not

without exceptions, and even if complete restoration is not possible, rescission is nevertheless

appropriate "where the equities of the situation so demand[]." *Id.* at 448.

Defendants have argued that restoration to the *status quo ante* is not possible in this case

because the Vantage Condominiums in issue have already been built, and many of the units were

completed with specific finishes selected by various plaintiffs. Defendants suggest they would

not have continued with the project had they known that plaintiffs intended to rescind their

contracts. The problem with this argument, as the Magistrate Judge correctly noted, is that

plaintiffs' decision to rescind their contracts came after the point at which defendants irrevocably

committed themselves to finishing the Vantage Condominiums project. That is, by the summer

of 2006, defendants had begun construction and could not simply abandon particular units.

Defendants, not plaintiffs, thus placed themselves in a position that provided them little

opportunity for mitigation in the event plaintiffs were able successfully to exercise their right to

equitable rescission. Assuming, *arguendo,* that defendants' nondisclosures were material as

required under the doctrine of equitable rescission, which they are not, it would be inappropriate

to deny plaintiffs their right to equitable rescission because defendants believed it economical to

continue with the project regardless of the possibility of rescinded contracts. In other words, the

fact that the Vantage Condominiums were actually built is no bar to equitable rescission. Indeed, the parties would be restored to the *status quo ante* by returning ownership of the properties to defendants and returning the deposits to plaintiffs. In this respect, defendants' objections are overruled, and the Magistrate Judge's finding is adopted. Of course, this analysis does not alter the result that plaintiffs have failed to satisfy the materiality prong of equitable rescission, and thus are not entitled to such relief.

### B.   Failure of Certain Plaintiffs to Appear at the Hearing

The Magistrate Judge also recommended dismissal of those plaintiffs who did not appear at the evidentiary hearing.[14]  This is so because, according to the Magistrate Judge, no testimony or evidence was adduced at the hearing regarding these plaintiffs' purchases of Vantage Condominium units. Plaintiffs object to this finding, and they argue that defendants stipulated to the authenticity and the admission of the contract documents concerning these plaintiffs, a claim defendants dispute. Plaintiffs also argue that their appearance is not required at the hearing.

To be sure, plaintiffs are correct that plaintiffs' presence at the evidentiary hearing is not a prerequisite to prevailing; yet, the issue is not plaintiffs' absence, but rather whether sufficient evidence was adduced at the hearing concerning the relevant plaintiffs' ownership of the condominiums. Absent such basic evidence, the record would be insufficient to support a finding in their favor on the ILSFDA claims.

Although it is unclear from the record precisely the nature of the parties' stipulation concerning the contract documents, plaintiffs' failure to introduce evidence proving the basic facts surrounding their ownership of condominium units appears to stem from a misunderstanding among the parties. Indeed, there is no reason the exhibits should not have

---

[14] These plaintiffs are Yang Ja Bae, Rahul Chaudhry, Raj Chaudhry, Dustin Han, Ae Ju Lee, and Chris Padden.

been admitted, even without the presence of the individual plaintiffs. Accordingly, the analysis

will proceed on the assumption that the Magistrate Judge was incorrect in recommending the

dismissal of these plaintiffs. Because none of the plaintiffs are entitled to equitable rescission

due to the lack of materiality in defendants' nondisclosures, the result is not affected by the

decision on the absent plaintiffs' dismissal.[15]

The Magistrate Judge also recommended dismissal of plaintiff Tia Young Johng's claims

because she assigned all of her rights in the claims presented in this suit to a third party who is

not named as a plaintiff. Plaintiffs object to this finding, and although their argument in this

regard is almost unintelligible,[16] they appear to argue that Johng's assignee should be substituted

for Johng. Because leave has not been granted to substitute parties, nor is it appropriate at this

stage in the litigation to grant such leave, *see* Rule 25(c), Fed. R. Civ. P., plaintiffs' objection

must be overruled. Accordingly, the Magistrate Judge's recommendation to dismiss plaintiff

Johng from this case is adopted.

## C.    Liability of Collier and Uniwest Development

The Magistrate Judge found that each of the defendants is properly included in this suit.

Defendants object to this recommendation, arguing (i) that defendant Collier was not acting in an

---

[15] The Magistrate Judge also recommended that plaintiff Han Ho Kim not be dismissed, because he was added to the UPA for Unit N325 after his daughter signed the UPA on that unit. Fourth R&R, at 56. Because Han Ho Kim was properly added to the UPA, it is appropriate to adopt this finding and deny defendants' request to dismiss Kim from the case.

[16] Plaintiffs' argument concerning the dismissal of Johng, in its entirety, reads as follows:

> Additionally, the Magistrate Judge struck the claim of Tia Johng should be she [sic] assigned her rights in this claim to a third party. The Magistrate Judge should merely have changed the Plaintiff's name to reflect that Tia Johng had assigned her claim during the litigation, that she was now the assignor and was assignee [sic] was represented by Ms. Johng. The claim should not have been dismissed.

Pls. Objections, at 23.

individual capacity in signing the relevant documents and conducting development activities, and (ii) that defendant Uniwest Development was not acting as a developer or agent of a developer with regard to the Merrifield project.

ILSFDA prohibits "any developer or agent" from conducting any of the activities prohibited by § 1703. *See* 15 U.S.C. § 1703(a). Section § 1701(5) defines a "developer" for the purposes of ILSFDA as "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision." Section 1701(6) defines an agent to include "any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision." Applying these provisions, the Magistrate Judge correctly concluded that Collier and Uniwest Development are both proper defendants. Uniwest Group is the managing general partner of Merrifield, and defendant Collier is the president of Uniwest Group. Collier also signed each of the UPAs. As to defendant Uniwest Development, the Magistrate Judge observed that Uniwest Development sent copies of the recorded condominium documents to plaintiffs in March 2008, and Uniwest Development also sent plaintiffs default notices when plaintiffs failed to appear at closing. The Magistrate Judge thus concluded that Uniwest Development was "either engaged in the selling effort or acting as agent for the seller." Fourth R&R, at 56-57.

Defendants' objections to this portion of the Magistrate Judge's Fourth R&R are without merit. The record establishes that Collier and Uniwest Development were acting as developers or agents within the meaning of §§ 1701(5) and (6), and accordingly, dismissal of these defendants is not warranted. This conclusion, of course, does not affect the ultimate result, which is that plaintiffs are not entitled to equitable relief—or any other relief—from any of the defendants.

### D.   Defendants' Affirmative Defenses

With regard to defendants' three equitable defenses—laches, equitable estoppel, and unclean hands—the Magistrate Judge recommended a conclusion that none of these defenses would bar equitable rescission were plaintiffs to qualify for that remedy. A *de novo* review of the record as a whole supports the Magistrate Judge's recommendation in this regard.

As to the defense of laches, the Fourth Circuit has recognized that the defense of laches requires a showing (i) that the plaintiff unreasonably delayed in bringing the action and (ii) that this delay prejudiced the defendants. *Griggs*, 385 F.3d at 449-50. As explained in *Merrifield III*, for defendants here to assert the defense of laches, they must show (i) that each plaintiff inexplicably or inexcusably delayed in seeking rescission of the UPAs once he or she became aware of the ILSFDA violations, and (ii) that defendants have been prejudiced in a manner that would not have occurred but for plaintiffs' delay. *Merrifield III*, 711 F. Supp. 2d at 595.

On this record, as the Magistrate Judge correctly noted, defendants failed to show inexplicable or inexcusable delay by plaintiffs in seeking rescission. Plaintiffs were not aware of ILSFDA until they met with an attorney in Spring 2008. In April 2008, plaintiffs brought suit against defendants in the form of a class action. Subsequent months saw the naming of additional plaintiffs to this action. Unlike the plaintiff in *Griggs*, who waited four years after learning of the defendant's breach of fiduciary duty to file suit, 385 F.3d at 450, plaintiffs here filed suit against defendants within months of learning they had potentially actionable rights under ILSFDA. Accordingly, the defense of laches is properly denied.

The Magistrate Judge also found no basis for defendants' assertion of equitable estoppel. The doctrine of equitable estoppel prevents a plaintiff from recovering property or damages on the basis of a "definite misrepresentation of fact to another person" having led the other person

reasonably to rely and to act on the misrepresentation to their detriment. *See Heckler v. Community Health Servs.*, 467 U.S. 51, 59 (1984). Nothing of the sort is reflected in this record; no plaintiff represented that he or she intended to perform on the UPAs despite knowing of the ILSFDA violations. It follows that defendants could not show they changed position in reliance on any representation, or that any such reliance was reasonable. *See Merrifield III*, 711 F. Supp. 2d at 596. As noted previously, the evidence showed that plaintiffs first became aware of ILSFDA in 2008; after this point, they did not communicate any further intention to continue with the purchase of the condominiums. Accordingly, the defense of equitable estoppel is unavailable to defendants.

Finally, defendants have asserted the defense of unclean hands. The doctrine of unclean hands requires that plaintiffs "have acted fairly and without fraud or deceit as to the controversy in issue." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 815 (1945). As the Supreme Court has stated, the doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Id.*

Defendants assert that plaintiffs have unclean hands in bringing this suit because, in the case of numerous plaintiffs, their decisions not to close on the condominiums was entirely a strategic economic decision based on changed market conditions; their decisions not to close had nothing to do with the ILSFDA violations. As the Magistrate Judge correctly noted, plaintiffs' decisions in this regard do not amount to inequitable conduct. This result is not surprising when one considers other provisions of ILSFDA. The Act's automatic rescission provisions allow purchasers to rescind contracts for any reason—or no reason at all—if certain disclosures are not made as required by the statute. *See* 15 U.S.C. § 1703(b), (c). Although plaintiffs here seek equitable rescission, not automatic statutory rescission, the fact that ILSFDA would allow

purchasers to rescind a land sale contract for purely economic reasons undercuts defendants' argument that such behavior is *per se* inequitable. Simply put, were defendants' nondisclosures material for the purposes of equitable rescission, which they are not, plaintiffs would be entitled to rescind their contracts without regard to their reason for exercising this right.

Of course, while defendants' objections to the Magistrate Judge's recommendation regarding the equitable defenses are overruled, the availability of such defenses is immaterial to the outcome here because, for the reasons already stated, plaintiffs are not entitled to equitable rescission.

### E.    Remaining Objections

In addition to the objections already resolved, defendants assert a number of objections that essentially renew and preserve a number of arguments for appeal. These objections are as follows:

1. Defendants object to the premise that ILSFDA applies to the Merrifield properties;

2. Although the Fourth R&R denies plaintiffs any recovery, defendants object to the extent the Fourth R&R relies on rulings that authorize plaintiffs' claims for damages;

3. Defendants reassert their objection to plaintiffs' claims for automatic rescission;

4. Defendants object that plaintiffs' claims to equitable rescission are time-barred;

5. Defendants object to the extent the Fourth R&R permits any other relief that is time-barred.

6. Defendants object to subject matter jurisdiction to the extent plaintiffs seek common law rescission under state law;

7. Defendants object that the Magistrate Judge failed to find that plaintiffs must proceed with the purchase of the condominiums, having found that plaintiffs are not entitled to rescission;

8. Defendants object that equitable rescission is inappropriate in this case because the parties cannot be restored to the *status quo ante*;

9. Defendants object to the extent the Fourth R&R authorizes any claims beyond those under 15 U.S.C. § 1703(a);

10. Defendants object to the extent that filing the motion for certification of the class action tolled the statute of limitations, in light of the finding that plaintiffs failed to satisfy any of the four requirements of class certification;

11. Defendants object to the extent the Fourth R&R fails to recognize the applicability of any clauses in the UPA, such as the exculpatory clauses, which purportedly remove liability for the corporate officers;

12. Defendants object to plaintiffs' claims to the extent they are premised solely on breach of contract claims or other claims that are not presently available to plaintiffs in this litigation;

13. Defendants object to the extent the Fourth R&R relies on defendants' failure to notify plaintiffs of their right to automatic rescission, because plaintiffs' right to automatic rescission is time-barred;

14. Defendants object to the extent the Fourth R&R rejects the argument that substantial compliance with ILSFDA satisfies the obligations required under the Act; and

15. Defendants object to the rejection of any affirmative defenses in the Fourth R&R, particularly to the extent such rejection was based on when plaintiffs discovered their rights under ILSFDA.

Each of these objections have either already been raised and resolved in previous orders and opinions, or they are resolved by this Memorandum Opinion. In either case, these objections need no further attention. To the extent the objections are not explicitly sustained, they are overruled.

## IV.

A brief summary of this litigation provides useful context. In the summer of 2005, the eighty-five plaintiffs in this case signed sales contracts to purchase condominiums in a well-developed and affluent area of Fairfax, Virginia. Construction of the units, some of which included custom finishes selected by plaintiffs, began sometime in August or September 2005.

After construction commenced, but prior to the date fixed for closing, the real estate market

plummeted drastically, reducing the market value of plaintiffs' units. Rather than close on the

units, as required by their sales contracts, plaintiffs chose instead to sue sellers on various claims

seeking rescission of the sales contracts, return of their deposits, and damages. In the course of

the litigation, all of plaintiffs' claims, except the ILSFDA claim, were dismissed. Defendants,

who mistakenly believed that the properties were not subject to ILSFDA, did not provide

purchasers with the ILSFDA-required disclosures prior to sale. Defendants admitted that the

disclosures had not been made, arguing instead that the sales contracts were exempt from

ILSFDA. This argument failed, and plaintiffs received partial summary judgment in this regard,

leaving only the question of remedy to be resolved. Because plaintiffs did not bring their action

for automatic statutory rescission within the required two years, they were time-barred from

seeking this remedy, and left only with the prospect of equitable rescission. To establish a basis

for equitable rescission, plaintiffs had to make a showing that the undisclosed information, had it

been disclosed, would have influenced a reasonable decision-maker in the decision to purchase

these condominiums. Yet, plaintiffs were not able to make any such showing. Instead, an

evidentiary hearing revealed that the undisclosed information required by ILSFDA would have

been well-known or unimportant to a reasonable purchaser of these relatively expensive

condominiums in a well-established, affluent area of Fairfax. This result is unsurprising given

that the purpose of ILSFDA was to prevent fraud in the sales of real property in more

undeveloped areas, such property in a flood plain or more than one hundred miles from the

nearest fire station. A different result might have been obtained had sales of the property been

located in some area where the information required by ILSFDA would likely have been

objectively material. Given the lack of objective materiality, plaintiffs cannot demonstrate an

entitlement to equitable rescission. Simply put, the circumstances of this case do not call for the exercise of the court's broad equitable powers in pursuit of "general fairness." *Cf. Hilton Davis Chemical Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1521 (Fed. Cir. 1995) ("The term 'equitable' can have many meanings . . . . [T]his court's allusions to equity invoke equity in its broadest sense—equity as general fairness."). Therefore, plaintiffs' only surviving claim fails, and it is appropriate to grant defendants summary judgment.

An appropriate Order will issue.


The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
November 9, 2010


T. S. Ellis, III
United States District Judge